Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Sterling Cluff (SBN 267142)
scluff@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Telephone: 872.365.7060

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARETT HAWKINS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>SHIMANO NORTH AMERICA BICYCLE, INC., SHIMANO NORTH AMERICA HOLDING, INC., and SPECIALIZED BICYCLE COMPONENTS, INC.,<br><br>                    Defendants. | Case No.: 8:23-cv-02038<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Jarett Hawkins ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendants Shimano North America Bicycle Inc. Shimano North America Holding Inc. (together, "Shimano"), and Specialized Bicycle Components, Inc. (individually, "Specialized" and together with Shimano, "Defendants"), and alleges on personal knowledge, investigation of his counsel, and information and belief as follows.

**INTRODUCTION**

5. This is a class action brought by Plaintiff on behalf of himself and other similarly situated persons who purchased the Shimano 11-Speed Bonded Hollowtech II Road Crankset Models: Dura-Ace FC-9000, Dura-Ace FC-R9100P Dura-Ace FC-R9100, Ultegra FC-R8000, and Ultegra FC-6800, and all other substantially similar cranksets manufactured, distributed or sold by Shimano with the same defect and subject to the September 21, 2023 recall (the "Cranksets") and bicycles manufactured by Specialized that come equipped with defective Cranksets (the "Class Bicycles"), for personal use and not for resale.

6. In a bicycle, the crankset connects the chain and the pedal and allows the bicyclists to propel the bicycle forward by applying the necessary force with their legs. Without a functioning crankset, a bicycle cannot be pedaled. An example of

one of the defective Cranksets from Shimano's website is included below.



7.   In this case, the Cranksets suffer the same design defect in that the crank parts detach at the bind during ordinary use, resulting in a significantly higher crash and injury risk for consumers.

8.   As a result of the defect, bicyclists that use the Class Bicycles and Cranksets cannot safely ride their bicycles because the crankset may break and/or detach while the operator of the bicycle is riding, causing the operator to fall off the bicycle or lose control and crash, leading to serious injury or death. Such a defect is extraordinarily dangerous and has rendered the Class Bicycles and Cranksets unsuitable for their principal and intended purpose, as demonstrated in the example picture below.



9.     The safety concerns presented by the breakage of a crankset are particularly pronounced among modern road bicycles that are predominantly ridden on roads, at high speed, near motor vehicles, while operators' feet are clipped into the pedals attached to the end of the crank arms because these operators are riding nearest to dangerous traffic and moving at significant speeds.

10.     Defendants ignored this prevalent defect for approximately a decade—releasing some of the affected Cranksets as early as 2012—and only recently issued a recall on September 21, 2023[1]. The defect and serious dangers posed thereby were

[1] https://www.cpsc.gov/Recalls/2023/Shimano-Recalls-Cranksets-for-Bicycles-Due-to-Crash-Hazard (last visited 10/20/2023).

not disclosed by Defendants to consumers until the recall, following years of denials by Shimano.

11.     Shimano's recall is wholly inadequate. Defendants only offer free replacement Cranksets to consumers whose cranksets show signs of binding separation or delamination during an inspection and requires the third-party dealers to install the replacement. As will Plaintiff alleges more fully below, the procedure for this recall is inadequate. Bike repair persons are not engineers, the existence of a defect is not the same as manifestation of a defect, and pictures of broken Cranksets do not always readily reveal signs of binding separation or delamination prior to breaking.

12.     The severe danger the Class Bicycles and Cranksets pose to consumers—rendering bicycles uncontrollable during regular operation on sidewalks, roads, and or mountains trails—makes refusing to replace or refund all the dangerous Cranksets is wholly inadequate.

13.     Further, Defendants designed the recall to be arbitrary and inconvenient to limit Defendants' replacement costs. Consumers who do not show enough separation or delamination are left without remedy, and consumers who qualify for a free replacement are left with long waiting lines unable to use their bicycles. Until they can qualify for a repair under Shimano's plan, consumers are left without usable bicycles and/or are left in the position of having to decide whether to continue riding a dangerous bicycle, waiting on the Cranksets to separate and potentially cause a crash.

14.     As a result of the concealed Crankset defect, Plaintiff and other members of the proposed Classes (defined below) (collectively, the "Classes") were harmed and suffered various forms of quantifiable, economic injury.

15.     The Cranksets being subject to an inadequately narrow recall have been rendered them entirely worthless or, at the very least, have substantially diminished their value.

16.     Plaintiff and members of the Classes also suffered out-of-pocket and/or loss-of-use expenses and costs.

17.     Therefore, Plaintiff brings this suit to halt Defendants' unlawful sales and marketing of the Class Bicycles and Cranksets and for economic damages sustained as a result. Given the large quantities of the Class Bicycles and Cranksets sold in California and nationwide, this class action is the proper vehicle for addressing Defendants' misconduct and attaining needed relief for those affected.

## PARTIES

18.     Plaintiff Jarett Hawkins was at all times relevant to this matter a resident of the State of California domiciled in Solana Beach, in the county of San Diego. Plaintiff is a citizen of California.

19.     Defendant Shimano North America Bicycle Inc. is a California corporation with its principal place of business in Irvine, California.

20.     Defendant Shimano North America Holding Inc. is a California corporation with its principal place of business in Irvine, California.

21.     Defendant Specialized Bicycle Components, Inc. is a Delaware corporation with its principal place of business in Morgan Hill, California.

22.     At all relevant times hereto, Defendants designed, built, manufactured, marketed, distributed, promoted, marketed, and sold the defective Class Bicycles and Cranksets nationwide, including in California.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 ("CAFA"), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class and Defendants are citizens of different states.

24.     This Court has personal jurisdiction over Defendants pursuant to 18

U.S.C. § 1965 because Defendants maintain minimum contacts with this state, and intentionally avail themselves of the laws of the United States and this state, by conducting a substantial amount of business in California. Defendants continuously and systematically place goods into the stream of commerce for distribution in California, sell the Class Bicycles and Cranksets to individuals in California, and engage in wholesale of the Class Bicycles and Cranksets to retailers they know will resell the Class Bicycles and Cranksets at retail to individuals in California. Because of Defendants' conduct as alleged in this lawsuit, the Class Bicycles and Cranksets were sold to and purchased by individuals in this State.

25.     For these same reasons, venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

### A.     The Defect

26.     Shimano manufactures, distributes, and sells components, technologies, services, and gears for bicycles. Among the various bicycle components that the Shimano sells, are the defective Cranksets, as previously identified, Dura-Ace FC-9000, Dura-Ace FC-R9100P Dura-Ace FC-R9100, Ultegra FC-R8000, and Ultegra FC-6800. Further, the affected Cranksets can be identified by the two-letter production code imprinted on the crank arm. The defective Crankset production codes are: KF, KG, KH, KI, KJ, KK, KL, LA, LB, LC, LD, LE, LF, LG, LH, LI, LJ, LK, LL, MA, MB, MC, MD, ME, MF, MG, MH, MI, MJ, MK, ML, NA, NB, NC, ND, NE, NF, NG, NH, NI, NJ, NK, NL, OA, OB, OC, OD, OE, OF, OG, OH, OI, OJ, OK, OL, PA, PB, PC, PD, PE, PF, PG, PH, PI, PJ, PK, PL, QA, QB, QC, QD, QE, QF, QG, QH, QI, QJ, QK, QL, RA, RB, RC, RD, RE, and RF.[2]

27.     Approximately 680,000 Cranksets were sold at prices ranging between

---

[2] Shimano Recalls Cranksets for Bicycles Due to Crash Hazard | CPSC.gov (last visited 10/20/2023)

**CLASS ACTION COMPLAINT**

$270 and $1,500 each throughout the United States between January 2012 and August 2023.

28.     The Cranksets, as defined above, all suffer from an identical design defect. As a result of the defect, the Cranksets are unreasonably likely to break, separate, de-bond, or delaminate during normal use.  When the defective Crankset separates or delaminates the bicyclist loses the ability to properly balance, operate, and propel the bicycle, substantially increasing the risks of a crash and serious injury.

29.     While the Crankset models may differ in weight, price, and certain specs, the Cranksets all share the same dangerously defective bind, weld, bond, or material that causes the Cranksets to break, separate, de-bond or delaminate and fail.

30.     The defect at issue here involves a vital component of a bicycle, and it is unsafe to operate a bicycle with a Crankset that may fail and cause an operator to lose control. A sturdy and reliable crankset is absolutely critical to the safe operation of a bicycle because bicyclists apply a range of their weight—from full weight while standing, to partial weight while pedaling in the seated position—to the crankset, and base their balance on their ability to apply weight to the crankset consistently and reliably allowing the bicycle to remain upright and operational. Therefore, consumers cannot safely ride their bicycles, including the Class Bicycles, with the defective Cranksets.

31.     The industry shows, including Defendants themselves, that alternative, feasible designs have been available for decades because only some of Defendants' crankset models fall prey to the inadequately designed weld, bond, bind, or material used in the Class Bicycles and Cranksets. The inadequately designed Class Bicycles and Cranksets that are prone to separation and breaking are therefore unsafe to use.

32.     Additionally, consumers reasonably expect that cranksets will be able to hold their weight and allow the consumer to apply ordinary force to propel the bicycle. Consumers would not, did not, and could not anticipate that a crankset specifically designed to bear the weight of the bicyclist applying normal force to

propel the bicycle forward is designed in a manner that causes it to separate and/or break, and fail under normal riding.

33.   This defect renders the Class Bicycles and Cranksets unfit for the ordinary purpose for which they were and are intended, which is to be a weight bearing component designed to withstand the force required to propel a bicycle forward.

34.   This defect is present in all the Class Bicycles and Cranksets, as identified in this case, at the time of sale because it is inherent to the design of the Class Bicycles and Cranksets and is present when the Class Bicycles and Cranksets come off the assembly line.

35.   Had Plaintiff, Class Members, and the consuming public known that the Class Bicycles and Cranksets were defectively designed and were substantially certain to separate and fail when subjected to the ordinary force required to propel a bicycle forward, they would not have purchased the Class Bicycles and Cranksets at all, or paid substantially less for them.

36.   Specialized manufactures, distributes, and sells assembled bicycles, and bicycle components. Among the various bicycles sold by Specialized, are the Class Bicycles equipped with defective Cranksets, as identified in a statement by Specialized, including: "Specialized road bikes [that] were fitted as standard with 11-speed Shimano Ultegra & Dura-Ace crank sets" on "some models of Tarmac, Roubaix, Venge, Ruby, Amira, Aethos & Shiv" bicycles.[3]

37.   Each of the Class Bicycles contained a defective Crankset and, therefore, suffered from the same defects that plague all of the defective Cranksets.

---

[3] Shimano Voluntary Recall: 11-Speed Bonded HOLLOWTECH II Road Cranksets Inspection and Replacement Campaign, Specialized, available at https://support.specialized.com/home/en/shimano-voluntary-recall-11-speed-bonded-hollowtech-ii-road-cranksets-inspection-and-replacement-campaign#:~:text=and%20Replacement%20Campaign-,Shimano%20Voluntary%20Recall%3A%2011%2DSpeed%20Bonded%20HOLLOWTECH%20III%20Road%20Cranksets,HOLLOWTECH%20II%20Road%20Crank%20sets, last visited on October 30, 2023.

**B.**  **The Safety Risks to Users Associated with the Use of the Class Bicycles and Cranksets Caused Economic Harm**

38.     As a result of the safety risks to consumers associated with normal use of the Class Bicycles and Cranksets, together with Defendants' concealment and omission of these risks from the date they were first reported to Defendants or discovered by Defendants, the Class Bicycles and Cranksets are subject to an inadequately narrow recall and have been rendered entirely worthless or, at the very least, have substantially diminished in value.

39.     Material safety defects, like the defect at issue, affect the market price of a product. Consumers are not willing to overlook such dangers and would instead purchase a comparable product manufactured by another company without a recent history of wide-scale product recalls.

40.     The Defendants' recent recall instructs consumers to stop using the Class Bicycles and Cranksets and subject to a visual inspection of a local bike shop. This demonstrates that at the very least, the value of the Class Bicycles and Cranksets has substantially diminished because you should not use them unless they pass inspection—and arguably should not use them at all because even with constant monitoring for separation, failure during use is a severe hazard to the bicyclist and potentially the public at large.

41.     If users choose to discontinue using the Class Bicycles and Cranksets for fear of injury, they must pay for another expensive replacement product.

42.     Plaintiff and Class members did not receive the benefit of their bargain. They bargained for Class Bicycles and Cranksets that were fit for their ordinary purpose and did not have any safety defect substantially likely to manifest and which could cause severe physical injury. By actively concealing and omitting this information from consumers, including at the point of sale, Plaintiff and Class members overpaid for the Class Bicycles and Cranksets.

43.     Plaintiffs and Class members suffered "price premium" damages in the amount they overpaid for the Class Bicycles and Cranksets as a result of the hidden safety defect.

44.     Plaintiff and members of the Classes also suffered out-of-pocket and/or loss-of-use expenses and costs.

**C.     Defendants Knew About the Defect Yet Provided No Warning**

45.     Defendants must have been aware of the Class Bicycles and Cranksets at least several years prior to issuing the most recent recall on September 21, 2023, because there have been complaints, reviews, and publications regarding this defect for close to a decade.

46.     This is not the first time Shimano released and sold cranksets with a similar, if not identical, defect. In 1997, Defendants issued a recall of approximately 2.5 million cranksets manufactured between mid-1994 and mid-1995 because the recalled cranksets were prone to breaking. As of 1997, Defendants acknowledged receiving at least 630 reports in North America of cranksets breaking while in use—resulting in at least 22 rider injuries, including fractured bones and lacerations.

47.     Similarly, Defendants must have been aware, early on, of the numerous complaints regarding the Class Bicycles and Cranksets in this case separating, failing, and causing injury. However, this time Defendants ignored such complaints and did not act until years after they began receiving complaints about Defective Inflators.

48.     On September 1, 2016, cyclist and blogger John Carlin was riding approximately 20 miles per hour near his home in Roanoke, Virginia, on a trial called the "Brandy Loop." While attempting to ride up a smallish hill, the crankset on the right-hand side of his bicycle snapped in two resulting in a crash. As Mr. Carlin describes it:

> With absolutely no warning there was a loud crack. My foot hit the
> pavement, the bike dove into a ditch about a foot deep and I landed

between a utility pole and street sign that are little more than shoulder-width apart.

49.    Mr. Carlin reported the issue to his local bicycle shop who contacted Shimano. When the shop called Shimano, the rep on the other end of the phone cut them off and said he already knew the story, indicating that Shimano had already been made aware of the Crankset defect and well before 2016.[4]

50.    Three years later, in 2019, the same blogger reported on his Dura-Ace FC-9000 crankset failing in the same way. The blogger, again, attached pictures and discussed how Defendants has been well aware since the last incident of the Class Bicycles and Cranksets failing and is doing nothing about it.[5]

51.    Other consumers of the Cranksets were so outraged, that they felt it necessary to create an Instagram account titled "thanksshimano" documenting Defendants' Cranksets. Since its inception, the "thanksshimano" account has posted over 500 times, with most of the posts being follower submissions of the Cranksets separating and failing. Some example posts are pictured below. The account was opened in November 2017 and contains hundreds of posts between 2018 and 2023 depicting defective Cranksets that had broken and/or failed.

---

[4] Failure shimano ultegra crank causes serious bicycle accident (carlinthecyclist.com) (last visited 10/20/2023)
[5] Shimano Dura-Ace FC-9000 Crank Fail • Carlin the Cyclist (last visited 10/20/2023)

**CLASS ACTION COMPLAINT**





**CLASS ACTION COMPLAINT**

52.     Notably, these pictures do not show obvious signs of corrosion, de-bonding or delamination, and do not appear to give any sign or notice to the operator that they are about to break or need to be replaced.

53.     Similarly, multiple news outlets have covered the issue. Road.cc covered this problem stating that readers have reached out to them as early as 2018 with reports of the Cranksets failing and that their investigation revealed that the issue has been prevalent and known to Defendants even earlier than that. Road.cc further discussed how they have covered this issue in multiple publications throughout and the years and how Defendants has denied a design problem in the past and stated that it is "investigating" the problem in 2021.[6]

54.     Engineering blogs, like Hambini, scrutinized the Defendants design of the defective Crankset and reported about the Shimano's attempts to deflect and deny the apparent design problem.[7]

55.     Similar stories abound on the internet and in the Consumer Protection Safety Commission's ("CPSC") data clearinghouse. Examples of complaints made to CPSC including the following:

SUDDEN CATASTROPHIC FAILURE OF A SHIMANO ULTEGRA COMPACT CRANK THAT WAS USED ON MY 2007 CERVELO R3 BICYCLE. THIS WAS THE 50/34 ULTEGRA 10 SPD CRANK THAT CAME WITH THE BIKE WHEN I BOUGHT IT IN AUGUST 2007. I HAVE HAD NO PRIOR ISSUES WITH THE CRANK AND HAD BOTTOM BRACKET REPLACED TWICE, MOST RECENTLY 15 MONTHS EARLIER. AS YOU CAN SEE IT FAILED DRAMATICALLY. ON 12 SEPTEMBER 2015 I WAS RIDING UPHILL ON HWY 39 AT ABOUT 8-10 MPH IN THE SAN GABRIEL MTNS AND GOT TO A SWITCHBACK I HAD BEEN ON COUNTLESS TIMES IN THE PAST (AND EARLIER IN THE SAME DAY) WHEN OUT OF THE SADDLE THE CRANK SUDDENLY FAILED WITH ZERO WARNING AND I TUMBLED

---

[6] Investigating Shimano's snapping cranksets: What happened, unanswered questions and an engineer's report | road.cc (last visited 10/20/2023)

[7] Shimano Crankset Failures: An Engineering Analysis - Hambini Engineering (last visited 10/20/2023)

INTO THE ROAD. I AM 6'1" AND WEIGH 188LBS. THE BIKE HAS NEVER BEEN IN ANY SORT OF MAJOR ACCIDENT AND THAT PEDAL HAS NEVER BEEN HIT HARD IN ANY KIND OF MISHAP. NO ONE OTHER THAN ME AND SHOP PERSONNEL HAVE EVER RIDDEN THE BIKE. OTHER THAN SCRAPES I WAS UNHURT. I INCLUDE PHOTOS WITH THE CRANKSET IF A SUBSEQUENT PAGE OF THE REPORT WILL ALLOW ME TO DO SO.[8]

THE SHIMANO ULTEGRA 6800 CRANKS ON MY ROAD BIKE FAILED. THE CRANK CRACKED AT THE SPINDLE. THIS CREATED A POTENTIALLY HAZARDOUS SITUATION AS IF THERE WAS A COMPLETE FAILURE, WHICH WAS SURE TO EVENTUALLY HAPPEN, A CRASH WAS LIKELY TO OCCUR. THE CRACK WAS PICKED UP BY MY LOCAL BIKE SHOP. THERE SEEM TO BE A LOT OF REPORTS OF FAILURES OF THIS PARTICULAR CRANK. IT SHOULD NOT FAIL DURING NORMAL USAGE. MY BIKE WAS NEVER CRASHED OR DAMAGED. THESE CRANKS SHOULD BE RECALLED AND REPLACED. THEY ARE NOT SAFE. THERE WAS NO "INCIDENT" AS I DID NOT CRASH.[9]

BICYCLE: SHIMANO DURA ACE 10 SPEED CRANK ARM BROKE IN HALF. ITS LUCKY I WAS NOT INJURED OR KILLED.[10]

SHIMANO FC-7800 DURA ACE CRANK ARM ON HIGH-END BICYCLE SNAPPED WITHOUT WARNING.[11]

A FRIEND OF MINE WAS INJURED WHEN THE CRANKARM OF HIS BIKE SNAPPED IN HALF AS HE WAS ACCELERATING, AND AS IT TURNS OUT, THESE TYPES OF CRANKS HAVE SUCH A NOTORIOUS REPUTATION THAT A WHOLE [REDACTED] ACCOUNT HAS BEEN MADE CATALOGUING THE FAILURES OF SHIMANO'S CRANKARMS. [REDACTED].[12]

56.     On information and belief, Shimano likely possess records regarding

---

[8] Incident ID 20150919-69EAB-2147428241, September 2015 (all caps included in the original).
[9] Incident ID 20190807-A0F41-2147379394, August 2019 (all caps included in the original).
[10] Incident ID 2021.215-FR798-2147365875, February 2021 (all caps included in the original).
[11] Incident ID 20210619-2246D-2147363413, June 2021 (all caps in original).
[12] Incident ID 20220415-66EFB-2147356847, April 2022 (all caps in original).

thousands of complaints about Cranksets and the defect dating back to at least 2012.

57.     Not only does the number of complaints and the publicity of such through media, blogs, news outlets, and various other channels, as well as Defendants' own statements, comments, and responses to such outlets, demonstrate that Defendants must have been keenly aware of this defect for at least many years, but the substance of the complaints shows that consumers were surprised, frustrated, and disappointed with the poor build quality of the Class Bicycles and Cranksets, and would not have purchased the Class Bicycles and Cranksets had the defect been disclosed.

58.     Defendants would have seen the above-described complaints and new coverage because Online Reputation Management (ORM) is now a standard business practice among major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. ORM involves the monitoring of the reputation of an individual or a brand on the internet, addressing content, which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation. Many companies offer ORM consulting services for businesses.

59.     Like most companies, Defendants care about their reputation and regularly monitors online customer reviews and media because they provide valuable data regarding quality control issues, customer satisfaction, and marketing analytics. Poor reviews and negative media attention would be particularly attention-grabbing for Defendants' management because negative publicity and poor reviews is often the result of material problems. As such, Defendants' management knew about the above-referenced consumer complaints, which is further evidenced by their documented responses to bike shops, blogs, and other outlets. In fact, Defendants stated in their September 21, 2023, recall **that they are aware of at least 4,519 incidents of the Cranksets separating**, with many of these incidents resulting in

injuries such as bone fractures, joint displacement, and lacerations.

60.     Additionally, Defendants are experienced in designing and manufacturing bicycle parts such as the Class Bicycles and Cranksets. As an experienced manufacturer, Defendants conduct pre-sale and post-sale safety testing to verify the safety risks posed to users of the Class Bicycles and Cranksets. Defendants would have conducted additional post-sale testing upon being notified of the earliest above-described complaint. On information and belief, Defendants discovered this safety risk during testing both before and after publicly releasing the Class Bicycles and Cranksets for sale.

61.     In sum, Defendants have known of the defect and its associated manifestations and damage through (1) records of customer complaints, (2) media, (3) direct communications with bike shops and customers seeking to make Defendants aware of the problem, and (4) pre- and post-sale testing, but made no substantive design modifications to eliminate the defect, and did not recall the Cranksets until September 21, 2023, despite knowing the defect existed almost a decade prior.

**D.     Defendants Failed to Disclose the Crankset Defect to Consumers at the Point of Sale**

62.     Consumers cannot reasonably know about or discover the dangerous nature of the Class Bicycles and Cranksets at the point of sale. Consumers expect the Class Bicycles and Cranksets to remain intact throughout regular and ordinary use.

63.     Consumers reasonably expect that Defendants—who have far greater expertise in safety and designing the Class Bicycles and Cranksets—would not market an unsafe product. For lay consumers inexperienced in crankset design, the Class Bicycles and Cranksets are not obviously unsafe in appearance and do not obviously disclose the existence of the Crankset defect.

64.     Further, Shimano claims the Cranksets are durable and reliable.

65.     Shimano has published numerous marketing materials on their website

and through third-party media outlets emphasizing the Cranksets' performance, strength, reliability and durability[13]:

- "the best balance of stiffness, strength, weight and rotating performance;"
- "In addition, taking the crankset as a whole, the total balance of crankarm rigidity, axle stiffness, bearing position and others is essential. Indeed, the crankset is designed by careful consideration of the total balance of those elements to prevent breakage;"
- "high precision sealing in the bearing area to increase durability;"
- "the best choice in terms of performance, strength, and longevity;"
- "we realize innovative new products excelling both in high precision and in durability by the metal-processing technologies we have developed for many years;" and
- "Maintains high rigidity and reduces weight."

66. These representations are misleading because the Cranksets are defectively designed and result in an unreasonable risk of physical injury during ordinary use. Defendants omitted this information on packaging, labeling, and advertising to benefit their bottom line.

67. Defendants also actively concealed the defect and safety risk by responding to customer complaints and media without acknowledging—in fact denying and down-playing—the defective nature of the Cranksets.

68. For its part, Specialized also failed to disclose the defect in the Cranksets equipped on the Class Bicycles and, instead, made misrepresentations and failed to disclose the existence of the defect.

69. Specialized has published numerous marketing materials on its website

---

[13] *E.g.,* https://bike.shimano.com/en-EU/technologies/component/details/hollowtech-2.html; https://bike.shimano.com/en-US/product/component/duraace-9000/FC-9000.html; https://www.bikeradar.com/news/shimano-dura-ace-9000-launched/; https://www.shimano.com/en/manufacturing/bicycle.html.

and through third-party media outlets emphasizing the Cranksets' performance, strength, reliability, and durability, including the examples listed below:

a.  Plaintiff's Tarmac SL6 Comp Class Bicycle was "lighter, faster, and better handling," as well as a "no-fuss spec that includes Shimano Ultegra mechanical shifting;"[14]

b.  Representing that the Class Bicycles "provide[s] a tremendous value" that "doesn't come with any compromises," and are "spec'd . . . with Ultegra Di2 for its crisp shifts;"[15]

c.  Representing that consumers "can rest assured that the [Class Bicycle] underneath you is simply the best;"[16] and

d.  Representing that the Class Bicycles "perform flawlessly for every rider, in every size."[17]

70.  These representations are misleading because the Class Bicycles and Cranksets are defectively designed and result in an unreasonable risk of physical injury during ordinary use. Specialized omitted this information on packaging, labeling, and advertising to benefit their bottom line.

71.  On information and belief, Specialized also actively concealed the defect in the Class Bicycles and Cranksets, and related safety risk, by responding to customer complaints and media without acknowledging—in fact denying and down-playing—the defective nature of the Class Bicycles and Cranksets.

E.  **Defendants' Duty to Disclose the Defect**

72.  Knowledge of Material Safety Risk: As described above, the defect present in the defective Cranksets and Class Bicycles give rise to material safety

---

[14] https://www.specialized.com/us/en/tarmac-sl6-comp/p/175298?color=293447-175298, last visited on October 30, 2023.

[15] https://www.specialized.com/us/en/roubaix-comp--shimano-ultegra-di2/p/170243?color=260621-170243, last accessed on October 30, 2023.

[16] https://www.specialized.com/us/en/c/bikes, last accessed on October 30, 2023.

[17] https://www.specialized.com/nl/en/performance-road-bikes#:~:text=A%20decade%20of%20data%20acquisition,every%20rider%2C%20in%20every%20size., last accessed on October 30, 2023.

concerns, which are particularly pronounced among modern road bicycles that are predominantly ridden on roads, at high speed, near motor vehicles, while operators' feet are clipped into the pedals attached to the end of the crank arms because these operators are riding nearest to dangerous traffic and moving at significant speeds. These material safety concerns have led to accidents and physical injuries riding Class Bicycles and/or bicycles equipped with defective Cranksets. This safety-related defect in the defective Cranksets and Class Bicycles trigger a duty to disclose.

73.     Superior Knowledge: As described above, Defendants are experienced in the design and manufacture of Class Bicycles and Cranksets. As an experienced manufacturer, Defendants conduct tests, including pre-sale testing, to verify the cranksets they sell are free from defects and align with Defendants' specifications and intended use. Defendants also receive, monitor, and aggregate consumer complaints and publications regarding the defects. A reasonable consumer does not have access to the granular data in Defendants' possession and would not be on notice of the defect.

74.     Active Concealment: Defendants actively concealed the Defect. As described above, Defendants actively concealed the defect from Plaintiff and Class Members. In response to consumer complaints within the warranty period regarding the defect, Defendants recall will replace the Cranksets with the same Cranksets to ensure that the defect will manifest again outside of the warranty period or denied the warranty claim entirely. Defendants also responded to negative reviews about the defect without publicly acknowledging the defect, and instead denying any defect and downplaying its prevalence. Defendants also expressly deny that all Cranksets are defective and pose an unreasonable safety risk by instituting an inadequate recall.

75.     Defendants could have and should have prominently disclosed the defect on the product listings on its website, on Cranksets' packaging, and to third-party retailers. Had Defendants disclosed the defect in this manner, consumers would have been aware of it.

**F.      Defendants' Recall Falls Short of Remedying the Defect**

76.      Shimano's September 21,2023 recall fails to fully address the defect.

77.      The recall states: "Consumers should immediately stop using the cranksets manufactured before July 1, 2019, and contact an authorized Defendants' dealer to schedule a free crankset inspection."

78.      This admission by Shimano reveals why their planned recall is inadequate – all of the Cranksets, including those in the Class Bicycles, are defective.

79.      However, Shimano's recall then explains that "[o]nly consumers whose cranksets show signs of bonding separation or delamination during the inspection will be provided a free replacement crankset and installation."

80.      Shimano's recall is inadequate for multiple reasons.

81.      The recall lacks a process for consumers who repaired and/or discarded the Cranksets to receive a replacement or refund.

82.      Class Bicycles and Cranksets that are not actively failing are not eligible for a free replacement or refund, leaving consumers to ride their Class Bicycles and Cranksets in fear until it begins to fail, abandon the Class Bicycles and Cranksets without remedy, or in the worst case, ride it until it fails and causes a crash.

83.      In the meantime, all consumers of the Class Bicycles and Cranksets are left without a bicycle, whether they receive a free replacement or not, during the inspection period. Scheduling an inspection with a local professional and awaiting its completion leaves consumers without their bicycles for an extended period of time when all of them should just be entitled to an immediate replacement because the defect is uniform and by design.

84.      Further, even those consumers that do receive a free replacement after going through the time-consuming inspection process, are only partially made whole. Defendants replace the defective 11-speed cranksets with 12-speed cranksets which alter the dynamic and build of the consumer's bicycle. Consumers are not receiving what they have previously bargained for, which is an 11-speed crankset. Consumers

are forced to alter their preferences or purchase a costly new 11-speed crankset from a competitor.

85.    The inspection process of the recall is flawed in that, in order to save expenses, Defendants place the responsibility to determine whether the Class Bicycles and Cranksets pass inspection on local bike shops that are not best equipped to make complex engineering decisions over the Defendants' Class Bicycles and Cranksets. To make matters worse, Defendants not only do not provide staff to perform this complex task, they also give inadequate instruction requiring a mere visual inspection devoid of any real testing of the component.

86.    Defendants decided to limit the recall to save expenses and thereby fail to remedy the defect for all consumers of the affected Class Bicycles and Cranksets.

87.    A proper recall would replace or refund all the 680,000 Cranksets, including those installed on the Class Bicycles, because they are unsafe and pose serious risk to users. However, the Defendants are yet again placing their finances over consumer safety and the majority of Class Bicycles and Cranksets are still on the road endangering consumers and the public at large. For many, it will be too late to replace the Cranksets, including those installed on the Class Bicycles, after they have started to show failure. Many will continue to fail even with customers taking extra precautions and inspecting the Class Bicycles and Cranksets. Defendants need to revise their recall and replace and remove from the streets all the defective and unsafe Cranksets, including those installed on the Class Bicycles .

### G.    Plaintiff's Experience

88.    Plaintiff Hawkins purchased a Specialized Tarmac SL 6 Comp Edition bicycle on or about July 16, 2020, for $6,500 from a bike shop in Encinitas, California.  His bicycle came originally equipped with a Shimano Ultegra FC-R8000 Crankset. A picture from Specialized's website showing the Shimano Crankset (with Ultegra logo) is included below along with a picture of the specifications, confirming that the equipped Crankset is a Shimano Ultegra FC-R8000.



**DRIVETRAIN**

**Bottom Bracket**
Shimano Threaded BSA BB

**Cassette**
Shimano Ultegra R8000, 11-speed, 11-30t

**Crankset**
Shimano Ultegra R8000, HollowTech 2, 11-speed

**Rear Derailleur**
Shimano Ultegra R8000, Shadow Design, 11-speed

**Front Derailleur**
Shimano Ultegra R8000, braze-on

**Chain**
Shimano Ultegra, 11-speed

**Shift Levers**
Shimano Ultegra Disc R8020

**CLASS ACTION COMPLAINT**

89.     While riding his bicycle, Plaintiff's Shimano Crankset broke mid-ride. Plaintiff notified Shimano and submitted a warranty claim for the defective Crankset. On April 4, 2022, Shimano replaced the defective Crankset with the exact same Crankset that, on information and belief, continues to be defective and is substantially certain to fail for the reasons above.

90.     Prior to purchasing his Class Bicycle that came originally equipped with a defective Crankset, Plaintiff conducted online research about Specialized, the bikes it sells, and the features he wanted included for his bike. Plaintiff reviewed the Specialized website, including the page for the Class Bicycle he eventually purchased, several times before purchasing his Class Bicycle at a brick-and-mortar retailer where he saw a fact tag that listed the name, size and price of the Class Bicycle. Plaintiff saw the list of specs for his Class Bicycle and other promotional and marketing information on the Specialized website. Plaintiff also visited the Shimano website and viewed the information provided by Shimano about the defective Crankset that came originally equipped on his Class Bicycle, including the attributes of the Crankset.

91.     As a reasonable consumer, he believed that information regarding critical safety defects, like the substantial risk of physical injury due to sudden separation and failure of the defective Crankset, would have been prominently disclosed by the manufacturer on the packaging and online listings, and would have been disclosed by third-party retail sellers at the direction of Defendants. Because no such risk was disclosed, let alone prominently on packaging or other advertising, he understood that the Class Bicycles and Cranksets were safe under ordinary use. Plaintiff relied on Defendants' omissions in purchasing the Class Bicycles and Cranksets.

92.     Had Plaintiff known or otherwise been made aware of the defect in the Class Bicycles and Cranksets, he would not have purchased them or would have paid

significantly less for them. At a minimum, Plaintiff paid a price premium for the Class Bicycles and Cranksets based on Defendants' omission and concealment of the safety defect.

93.    Plaintiff would purchase another substantially similar Crankset from Defendant in the future if the product was redesigned to make it safe under ordinary use. Plaintiff, however, faces an imminent threat of harm because he will not be able to rely on any representations or omissions of safety and the comprehensiveness of warnings in the future and, thus, will not be able to purchase such a Crankset manufactured by Defendants.

## **TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

94.    Any applicable statutes of limitation have been tolled by the discovery doctrine and Defendants' knowing and active concealment of the defect.

95.    Through no fault or lack of diligence, Plaintiff and members of the Classes were deceived regarding the defect and could not reasonably discover the defect or Defendants' deception with respect to the defect.

96.    Prior to purchasing and using the Class Bicycles and Cranksets, Plaintiff and Class Members had no reasonable way of knowing about the Class Bicycles' and Cranksets' uniformly defective design resulting in unreasonable risk of separation, delamination, and failure during ordinary use. Further, Plaintiff and members of the Classes did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants were engaged in the conduct alleged herein. Prior to the recall, no information in the public domain was available to the Plaintiff and Class members sufficient to show the extent of Defendants' misconduct or the extent of the defect.

97.    Further, by failing to provide immediate notice of the risks of separation, delamination, and failure associated with ordinary use of the Class Bicycles and Cranksets, and by refusing to publicly acknowledge the defect, Defendants actively concealed the defect from Plaintiff and Class Members.

98.     As alleged above, Plaintiff did not know and could not have known of the alleged defect in the Crankset and his Class Bicycle because he did not have notice of the facts giving rise to his claims. Plaintiff first learned of the uniform defect in the Cranksets and his Class Bicycle when Shimano announced its recall on September 21, 2023..

99.     Upon information and belief, Defendants intended their acts to conceal the facts and claims from Plaintiff and Class Members. Defendants fraudulently concealed the defect in the Class Bicycles and Cranksets until September 21, 2023, the date of the recall.

100.    Plaintiff and Class Members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct.

101.    For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiff or Class Members should be tolled based on the discovery rule and Defendants' active concealment.

## CLASS ACTION ALLEGATIONS

102.    Plaintiff brings this action on behalf of himself and the following class and subclasses (collectively, the "Classes") pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

**Nationwide Class**: All persons in the United States who purchased the Class Bicycles and Cranksets during the Class Period other than for resale.

**California Subclass**: All persons in California who purchased the Class Bicycles and Cranksets during the Class Period other than for resale.

**Multi-State Subclass (Implied Warranty Non-Privity)**: All persons who purchased the Class Bicycles and Cranksets for personal use and not for resale during the Class Period in the following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of

Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; West Virginia; Wyoming.

Members of the Classes are referred to, collectively as "Class Members."

103.   Excluded from the Classes are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of any Defendant or any entity in which a Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for any Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

104.   The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of the recall issued by Shimano.

105.   Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

106.   **Numerosity.** Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Classes may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

107.   **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any

**CLASS ACTION COMPLAINT**

questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Class Bicycles and Cranksets contain the defect alleged herein;

b. Whether the Class Bicycles and Cranksets pose an unreasonable safety risk to consumers;

c. Whether Defendants failed to appropriately warn Class Members of the damage that could result from the use of the Class Bicycles and Cranksets;

d. Whether Defendants had actual or imputed knowledge of the defect but did not disclose it to Plaintiff and Class Members and, if so, for how long;

e. Whether Defendants promoted the Class Bicycles and Cranksets with misleading statements of fact and material omissions;

f. Whether Defendants' marketing, advertising, packaging, labeling, and/or other promotional materials for the Class Bicycles and Cranksets are deceptive, unfair, or misleading;

g. Whether the Crankset defect constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a defective Crankset;

h. Whether Defendants had a duty to disclose the existence of the Crankset defect;

i. Whether Defendants' conduct tolls all applicable statutes of limitations;

j. Whether Defendants' conduct was likely to mislead a reasonable consumer;

k. Whether Defendants' actions and omissions violate California law;

l. Whether Defendants' conduct violates public policy;

m. Whether Defendants violated consumer protection statutes;

n. Whether Plaintiff and putative Class Members have suffered an ascertainable loss of monies or property or other value as a result of

28

Defendants' acts and omissions of material facts;

o.      Whether Defendants were unjustly enriched at the expense of Plaintiff and putative Class Members in connection with selling the Class Bicycles and Cranksets;

p.      Whether Plaintiff and putative Class Members are entitled to monetary damages and, if so, the nature of such relief; and

q.      Whether Plaintiff and putative Class Members are entitled to equitable or injunctive relief and, if so, the nature of such relief.

108.    Defendants have acted or refused to act on grounds generally applicable to the putative Classes, thereby making final injunctive relief appropriate concerning the putative Classes as a whole. In particular, Defendants manufactured, marketed, advertised, distributed, and sold the Class Bicycles and Cranksets that are deceptively misrepresented by omission as being safe under normal use when they are not.

109.    **Typicality.** Plaintiff's claims are typical of those of the absent Class Members in that Plaintiff, and the Class Members each purchased and used the Class Bicycles and Cranksets, and each sustained damages arising from Defendants' wrongful conduct, as alleged more fully herein. Plaintiff shares the aforementioned facts and legal claims or questions with putative members of the Classes. Plaintiff and all members of the putative Classes have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' deceptive omissions regarding the Class Bicycles and Cranksets being safe under normal use when they are not.

110.    **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the members of the putative Classes. Plaintiff has retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiff and his counsel are committed to the vigorous prosecution of this action.

Plaintiff has no conflicts of interest or interests adverse to those of putative Classes.

111. **Insufficiency of Separate Actions.** Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants.

112. **Injunctive Relief.** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and all Class Members, thereby making appropriate final injunctive relief, as described below, concerning the Class Members as a whole.

113. **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

b. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

d. Individual joinder of all members of the Classes is impracticable;

e. Absent a class action, Plaintiff and members of the putative Classes will continue to suffer harm as a result of Defendants' unlawful conduct; and

**CLASS ACTION COMPLAINT**

f.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Defendants.

114.    In the alternative, the Classes may be certified for the following reasons:

a.      The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication concerning individual members of the Classes, which would establish incompatible standards of conduct for Defendants;

b.      Adjudications of claims of the individual members of the Classes against Defendants would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c.      Defendants have acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief concerning the putative Classes as a whole.

## INADEQUACY OF LEGAL REMEDIES

115.    In the alternative to those claims seeking remedies at law, Plaintiff and Class Members allege that no plain, adequate, and complete remedy exists at law to address Defendants' unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction

of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

116.   Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded when the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 177-180 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred.").

117.   Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even when damages are unavailable). Furthermore, the standard and necessary elements for a violation of the UCL "unfair" prong and for quasi-contract/unjust enrichment are different from the standard that governs a legal claim.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF EXPRESS WARRANTY
### Cal. Commercial Code § 2313
### (On Behalf of the California Subclass)

118.   Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

119.   Plaintiff brings this count under California law, individually and on behalf of members of the California subclass against all Defendants. For purposes of this count, members of the California Subclass are referred to as "Class Members."

120.   Plaintiff's Class Bicycle and the Crankset equipped thereon is a "good" under Cal. Com. Code §§ 2105(1) and 10103(a)(8).

121.   Plaintiff and Class Members who purchased Class Bicycles and Cranksets are "buyers" under Cal. Com. Code §§ 2013(1)(a) and 10103(a)(14).

122.   Defendants are "merchants" and "sellers" of the Class Bicycles and Cranksets

123.   Defendants manufactured and distributed Class Bicycles and Cranksets for sale to Plaintiff and California Class Members.

124.   Defendants issued an express written warranty to Plaintiff and Class Members that their Class Bicycles and Cranksets were (1) free of defects in materials and workmanship at the time of sale and for at least two years, and (2) safe and reliable for their ordinary purpose for which such goods are used, namely that the Class Bicycles and Cranksets would withstand ordinary use in a bicycle.

125.   The express warranty was part of the bargain struck by Plaintiff and Class Members.

126.   Defendants knowingly breached their express warranty for the Class Bicycles and Cranksets in that (1) the Class Bicycles and Cranksets contain a latent dangerous defect that causes the crankset parts to separate, delaminate, and fail when ordinary force to propel the bicycle forward is applied, and (2) Defendants ignored, concealed, and denied the defect and misrepresented by omission to Plaintiff and Class Members that Class Bicycles and Cranksets function properly, while refusing to provide adequate replacements.

127.   Defendants were provided with ample notice of the defect by numerous customer complaints and inquiries into the defect, but chose to ignore, deflect, and deny its existence.

128.   Defendants knew or should have known that the warranties were false and/or misleading. Specifically, Defendants knew that the separation, delamination, and failure defect made the Class Bicycles and Cranksets inherently defective and dangerous at the time they were sold to Plaintiff and Class Members.

129.   Plaintiff and Class Members were exposed to Defendants' misrepresentations, and they had no way of discerning that Defendants' representations were false and misleading or otherwise learning the material facts that

Defendants had concealed or failed to disclose. Accordingly, Plaintiff and Class Members reasonably relied on Defendants' express warranties when purchasing the Class Bicycles and Cranksets.

130.    Defendants breached their express warranties and undertook no action to remedy their continuous breach for nearly a decade, and the recent September 21, 2023, recall inadequately addresses this breach of express warranties.

131.    Privity of contract is not required here because Plaintiff and Class Members were each intended third-party beneficiaries of the Class Bicycles and Cranksets sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Class Bicycles and Cranksets and have no rights under the warranty provided with the Class Bicycles and Cranksets.

132.    Plaintiff and Class Members were the intended third-party beneficiaries of contracts between Defendants and its third-party retailers, and specifically, of Defendants' implied warranties. The retailers were not intended to be the ultimate consumers of the devices and have no rights under the warranty agreements; the warranty agreements were designed for and intended to benefit the consumers only.

133.    Plaintiff and Class Members timely provided Shimano with notice of the issues raised in this county and in this Complaint, and an opportunity to cure.

134.    Alternatively, privity of contract is satisfied because Plaintiff and Class Members purchased the Class Bicycles equipped with Cranksets from retailers who were the exclusive retail sellers of Defendants' products and/or acted as agents of the Defendants.

135.    Plaintiff and Class Members were excused from providing Defendants with notice and an opportunity to cure because it would have been futile.  As explained above, Defendants have long been aware of the safety defect and Shimano inadequately recalled the Cranksets while expressly refusing to fully refund or replace all Cranksets in the marketplace, including Plaintiff's Class Bicycles and Cranksets.

136.   Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class Members have been injured in an amount to be proven at trial.

137.   As a direct and proximate result of Defendants' breach of their express warranties, the Class Bicycles and Cranksets were and are defective and the defect has not been fully remedied. Therefore, Plaintiff and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Class Bicycles and Cranksets with an undisclosed defect that would not be remedied.

<u>COUNT II</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Multi-State Subclass and, alternatively,**
**the California Subclass)**

138.   Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

139.   Plaintiff's individual claim is brought under the laws of California where he purchased his Class Bicycle. Plaintiff brings this claim individually and on behalf absent members of the Multi-State Subclass and California Subclass (collectively "Class Members") pursuant to the law of each state in which absent class members purchased Class Bicycles and Cranksets and identified below.

a.     Alaska Stat. §§ 45.02.314, et seq.;

b.     Ark. Code Ann. §§ 4-2-314, et seq.;

c.     Cal. Commercial Code § 2314 et seq.[18];

d.     Colo. Rev. Stat. Ann. §§ 4-2-314, et seq.;

e.     Conn. Gen. Stat. §§ 42a-2-314, et seq.;

---

[18] Alternatively, Cal. Civ. Code §§ 1792, 1791.1, et seq. (Song-Beverly Act), *infra*.

1    f.    Del. Code Ann. Tit. 6, §§ 2-314, et seq.;

2    g.    D.C. Code §§ 28:2-314, et seq.;

3    h.    Haw. Rev. Stat. §§ 490:2-314, et seq.;

4    i.    Ind. Code §§ 26-1-2-314, et seq.;

5    j.    Kan. Stat. Ann. §§ 84-2-314, et seq.;

6    k.    La. Civ. Code Ann. Art. 2520, et seq.;

7    l.    Md. Code Ann., Com. Law §§ 2-314, et seq.;

8    m.    Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, et seq.;

9    n.    Mass. Gen. Laws ch. 106, §§ 2-314, et seq.;

10    o.    Mich. Comp. Laws Ann. §§ 440.2314, et seq.;

11    p.    Minn. Stat. §§ 336.2-314, et seq.;

12    q.    Miss. Code Ann. §§ 75-2-314, et seq.;

13    r.    Mo. Rev. Stat. §§ 400.2-314, et seq.;

14    s.    Mont. Code Ann. §§ 30-2-314, et seq.;

15    t.    Neb. Rev. Stat. Ann. §§ 2-314, et seq.;

16    u.    Nev. Rev. Stat. §§ 104.2314, et seq.;

17    v.    N.H. Rev. Stat. Ann. §§ 382-A:2-314, et seq.;

18    w.    N.J. Stat. Ann. §§ 12A:2-314, et seq.;

19    x.    N.M. Stat. Ann. §§ 55-2-314, et seq.

20    y.    N.D. Cent. Code §§ 41-02-31, et seq.;

21    z.    Ohio Rev. Code Ann. §§ 1302.27, et seq.;

22    aa.    Okla. Stat. Tit. 12A, §§ 2-314, et seq.;

23    bb.    13 Pa. Stat. Ann. §§ 2314, et seq.;

24    cc.    R.I. Gen. Laws §§ 6A-2-314, et seq.;

25    dd.    S.C. Code Ann. §§ 36-2-314, et seq.;

26    ee.    S.D. Codified Laws §§ 57A-2-314, et seq.;

27    ff.    Tex. Bus. & Com. Code Ann. §§ 2.314, et seq.;

28    gg.    Utah Code Ann. §§ 70A-2-314, et seq.;

hh.   Va. Code Ann. §§ 8.2-314, et seq.;

ii.   Vt. Stat. Ann. Tit. 9A, §§ 2-314, et seq.;

jj.   W. Va. Code §§ 46-2-314, et seq.; and

kk.   Wyo. Stat. Ann. §§ 34.1-2-314, et seq.

140.   Defendants manufactured and distributed Class Bicycles and Cranksets for sale to Plaintiff and Class Members.

141.   Defendants impliedly warranted to Plaintiff and Class Members that the Class Bicycles and Cranksets were free of defects and were in merchantable condition and fit for the ordinary purpose for which such goods are used.

142.   As alleged herein, the Class Bicycles and Cranksets are defective, unmerchantable and unfit for their ordinary, intended purpose, and Defendants breached the implied warranty of merchantability because at the time of sale and all times hereafter:

- The Class Bicycles and Cranksets suffer from a safety defect that renders them unsafe to ride and/or operate;

- The Class Bicycles and Cranksets would not pass without objection  in the bicycle trade given the defect;

- The safety defect affects the central functionality of the Class Bicycles and Cranksets;

- The Class Bicycles and Cranksets were inadequately labeled as safe and reliable, and the labeling failed to disclose the defect; and

- The Class Bicycles and Cranksets do not conform to their labeling, which represents that the Class Bicycles and Cranksets are safe and reliable for their intended use.

143.   Due to the safety defect, Plaintiff and Class Members cannot operate their Class Bicycles and Cranksets as intended, substantially free from defects.  The Class Bicycles and Cranksets do not provide a safe and reliable way to propel a bicycle forward and pose a serious risk of injury, including crashing, bone fracture,

laceration, and death.  As a result, Plaintiff and Class Members cannot use their Class Bicycles and Cranksets for the purposes for which they purchased them.

144.  Privity of contract is not required here because Plaintiff and Class Members were each intended third-party beneficiaries of the Class Bicycles and Cranksets sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Class Bicycles and Cranksets and have no rights under the implied warranty provided with the Class Bicycles and Cranksets.

145.  Plaintiff and Class Members were the intended third-party beneficiaries of contracts between Defendants and its third-party retailers, and specifically, of Defendants' implied warranties. The retailers were not intended to be the ultimate consumers of the devices and have no rights under the warranty agreements; the warranty agreements were designed for and intended to benefit the consumers only.

146.  Plaintiff and Class Members timely provided Shimano with notice of the issues raised in this count and in this Complaint, and an opportunity to cure.

147.  Plaintiff and Class Members were excused from providing Defendants with notice and an opportunity to cure because it would have been futile. As explained above, Defendants have long been aware of the safety defect and Shimano inadequately recalled the Cranksets while expressly refusing to fully refund or replace all Cranksets in the marketplace, including Plaintiff's Class Bicycle and the Crankset equipped thereon.

148.  Plaintiff did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiff and Class Members have been injured in an amount to be proven at trial.

149.   Plaintiff, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## COUNT III
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -
BREACH OF IMPLIED WARRANTY
Cal. Civ. Code §§ 1791.1 & 1792
(On Behalf of the California Subclass)**

150.   Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

151.   Plaintiff brings this claim on behalf of himself and behalf of the California Subclass against Defendants. For purposes of this count, members of the California Subclass are referred to as "Class Members."

152.   Plaintiff and Class Members who purchased the Class Bicycles and Cranksets in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

153.   The Class Bicycles and Cranksets are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

154.   Defendants are the "manufacturers" and "sellers" of the Class Bicycles and Cranksets within the meaning of Cal. Civ. Code § 1791(j).

155.   Cal. Civ. Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. Defendants did not at any time properly disclaim the warranty.

156.   Defendants impliedly warranted to Plaintiff and Class Members that the Class Bicycles and Cranksets were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

157.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; …

[and] (4) conform to the promises or affirmations of fact made on the container or label."

158.   Defendants knew of the particular purpose for which the Class Bicycles and Cranksets were intended and impliedly warranted to Plaintiff and Class Members that the Class Bicycles (all of which were equipped with a Crankset), and Cranksets were "merchantable under Cal. Civ. Code §§ 1791(a) and 1792.

159.   However, the Class Bicycles and Cranksets do not have the quality that a reasonable purchaser would expect.

160.   The Class Bicycles and Cranksets are not merchantable and, as such, Defendants breached their implied warranties because:

a.   The Class Bicycles and Cranksets would not pass without objection in the trade because of the separation, delamination, and failure defect alleged herein.

b.   The Class Bicycles and Cranksets have a dangerous defect in that the defective Crankset part may separate, delaminate, and or fail when ordinary force to propel the bicycle forward to applied to the pedal, rendering safe control of a bicycle near impossible and posing a significant safety hazard for consumers.  As a result of the defect, consumers may lose control of their bicycle and crash endangering both themselves and the public at large. Such a design defect is extraordinarily dangerous and has rendered the Class Bicycles and Cranksets unsuitable for their principal and intended purpose.

c.   The Class Bicycles and Cranksets were inadequately labeled as safe and reliable, and the labeling failed to disclose the defect.

d.   The Class Bicycles and Cranksets do not conform to their labeling, which represents that they are safe and suitable for their intended use.

**CLASS ACTION COMPLAINT**

161.   For the same reasons, the Class Bicycles and Cranksets are not fit for the ordinary purpose they are used—propelling a bicycle forward—because of the safety defect as alleged herein.

162.   The safety defect in the Class Bicycles and Cranksets is latent.  Though the Class Bicycles and Cranksets appear operable when new, the safety defect existed at the time of sale and throughout the one year under the Song-Beverly Act. Accordingly, any subsequent discovery of the safety defect by Class Members beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

163.   Further, despite due diligence, Plaintiff and Class Members could not have discovered the safety defect before the manifestation of its symptoms in the form of separation, delamination, and failure while riding.  Those Class Members whose claims would have otherwise expired allege that the discovery rule and doctrine of fraudulent concealment tolls them.

164.   Defendants breached the implied warranty of merchantability by manufacturing and selling Class Bicycles and Cranksets containing the safety defect. The existence of the defect has caused Plaintiff and the other Class Members not to receive the benefit of their bargain and have caused Class Bicycles and Cranksets to depreciate.

165.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the other Class Members received goods whose defective condition substantially impairs their value to Plaintiff and the other California members. Plaintiff and the other California Class Members have been damaged as a result of the diminished value of the Class Bicycles and Cranksets.

166.   Plaintiff and the other California Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Bicycles and Cranksets or the overpayment or diminution in value of their Class Bicycles and Cranksets.

167.   Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class Members are entitled to costs and attorneys' fees.

## COUNT IV
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq. ("UCL")
### (On Behalf of the California Subclass)

168.   Plaintiff re-alleges and incorporates by reference the preceding allegations as though set forth fully herein.

169.   Plaintiff brings this count under California law, individually and on behalf of members of the California Subclass, referred to as "Class Members," against Defendants for their respective Class Bicycles and Cranksets.

170.   The UCL prohibits any "unlawful, unfair or fraudulent business" act or practice as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

171.   Defendants' acts and omissions as alleged herein constitute business acts and practices.

172.   Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.   The False Advertising Law;

b.   The Consumers Legal Remedies Act;

c.   The Commercial Code; and

d.   The Song-Beverly Act.

173.   Unfair: Defendant's conduct concerning the labeling, advertising, and sale of the Class Bicycles and Cranksets was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims. Distributing materially unsafe Class Bicycles and Cranksets have no public utility at all. These acts and practices offend established public policy. Defendants' conduct impaired competition and prevented Plaintiff and Class Members from

making fully informed decisions about whether to purchase the Class Bicycles and Cranksets and/or the price to be paid to purchase them.

174.    Any countervailing benefits to consumers or competition did not outweigh this injury. Selling Class Bicycles and Cranksets unsafe and unfit for their intended purposes only injures healthy competition and harms consumers. Defendants also minimized and ignored the scope of the defect for many years despite knowing the Class Bicycles and Cranksets are unreasonably dangerous, made repairs and replacements during the warranty period that caused instances of failure and unbeknownst to consumers did not provide a permanent fix, and knowingly sold defective Class Bicycles and Cranksets in hopes of forcing consumers to purchase replacement bicycles and cranksets.

175.    Defendants' conduct concerning the labeling, advertising, and sale of the Class Bicycles and Cranksets was and is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act.

176.    Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

177.    As set forth herein, Defendants designed, developed, manufactured, and sold Cranksets and installed then in the Class Bicycles, knowingly and intentionally marketed the Class Bicycles and Cranksets with the defect while misrepresenting that safety and reliability of the Class Bicycles and Cranksets while misrepresenting the safety and reliability of the Class Bicycles and Cranksets and/or knowingly omitting and failing to disclose material facts that the Class Bicycles and Cranksets suffer from the safety defect (and the costs, risks, and diminished value of the Class Bicycles and Cranksets as a result). Defendants knew that the Class Bicycles and Cranksets were defectively designed, posed an unreasonable safety

1    risk, and unsuitable for their intended use.

2        178.    Defendants were under a duty to Plaintiff and the Class Members to

3    disclose the defective nature of the Class Bicycles and Cranksets because:

4        a.    Defendants were in a superior position to know the true state of facts

5            about the defect and associated repair or replacement costs;

6        b.    Plaintiff and the Class Members could not reasonably have been

7            expected to learn or discover that the Class Bicycles and Cranksets had

8            a safety defect before purchase;

9        c.    Defendants knew that Plaintiff and Class Members could not reasonably

10           have been expected to learn or discover the defect and the associated

11           repair or replacement costs;

12       d.    Defendants made partial representations regarding the attributes and

13           benefits of the Class Bicycles and Cranksets on packaging, labeling, and

14           advertising while deceptively omitting the existence of the defect; and

15       e.    Defendants actively concealed the defect and the associated repair or

16           replacement costs including by responding to negative reviews and

17           inquiries without disclosing the defect, asserting that the Class Bicycles

18           and Cranksets were not defective, and replacing defectively designed

19           Class Bicycles and Cranksets with identical defectively designed Class

20           Bicycles and Cranksets.

21       179.    Defendants could have and should have prominently disclosed the

22   defect on the product listings on its website, on product packaging, and to third-party

23   retailers. Had Defendants disclosed the defect in this manner, Plaintiff and

24   reasonable consumers would have been aware of it.

25       180.    Defendants unfair or deceptive acts or practices were designed to

26   mislead and had a tendency or capacity to mislead and create a false impression in

27   in consumers that the Class Bicycles and Cranksets were properly functioning and

28   that the Class Bicycles and Cranksets did not contain any defects. Indeed, those

misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiff and Class Members, about the true safety and reliability of the Class Bicycles and Cranksets, as well as the quality and true value thereof.

181. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts were material to Plaintiff and Class Members' decisions in that a reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Cranksets or pay a lesser price. Plaintiff and Class Members were exposed to Defendants misrepresentations, concealments, omissions, and suppressions of facts, and relied on Defendants' misrepresentations that the Class Bicycles and Cranksets were safe and reliable.

182. Plaintiff's and Class Members reliance was reasonable, as they h ad no way of discerning Defendants' representations were false and misleading, or otherwise learning of the defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

183. Had Plaintiff and Class Members known about the defective nature of the Class Bicycles and Cranksets, they would not have purchased them or paid less for them.

184. Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Cranksets to unwary purchasers.

185. Plaintiff and Class Members suffered ascertainable loss as a direct and proximate result of Defendants' unlawful, fraudulent, and unfair business acts and practices. Plaintiff and Class Members will likely continue to be damaged, as will the general public, by Defendants' deceptive trade practices because Defendants continue disseminating misleading information on the packaging and in online retail listings regarding the Class Bicycles and Cranksets, and the Class Bicycles and Cranksets remain unsafe due to the defect therein. Defendants' unlawful acts and

practices complained of herein affect the public interest. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

186.    Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendants' unlawful conduct.

187.    Under Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore, to Plaintiff and Class Members, any money acquired by unfair competition, including restitution of all monies from the sale of the Class Bicycles and Cranksets and/or restitutionary disgorgement of all moneys which were unjustly acquired through acts of unlawful competition as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the California UCL.

188.    Plaintiff pleads this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiff's claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

## <u>COUNT V</u>
### Violation of California's Consumer Legal Remedies Act
### Cal. Civ. Code § 1750 et seq. ("CLRA")
### (On Behalf of the California Subclass)

189.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

190.    Plaintiff brings this count under California law individually and on behalf of the California Subclass, referred to as "Class Members" against Defendants for their respective Class Bicycles and Cranksets.

191.    Defendants are "persons" under Cal. C iv. Code § 1761(c).

192.    Plaintiffs and Class Members are "consumers" under Cal. Civ. Code § 1761(d) because they purchased the Class Bicycles and Cranksets primarily for

personal, family, or household use.

193. The purchase of the Class Bicycles and Cranksets by Plaintiff and Class Members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

194. The Class Bicycles and Cranksets are "goods" under Cal. Civ. Code § 1761(a)

195. The CLRA prohibits deceptive practices concerning the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

196. Defendants, directly and through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and Cranksets, as detailed above.

197. Defendants' violations of the CLRA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, and sale the Class Bicycles and Cranksets.

a.

198. As set forth herein, Defendants engaged in deceptive acts by knowingly omitting from Plaintiff and Class Members that the Class Bicycles and Cranksets suffer from the safety defect (and the costs, risks, and diminished value of the Class Bicycles and Cranksets as a result). Defendants knew that the Class Bicycles and Cranksets were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

199. Defendants had an ongoing duty to Plaintiff and the Class Members to disclose the defective nature of the Class Bicycles and Cranksets because:

a.   Defendants possessed exclusive access to and were in a superior position to know the true state of facts about the defect and associated

**CLASS ACTION COMPLAINT**

repair or replacement costs;

b.   Plaintiff and Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Cranksets were defective;

c.   Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Cranksets had a safety defect before purchase;

d.   Defendants knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

e.   Defendants knew that the Class Bicycles and Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

f.   The Class Bicycles and Cranksets pose a sever risk of harm in that, among other things, the Cranksets can break during normal operation causing crashes and physical injury;

g.   Defendants knew about and investigated the defect in the Class Bicycles and Cranksets , but did not notify consumers about it or launch a comprehensive recall until September 2023, all of which deprived Plaintiff and Class Members of an opportunity that otherwise would have led them to discovery the truth about the defect in the Class Bicycles and Cranksets;

h.   Defendants made partial representations regarding the attributes and benefits of the Class Bicycles and Cranksets on packaging, labeling, and advertising while deceptively omitting the existence of the defect; and

i.   Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and

Cranksets were not defective, and replacing defectively designed Class Bicycles and Cranksets with identical defectively designed Class Bicycles and Cranksets.

200. By misrepresenting the Class Bicycles and Cranksets as safe and reliable, properly functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the defect, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a. § 1770(a)(5): representing that goods have characteristics, uses, or benefits that they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

201. Defendants' misrepresentations, concealments, omissions and suppressions of material facts were designed to, and did, mislead, had a tendency or capacity to mislead and create false impression in consumers that the Class Bicycles and Cranksets had were safe and reliable. Defendants' misrepresentations, concealments, omissions and suppressions of material facts had a tendency to, and did, induce the purchase and use of the Class Bicycles and Cranksets for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the CLRA.

202. Defendants intended for Plaintiff and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing the Class Bicycles and Cranksets at the prices they paid believing the Class Bicycles and Cranksets would not have a defect that would affect their quality, reliability, and

safety.

203.    Defendants' misrepresentations, concealments, omissions, and suppressions of material facts were, and are, material Plaintiff and Class Members regarding the Class Bicycles and Cranksets, as Defendants intended. Plaintiff and Class Members were exposed to this misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations in deciding to purchase the Class Bicycles and Cranksets. Plaintiff's and Class Members' reliance was reasonable as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants concealed or failed to disclose. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

204.    A reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Cranksets or pay a lesser price. Had Plaintiff and Class Members known about the defective nature of the Class Bicycles and Cranksets, they would not have purchased them or paid less for them.

205.    Defendants could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendants disclosed the defect in this manner, Plaintiff and reasonable consumers would have been aware of it.

206.    Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Cranksets to unwary purchasers.

207.    As a direct and proximate result of Defendants' deceptive practices, Plaintiff and Class Members sustained economic injury and loss—either by purchasing a Class Bicycle or Crankset they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Bicycle and Crankset was purchased.

**CLASS ACTION COMPLAINT**

208.    Plaintiff and Class Members will likely continue to be damaged by Defendants' deceptive trade practices because Defendants continue disseminating misleading information on the Class Bicycles' and Cranksets' packaging and online retail listings. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

209.    Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendants' unlawful conduct.

210.    Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Bicycles and ' remain unsafe due to the defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

211.    Plaintiff currently seeks injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper, and does not seek money damages under this count. In accordance with section 1782(a) of the CLRA, Plaintiff's counsel, on behalf of Plaintiff and Class Members, sent Shimano notice, on October 27, 20223, of their alleged violations of Cal. Civ. Code §§ 1770(a) relating to the defectively designed Class Bicycles and Cranksets purchased by Plaintiff and Class Members, and demanded that they correct or agree to correct the actions described therein within thirty (30) days of such notice. Plaintiff's counsel, on behalf of Plaintiff and Class Members, sent Specialized notice, on October 30, 2023, of their alleged violation of Cal. Civ. Code §§ 1770(a) relating to the defectively designed Class Bicycles and Cranksets purchased by Plaintiff and Class Members, and demanded that they correct or agree to correct the actions described herein within thirty (30) days of such notice.

212.    If Defendants fails to correct or agree to correct their actions, Plaintiff will amend this Complaint to include compensatory and monetary damages to which Plaintiff and other Class Members are entitled.

213.    Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorney fees and costs, and any other relief the Court deems proper.

## COUNT VI
### Violation of California's False Advertising Law
### Cal. Bus. & Prof. Code § 17500, et seq. ("FAL")
### (On Behalf of the California Subclass)

214.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

215.    Plaintiff brings this count under California law, individually and on behalf of the California Subclass,  referred to as "Class Members."

216.    Plaintiff, Class Members and Defendants are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

217.    The California False Advertising Law ("FAL") states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

218.    Defendants, directly and through their agents, employees, and/or subsidiaries, violated the FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the strength, reliability, durability of the Class Bicycles and Cranksets, as detailed above. Defendants' actionable conduct includes misrepresentations, omissions, concealment, and failure to disclose the known separation, delamination, and failure defect of the Class Bicycles and Cranksets.

219.    The FAL imposes an ongoing duty on Defendants to refrain from unfair and deceptive business practices, which includes disclosing all material facts, such as latent dangerous defects, of the Class Bicycles and Cranksets to consumers because:

    a.    Defendants possessed exclusive access to and were in a superior position to know the true facts about the Defective Inflators;

    b.    Given the hidden and technical nature of the defect, Plaintiff and Class Members lack the sophisticated expertise in bicycle components and technology that would be necessary to discover the defect on their own;

    c.    Defendants knew that the defect gave rise to serious safety concerns for the consumers who purchased Class Bicycles and Cranksets;

    d.    The defect in the Class Bicycles and Cranksets poses a severe risk of harm in that, among other things, the Class Bicycles and Cranksets can break during normal use causing accidents and bodily injury;

    e.    Defendants knew about and investigated the defect in the Class Bicycles and Cranksets , but did not notify consumers about it or launch a comprehensive recall until September 2023, all of which deprived Plaintiff and Class Members of an opportunity that otherwise would have led them to discovery the truth about the defect in the Class Bicycles and Cranksets;

    f.    Defendants made partial representations regarding the attributes and benefits of the Class Bicycles and Cranksets on packaging, labeling, and advertising while deceptively omitting the existence of the defect; and

    g.    Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Cranksets were not defective, and replacing defectively designed Class

Bicycles and Cranksets with identical defectively designed Class Bicycles and Cranksets.

220.    By misrepresenting the Class Bicycles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the defect to consumers, Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

221.    Defendants made or caused to be made and disseminated throughout California advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiff and Class Members.

222.    Defendants' unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Cranksets were safe, secure, and reliable, and that they did not contain a defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true safety and reliability of the Class Bicycles and Cranksets, the quality of the Class Bicycles and Cranksets, and the true value of the Class Bicycles and Cranksets.

223.    Defendants intended for Plaintiff and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing Class Bicycles and Cranksets at the prices they paid believing that the Class Bicycles and Cranksets would not have a defect that would affect their quality, reliability, and safety.

224.    Defendants' misrepresentations, omissions, and concealment of materials regarding the defect in the Class Bicycles and Cranksets, and true characteristics thereof, were material to the decisions of Plaintiff and Class Members

to purchase the Class Bicycles and Cranksets, as Defendants intended. Plaintiff and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on the Defendants' misrepresentations and omissions that the Class Bicycles and Cranksets were safe, secure, and reliable in deciding to purchase and Class Bicycles and Cranksets.

225.    Absent Defendants' disclosure of material facts, Plaintiff and Class Members cannot discover the defect because it requires complex defective Crankset manufacturing knowledge and access to documents in the exclusive possession of the Defendants.

226.    The fact that the Class Bicycles and Cranksets may separate, delaminate, or fail is a material fact that requires disclosure under the FAL.

227.    Defendants did not disclose the defect to consumers until almost a decade after discovering it, in their recall on September 21, 2023.

228.    Plaintiff and Class Members reasonably relied on Defendants' concealment of misrepresentations, omissions, and concealment of material facts regarding the reliability, durability, and strength of the Class Bicycles and defective Crankset by purchasing them and believing they would be safe to use.

229.    Plaintiff's and Class Members' reliance on Defendants' misrepresentations, omissions and concealment was reasonable because they did not and could not know of the defect because they do not possess the necessary complex skill and knowledge required to identify it, and Defendants misrepresented, concealed and failed to disclose material facts that would have made discovery of the defect possible to ordinary consumers.

230.    Had Plaintiff and Class Members known the truth about the defective nature of the Class Bicycles and Cranksets, they would not have purchased them or would have paid significantly paid less for them.

231.    Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Bicycles and Cranksets

remain unsafe due to the defect. The unlawful acts and practices complained of, herein, affect the public interest.

232.     Plaintiff and Class Members will likely continue to be damaged by Defendants' deceptive trade practices because Defendants continue disseminating misleading information on the Class Bicycles and Cranksets' packaging and online retail listings. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

233.     Defendants' conduct caused and continues to cause substantial injury to Plaintiff and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendants' unlawful conduct.

234.     Plaintiff and Class Members seek an order enjoining the Defendants' false advertising, any such orders or judgments as may be necessary to restore to Plaintiff and Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

235.     Plaintiff pleads this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiff's claims for damages or enters judgment on them in favor of the Defendants, Plaintiff will have no adequate legal remedy.

## COUNT VII
### Unjust Enrichment/Quasi-Contract
### (On Behalf of the Nationwide Class and, alternatively, the California Subclass)

236.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

237.     Plaintiff brings this count under California law on behalf of the Nationwide Class and, alternatively, the California Subclass. Both the Nationwide Class and California Subclass are collectively referred to as "Class Members."

238.     Plaintiff and putative Class Members conferred a tangible and material

economic benefits on Defendants when they purchased the Class Bicycles and Cranksets. Defendants readily accepted and retained the benefits.

239.   Plaintiff and Class Members would not have purchased their Class Bicycles or Cranksets, or would have paid less for them, had they known of the defect at the time of the purchase. Therefore, Defendants profited from the sale of the Class Bicycles and Cranksets to the detriment and expense of Plaintiff and Class Members.

240.   Defendants knew or should have known that the payments rendered by Plaintiff and Class Members were given with the expectation that the Class Bicycles and Cranksets would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. Defendants knew of the benefits they were receiving because they were aware of the defect in the Class Bicycles and Cranksets, yet they failed to disclose this knowledge and misled Plaintiff and Class Members regarding the nature and quality of the Class Bicycles and Cranksets while profiting from their deception. As such, it would be unjust, inequitable and unconscionable for Defendants to retain the benefit of the payments under these circumstances.

241.   By their wrongful acts and omissions described herein, including selling the Class Bicycles and Cranksets which contain the safety defect described in detail above and did not otherwise perform as represented and for the particular purpose for which they were intended, Defendants were unjustly enriched at the expense of Plaintiff and putative Class Members.

242.   Plaintiff's detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

243.   Defendants have profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members when it would be unjust for Defendants to be permitted to retain the benefit. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Class Bicycles and Cranksets.

244.    Defendants have been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Class Bicycles and Cranksets, which retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured the Class Bicycles and Cranksets, and Defendants misrepresented by omission the nature of the Class Bicycles and Cranksets and knowingly marketed and promoted dangerous and Class Bicycles and Cranksets, which injured Plaintiff and Class Members because they would not have purchased the Class Bicycles and Cranksets based on the exact representations if the true facts concerning the Class Bicycles and Cranksets had been known.

245.    Plaintiff and putative Class Members are entitled to restitution and to recover from Defendants all amounts wrongfully collected and improperly retained by Defendant in the amount necessary to return Plaintiff and Class Members to the position they occupied prior to dealing with Defendants, with such amounts to be determined at trial.

246.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

247.    Plaintiff pleads this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiff's claims for damages or enters judgment on them in favor of the Defendants, Plaintiff will have no adequate legal remedy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated members of the Classes, prays for relief and judgment, including entry of an order:

A.    Declaring that this action is properly maintained as a class action,

certifying the proposed Classes, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B.  Directing that Defendants bear the costs of any notice sent to the Class(es);

C.  Declaring that Defendants must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Class Bicycles and Cranksets or order Defendants to make full restitution to Plaintiff and the members of the Classes.

D.  Awarding money damages;

E.  Awarding restitution and other appropriate equitable relief;

F.  Granting an injunction against Defendants to enjoin it from conducting its business through the unlawful, unfair, and fraudulent acts or practices set forth herein;

G.  Granting an Order requiring Defendants to fully and adequately disclose the safety risks associated with the Class Bicycles and Cranksets to anyone who may still be at risk of buying and using the Class Bicycles and Cranksets;

H.  Ordering a jury trial and damages according to proof;

I.  Enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

J.  Awarding attorneys' fees and litigation costs to Plaintiff and members of the Classes;

K.  Awarding prejudgment interest, and punitive damages as permitted by law; and

L.  Ordering such other and further relief as the Court deems just and proper.

**CLASS ACTION COMPLAINT**

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: October 31, 2023

Respectfully submitted,

*/s/ Roland Tellis*
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Sterling Cluff (SBN 267142)
scluff@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

Alexander E. Wolf (SBN 299775)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN**
awolf@milberg.com
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872.365.7060

*Attorneys for Plaintiff and the putative
Classes*

**CLASS ACTION COMPLAINT**