ROLAND TELLIS (SBN 186269)
**BARON & BUDD, P.C.**
15910 Ventura Blvd., Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
rtellis@baronbudd.com

STEPHEN G. LARSON (SBN 145225)
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone: (213) 436-4888
slarson@larsonllp.com

JASON L. LICHTMAN (pro hac vice)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
250 Hudson Street
New York, New York 10013
Telephone: (212) 355-9500
jlichtman@lchb.com

*Attorneys for Plaintiffs and Interim Co-Lead Class Counsel*

*(additional Plaintiffs' counsel appear on the signature block)*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| In re: Shimano Crankset Litigation | Case No.: 8:23-cv-02038-JVS(JDEx) |
|---|---|
| | **SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| | Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

PARTIES.................................................................................................................5

JURISDICTION AND VENUE ...........................................................................23

COMMON FACTUAL ALLEGATIONS.............................................................24

    A.    The Defective Cranksets and Class Bicycles.............................................24

    B.    Defendants' Prior Knowledge of the Defective Cranksets.......................28

    C.    Defendants' Knowledge of the Defective Cranksets.................................28

    D.    Defendants' Misrepresentations and Omissions Regarding the Defective Cranksets and Class Bicycles......................................................39

    E.    Defendants' Duty to Disclose the Crankset Defect ..................................47

    F.    Defendants' Recall Is Inadequate to Remedy the Defect or Harm Suffered by Plaintiffs and the Other Class Members ...............................50

    G.    Plaintiffs' Counsel Served Defendants with Sufficient Pre-Suit Notice.........................................................................................................54

    H.    Safety Risks Associated with Use of the Class Bicycles and Defective Cranksets and Harm Suffered by Plaintiffs and the Other Class Members.........................................................................................56

TOLLING OF APPLICABLE STATUTE OF LIMITATIONS .............................59

CLASS ACTION ALLEGATIONS .......................................................................61

INADEQUACY OF LEGAL REMEDIES.............................................................68

CLAIMS ASSERTED ON BEHALF OF THE NATIONWIDE CLASS ...............69

    A.    COUNT I: FRAUD....................................................................................69

        1.    Affirmative Misrepresentation.......................................................69

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

# TABLE OF CONTENTS

Page

    2.     Omission/Concealment ..................................................71

B.    COUNT II: UNJUST ENRICHMENT.....................................75

C.    COUNT III: VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)........78

D.    COUNT IV: FALSE ADVERTISING UNDER THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*) ..........................................85

E.    COUNT V: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)................................................................91

F.    COUNT VI: VIOLATIONS OF THE SONG-BEVERLY ACT (CIV. CODE § 1790, *ET SEQ.*), VIA BREACH OF IMPLIED WARRANTY ..........................................................98

CLAIMS ASSERTED ON BEHALF OF CALIFORNIA STATE SUBCLASS ..............................................................100

A.    COUNT VI: BREACH OF EXPRESS WARRANTY (CAL. COM. CODE §§ 2313 AND 10210) ...............................................100

B.    COUNT VII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE §§ 2314 AND 10212) ....................................................................104

C.    COUNT VIII: VIOLATIONS OF THE SONG-BEVERLY ACT (CIV. CODE § 1790, *ET SEQ.*), VIA BREACH OF IMPLIED WARRANTY ..........................................................107

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

## TABLE OF CONTENTS

Page

D.    COUNT IX: VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*).......110

E.    COUNT X: FALSE ADVERTISING UNDER THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*) .........................................117

F.    COUNT XI: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*).........................................124

G.    COUNT XII: FRAUD .............................................130

        1.    Affirmative Misrepresentation.........................................131

        2.    Omission/Concealment ..................................................132

H.    COUNT XIII: UNJUST ENRICHMENT ..............................................136

CLAIMS ASSERTED ON BEHALF OF FLORIDA STATE SUBCLASS ..........139

A.    COUNT XIV: BREACH OF EXPRESS WARRANTY (FLA. STAT. § 672.313) ..........................................139

B.    COUNT XV: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (FLA. STAT. § 672.314)...............................142

C.    COUNT XVI: VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201, *ET SEQ.*) ..........................................145

D.    COUNT XVII: FRAUD...........................................151

        1.    Affirmative Misrepresentation.........................................152

        2.    Omission/Concealment ..................................................153

E.    COUNT XVIII: UNJUST ENRICHMENT ..........................................157

3

2995224.1

# TABLE OF CONTENTS

Page

CLAIMS ASSERTED ON BEHALF OF ILLINOIS STATE SUBCLASS...........160

    A.    COUNT XIX: BREACH OF EXPRESS WARRANTY (810 ILL. COMP. STAT. 5/2-313) ......................................................160

    B.    COUNT XX: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (801 ILL. COMP. STAT. 5/2-314)................164

    C.    COUNT XXI: VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL COMP. STAT. 505/1, *ET SEQ.*)..........................................167

    D.    COUNT XXII: VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILL. COMP. STAT. 510/1, *ET SEQ.*) ...........................................173

    E.    COUNT XXIII: FRAUD ...........................................177

        1.    Affirmative Misrepresentation............................178

        2.    Omission/Concealment ....................................179

    F.    COUNT XXIV: UNJUST ENRICHMENT ...........................................183

CLAIMS ASSERTED ON BEHALF OF NEW YORK STATE SUBCLASS ......186

    A.    COUNT XXV: BREACH OF EXPRESS WARRANTY (N.Y. U.C.C. §§ 2-313)......................................................186

    B.    COUNT XXVI: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.Y. U.C.C. §§ 2-314)....................................189

    C.    COUNT XXVII: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349, *ET SEQ.*) .....192

    D.    COUNT XXVIII: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. GEN. BUS. LAW § 350, *ET SEQ.*) .....197

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

# TABLE OF CONTENTS

Page

E.    COUNT XXIX: FRAUD ..........................................................203

    1.    Affirmative Misrepresentation ..........................................203

    2.    Omission/Concealment ....................................................205

F.    COUNT XXX: UNJUST ENRICHMENT ............................................209

REQUEST FOR RELIEF ......................................................................211

JURY DEMAND ...............................................................................213

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT[1]**

Plaintiffs Steven Adelman, John Bongiovanni, Jose Delgado, Jose Erazo, Dave Gonyer, Jarett Hawkins, Christopher Jennings, Moussa Kouyate, Marcus Lewis, Kevin Litam, Maurice Scorsolini, Dimitri Semizarov, and Mike Tirado (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Amended Consolidated Class Action Complaint against Defendants Shimano North America Bicycle Inc. and Shimano North America Holding Inc. (together, "Shimano"), Specialized Bicycle Components Inc. ("Specialized"), Trek Bicycle Corporation ("Trek"), and Giant Bicycle, Inc. ("Giant") (together, the "Bicycle Manufacturer Defendants," and with Shimano, "Defendants"), and upon personal knowledge as to Plaintiffs' own conduct, and on information and belief as to all other matters based on an investigation by counsel, allege as follows:

## INTRODUCTION

1.    People trust and rely on manufacturers of bicycles and bicycle components to make safe products that do not give rise to a clear danger of personal injury. A "crankset" is the component of the bicycle that the chain and pedals attach to for pedaling. An example of a crankset from Shimano's website is included below.

2.    The crankset is critical to the functionality of a bicycle because without



it the bicycle cannot be pedaled. The crankset is also critical to the safety of the

---

[1]  Plaintiffs file this Second Amended Complaint pursuant to the terms of the Settlement Agreement.

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

bicycle because if it breaks while the bicycle is being ridden, the operator of the bicycle can fall off the bicycle or lose control and crash – concerns which are particularly applicable to modern "road" bicycles that are often ridden at high speed, near motor vehicles, with the operator's feet clipped into the pedals attached to the end of the crank arms.

3.      This case concerns certain "Hollowtech" 11-speed road cranksets (as defined below, the "Defective Cranksets") sold and distributed by Shimano and equipped on bicycles manufactured and sold by the Bicycle Manufacturer Defendants. "Class Bicycles" refers to all bicycles sold by the Bicycle Manufacturer Defendants that came equipped with a Defective Crankset.

4.      The Defective Cranksets share a common, uniform defect: the bonded crank parts can separate and break, posing a crash hazard to consumers. Examples of cranksets with certain bonded crank parts separated are pictured below.



5.      As a result of the common defect, instead of functioning as intended and as consumers expect, the Defective Cranksets can separate while the bicycle is in operation, causing crashes and significant personal injuries.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19   6.    The serious danger posed by the Defective Cranksets was not disclosed

20 to consumers until September 21, 2023, when, after years of denials, Shimano finally

21 acknowledged the widespread issue with the Defective Cranksets and issued a recall.

22   7.    Even though Shimano has finally acknowledged the widespread issue,

23 it is working hard to limit the cost of fixing the issue at the expense of consumers.

24 Rather than issuing refunds or replacements for all of the Defective Cranksets,

25 Shimano has taken the unconscionable position that only "[c]onsumers whose

26 cranksets show signs of bonding separation or delamination during [an] inspection

27 will be provided a free replacement crankset . . . that the dealer will professionally

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

install."

8.    This proposed remedy is a nightmare for riders and bike shops. Owners are left without usable bicycles while they get in line with hundreds of thousands of other impacted cyclists to schedule and await an inspection. When the inspection finally happens, a local bicycle mechanic is tasked with making a complex engineering judgment to determine whether the crankset shows sufficient deterioration to merit replacement. Worse, those consumers whose Defective Cranksets are judged not to warrant immediate replacement – *i.e.*, those consumers whose cranksets do not "show signs of bonding separation or delamination during the inspection" – are left in the frightening position of having to continue riding a dangerous bicycle, waiting on their cranksets to separate and potentially cause a crash before Shimano will give them a new one.

9.    As a result of the undisclosed "Crankset Defect," Plaintiffs and the other members of the proposed Classes (defined below) (collectively, the "Class") were harmed and suffered actual damages.

10.    The Defective Cranksets were sold at bicycle stores for between $270 and $1,500 and also as a standard component on Class Bicycles sold by the Bicycle Manufacturer Defendants for many thousands of dollars. The Crankset Defect significantly diminishes the value of the Defective Cranksets and the Class Bicycles on which they were installed.

11.    Further, Plaintiffs and the other Class Members did not receive the benefit of their bargain; rather, they purchased cranksets and bicycles that are of a lesser standard, grade, and quality than represented, and they did not receive cranksets and bicycles that met ordinary and reasonable consumer expectations regarding safe and reliable operation. Purchasers of Defective Cranksets or Class Bicycles paid more than they would have had the crankset defect been disclosed. Plaintiffs and the other Class Members were deprived of having a safe, defect-free

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

crankset installed on their bicycles, and Defendants unjustly benefited from the sale of these products and from the unconscionable limitations on the recall remedy now offered.

12.    Plaintiffs and the other Class Members also suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, and, as a direct result of the deficient recall remedy, have out-of-pocket economic damage by virtue of their having incurred the expense of taking the time to bring their bicycle in for the mandated inspection.

## **PARTIES**

13.    Plaintiff Steven Adelman ("Mr. Adelman") was, at all times relevant to this matter, a resident of Plainview, New York. Mr. Adelman purchased a new Bianchi Infinito CV Disc Ultegra DI2 ("Bianchi") bicycle from Bicycle Playground in May 2018 for approximately $5,600. The bicycle was equipped with a Shimano Ultegra FC-R-8000 crankset with the production code "PF." Through his exposure to Bianchi's and Shimano's advertisements, promotional materials, and other public statements, Adelman was aware of Bianchi's and Shimano's pervasive marketing messages that their bicycle products are high-quality and dependable, which was material to his decision to purchase the Class Bicycle. When Adelman acquired the Class Bicycle, he believed, based on Bianchi's and Shimano's pervasive marketing message, that he was purchasing a safe, high-quality, and dependable bicycle, one that is safer and more reliable than a bicycle that is not so marketed. At no point before Adelman purchased his Class Bicycle did Bianchi or Shimano disclose that it was not safe or dependable, or that it was equipped with a Defective Crankset. Had Defendants disclosed the defect, Adelman would have heard, seen, and been aware of it (and, indeed, Adelman became aware of the defect shortly after it was finally disclosed by Shimano in September 2023). Adelman had no way of knowing when he purchased his Class Bicycle that it contained a Defective Crankset and only

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

recently learned of the presence of the Crankset Defect in his Class Bicycle in September 2023, shortly before commencing his lawsuit. To Adelman's knowledge, the Defective Crankset in his Class Bicycle has not been repaired or replaced, and is not presently eligible for replacement under Shimano's limited recall. The value of Plaintiff's Class Bicycle has been diminished as a result of the Crankset Defect. If Plaintiff had known about the Crankset Defect, he either would have not purchased the Class Bicycle, or would have paid less to do so. Plaintiff would purchase bicycle products from Bianchi or Shimano in the future if Defendants' representations with respect to the safety, quality, and durability of those products were accurate.

14. Plaintiff John Bongiovanni ("Mr. Bongiovanni") was, at all times relevant to this matter, a resident of Chiefland, Florida. Mr. Bongiovanni purchased a new Trek Speed Concept equipped with a Shimano Ultegra FC-R8000 crankset with the production code "QB" in October 2021. Bongiovanni' Class Bicycle and Shimano Ultegra FC-R8000 crankset were covered by written warranties. Bongiovanni purchased the Class Bicycle in Tallahassee, FL for approximately $3,100. Through his exposure to Trek's and Shimano's advertisements, promotional materials and other public statements, Bongiovanni was aware of Trek's and Shimano's pervasive marketing messages that their bicycle products were high-quality and dependable, which was material to his decision to purchase the Class Bicycle. When Bongiovanni acquired the Class Bicycle, he believed, based on Trek's and Shimano's pervasive marketing messages, that he was purchasing a safe and dependable bicycle with a safe and dependable crankset—one that is higher-quality and more reliable than a crankset that is not marketed as high-quality and dependable. At no point before Bongiovanni purchased his Class Bicycle equipped with a Shimano Ultegra FC-R8000 crankset did Trek or Shimano disclose that it was not high-quality or dependable, or that the crankset on the bicycle had a defect that made it susceptible to delamination and breaking. Had Trek or Shimano disclosed

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

the defect, Bongiovanni would have heard, seen, and been aware of it (and, indeed, Bongiovanni became aware of the defect shortly after Shimano years later disclosed it in September 2023). Bongiovanni had no way of knowing when he purchased his Class Bicycle equipped with a Shimano Ultegra FC-R8000 crankset that it was defective and only recently learned of the presence of the defect in September 2023, shortly before commencing his lawsuit. If Bongiovanni had known about the defect, he either would have not purchased the Class Bicycle equipped with a Shimano Ultegra FC-R8000 crankset, or he would have paid less to do so. Bongiovanni would purchase Trek and Shimano bicycle products in the future if Trek's and Shimano's representations about their products, including with respect to their safety, quality and durability, were accurate.

15.     Plaintiff Jose Delgado ("Mr. Delgado") was, at all times relevant to this matter, a resident of Bell, California. In approximately April 2017, Mr. Delgado purchased a new Shimano Dura-Ace FC-9000 crankset with the production code "OF." On September 7, 2023, Mr. Delgado purchased a new Shimano Dura-Ace FC-R9100 crankset with the production code "RA." Through his exposure to Shimano's advertisements, promotional materials, and other public statements, Delgado was aware of Shimano's pervasive marketing messages that their bicycle products are high-quality and dependable, which was material to his decision to purchase the Shimano cranksets. When Delgado acquired the Shimano cranksets, he believed, based on Shimano's pervasive marketing message, that he was purchasing safe, high-quality, and dependable cranksets, that are safer and more reliable than cranksets that are not so marketed. At no point before Delgado purchased his Shimano cranksets did Shimano disclose that they were not safe or dependable, or that they were Defective. Had Defendants disclosed the defect, Delgado would have heard, seen, and been aware of it (and, indeed, Delgado became aware of the defect shortly after it was finally disclosed by Shimano in September 2023). Delgado had

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

no way of knowing when he purchased his Shimano cranksets that they contained a Defect and only recently learned of the presence of the Crankset Defect in September 2023, shortly before commencing his lawsuit. To Delgado's knowledge, the Defective Cranksets have not been repaired or replaced, and are not presently eligible for replacement under Shimano's limited recall. The value of Plaintiff's Shimano cranksets has been diminished as a result of the Crankset Defect. If Plaintiff had known about the Crankset Defect, he either would have not purchased the Shimano cranksets, or would have paid less to do so. Plaintiff would purchase bicycle products from Shimano in the future if Defendants' representations with respect to the safety, quality, and durability of those products were accurate.

16.    Plaintiff Jose Erazo ("Mr. Erazo") was, at all times relevant to this matter, a resident of the State of California, residing in Fontana. Mr. Erazo purchased a new Trek Emonda SL 7 Disc 52 BK-BL equipped with a Shimano Ultegra FC R8000 crankset with the production code "RD" in January 2020. Mr. Erazo purchased the Class Bicycle from a Trek Bicycle Superstore in San Marcos, California. Mr. Erazo's Class Bicycle and defective Shimano Ultegra FC-R8000 crankset were covered by written warranties. Through his exposure to Trek's and Shimano's advertisements, promotional materials, and other public statements, Mr. Erazo was aware of Trek's and Shimano's pervasive marketing messages that their bicycles and bicycle products were safe, high-quality, durable, and dependable, which was material to his decision to purchase the Class Bicycle. When Mr. Erazo acquired the Class Bicycle, he believed, based on Trek's and Shimano's pervasive marketing messages, that he was purchasing a safe, high-qualify, durable, and dependable bicycle with a safe, high-quality, durable, and dependable crankset – one that is safer, higher-quality, more durable, and more dependable than a crankset that is not marketed as safe, high-quality, durable, and dependable. At no point before Mr. Erazo purchased his Class Bicycle equipped with a defective Shimano Ultegra

8

2995224.1

FC-R8000 crankset did Trek or Shimano disclose that the crankset was not safe, high-quality, durable, and dependable, or that the crankset on the bicycle had a defect that made it susceptible to delamination and breaking. Had Trek or Shimano disclosed the Crankset Defect, Mr. Erazo would have heard, seen, and been aware of it (and, indeed, Mr. Erazo became aware of the defect shortly after Shimano, years later, disclosed it in September 2023). On or around September 22, 2023, shortly after the recall, Mr. Erazo inquired with Trek whether his Shimano Ultegra FC-R8000 crankset was eligible for replacement through the recall. The Trek representative advised Mr. Erazo that his crankset did not qualify because the crankset had not yet failed. Thus, Mr. Erazo is left with a dangerous Defective Crankset and he is forced to either continue riding a dangerous bicycle equipped with a Defective Crankset—risking a crash or personal injury—or choose to pay, out of pocket, to replace the Defective Crankset. Mr. Erazo had no way of knowing when he purchased his Class Bicycle equipped with a defective Shimano Ultegra FC-R8000 crankset that it was defective and only recently learned of the presence of the Defective Crankset in his Class Bicycle in September 2023, shortly before commencing his lawsuit. The value of Mr. Erazo's bicycle has been diminished as a result of the Crankset Defect. If Mr. Erazo had known about the Crankset Defect, he either would have not purchased the Class Bicycle equipped with a Shimano Ultegra FC-R8000 crankset, or would have paid less to do so. At a minimum, Mr. Erazo paid a price premium for the Class Bicycles and Defective Cranksets based on Trek's and Shimano's omission and concealment of the safety defect. Mr. Erazo would purchase Trek and Shimano bicycle products in the future if Trek's and Shimano's representations about their products, including with respect to their safety, quality, and durability, were accurate.

17.    Plaintiff Dave Gonyer ("Mr. Gonyer") was, at all times relevant to this matter, a resident of Cardiff, California. In August 2019, Mr. Gonyer purchased a

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

new Shimano Dura-Ace FC-R9100 crankset, with the production code "PL," from www.competitivecyclist.com. Mr. Gonyer's Shimano Dura-Ace FC-R9100 crankset was covered by a written warranty. Through his exposure to Shimano's advertisements, promotional materials, and other public statements, Mr. Gonyer was aware of Shimano's pervasive marketing messages that their bicycle products were safe, high-quality, durable, and dependable, which was material to his decision to purchase the Shimano Dura-Ace FC-R9100 crankset. When Mr. Gonyer purchased the Shimano Dura-Ace FC-R9100 crankset in August 2019, he believed, based on Shimano's pervasive marketing messages, that he was purchasing a safe, high-quality, durable, and dependable crankset – one that is safer, higher-quality, more durable, and more dependable than a crankset that is not marketed as safe, high-quality, durable, and dependable. At no point before Mr. Gonyer purchased his Shimano Dura-Ace FC-R9100 crankset did Shimano disclose that it was not safe, high-quality, durable, and dependable, or that the crankset had a defect that made it susceptible to delamination and breaking. Upon information and belief, had Shimano disclosed the defect, Mr. Gonyer would have heard, seen, and been aware of it (and, indeed, Mr. Gonyer became aware of the defect shortly after Shimano disclosed it in September 2023). After Shimano disclosed the defect, Mr. Gonyer took his Shimano Dura-Ace FC-R9100 crankset in for inspection as part of Shimano's recall, but Mr. Gonyer was denied a replacement crankset. Thus, Mr. Gonyer is forced to either continue riding a bicycle equipped with a defective crankset—risking a crash or personal injury—or choose to pay, out of pocket, to replace the defective crankset. Mr. Gonyer had no way of knowing when he purchased his Shimano Dura-Ace FC-R9100 crankset that it was defective and only recently learned of the presence of the defect in September 2023. The value of Mr. Gonyer's bicycle and crankset have been diminished as a result of the crankset defect. If Mr. Gonyer had known about the defect, he either would have not purchased the Shimano Dura-Ace FC-R9100

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

crankset, or he would have paid less to do so. At a minimum, Mr. Gonyer paid a price premium for the defective crankset based on Shimano's omission and concealment of the safety defect. Mr. Gonyer would purchase Shimano bicycle products in the future if Shimano's representations about its products, including with respect to their safety, quality and durability, were accurate.

18.     Plaintiff Jarett Hawkins was, at all times relevant to this matter, a resident of the State of California, residing in Solana Beach. Mr. Hawkins purchased a new Specialized Tarmac SL 6 Comp Edition equipped with a Shimano Ultegra FC-R8000 on or about July 16, 2020, making it part of Shimano's recall, from a bicycle shop in Encinitas, California. Mr. Hawkins' Class Bicycle and defective Shimano Ultregra FC-8000 crankset were covered by written warranties. Prior to purchasing his Class Bicycle, Mr. Hawkins conducted online research about Specialized, the bikes it sells, and the features he wanted included for his bike. Mr. Hawkins reviewed the Specialized website, including the page for the Class Bicycle he eventually purchased, several times before purchasing his Class Bicycle at a brick-and-mortar retailer where he saw a fact tag that listed the name, size and price of the Class Bicycle. Plaintiff saw the list of specs for his Class Bicycle and other promotional and marketing information on the Specialized website. Plaintiff also visited the Shimano website and viewed the information provided by Shimano about the defective Shimano Ultegra FC-R8000 crankset that came originally equipped on his Class Bicycle, including the attributes of the crankset. Through his exposure to Specialized's and Shimano's advertisements, promotional materials, and other public statements, Mr. Hawkins was aware of Specialized's and Shimano's pervasive marketing messages that their bicycles and bicycle products were safe, high-quality, durable, and dependable, which was material to his decision to purchase the Class Bicycle. When Mr. Hawkins acquired the Class Bicycle, he believed, based on Specialized's and Shimano's pervasive marketing messages, that

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

he was purchasing a safe, high-qualify, durable, and dependable bicycle with a safe and dependable crankset – one that is safer, higher-quality, more durable, and more dependable than a crankset that is not marketed as safe, high-quality, durable, and dependable. At no point before Mr. Hawkins purchased his Class Bicycle equipped with a defective Shimano Ultegra FC-R8000 crankset did Specialized or Shimano disclose that the crankset was not safe, high-quality, durable, and dependable, or that the crankset on the bicycle had a defect that made it susceptible to delamination and breaking. As a reasonable consumer, Mr. Hawkins believed that information regarding critical safety defects, like the substantial risk of physical injury due to sudden separation and failure of the Defective Crankset, would have been prominently disclosed by the manufacturer on the packing and online listings, and would have been disclosed by third-party retail sellers at the direction of Specialized and Shimano. Because no such risk was disclosed, let alone prominently on packaging or other advertising, Mr. Hawkins understood that the Class Bicycle and Defective Crankset were safe under ordinary use. Mr. Hawkins relied on Specialized's and Shimano's representations and omissions in purchasing the Class Bicycle and Defective Crankset. Had Specialized or Shimano disclosed the Crankset Defect, Mr. Hawkins would have heard, seen, and been aware of it (and, indeed, Mr. Hawkins became aware of the defect shortly after Shimano, years later, disclosed it in September 2023). While riding his bicycle, Plaintiff's Shimano Crankset broke mid-ride. Plaintiff notified Shimano and submitted a warranty claim for the defective Crankset. On April 4, 2022, Shimano replaced the defective Crankset with the exact same Crankset that, on information and belief, continues to be defective and is substantially certain to fail for the reasons above. Thus, Mr. Hawkins is left with a dangerous Defective Crankset and he is forced to either continue riding a dangerous bicycle equipped with a Defective Crankset—risking a crash or personal injury—or choose to pay, out of pocket, to replace the Defective Crankset. Mr. Hawkins had no

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

way of knowing when he purchased his Class Bicycle equipped with a defective Shimano Ultegra FC-R8000 crankset that it was defective and only recently learned of the presence of the defective crankset in his Class Bicycle in September 2023, shortly before commencing his lawsuit. The value of Mr. Hawkins' bicycle has been diminished as a result of the Crankset Defect. If Mr. Hawkins had known about the defect, he either would have not purchased the Class Bicycle equipped with a Shimano Ultegra FC-R8000 crankset, or he would have paid less to do so. At a minimum, Mr. Hawkins paid a price premium for the Class Bicycles and Defective Cranksets based on Specialized's and Shimano's omission and concealment of the safety defect. Mr. Hawkins would purchase Trek and Shimano bicycle products in the future if Trek's and Shimano's representations about their products, including with respect to their safety, quality, and durability, were accurate.

19. Plaintiff Chris Jennings is currently a resident of the State of Texas. Mr. Jennings purchased a Shimano Ultegra R8000 Groupset, while living in California, that included a Shimano Ultegra FC-R8000 Crankset with the production on or about July 30, 2019, making it part of Shimano's recall, from merlincycles.com. The crankset was shipped to his home, then in Irvine, California. Mr. Jennings's defective Shimano Ultegra R8000 crankset was covered by a written warranty. On information and belief, because Mr. Jennings purchased the Shimano Ultegra R8000 crankset during the time period covered by the recall, it is a Defective Crankset. Prior to purchasing this Defective Crankset, Mr. Jennings visited the Shimano website and viewed its specifications. He was aware of and relied on the representations made on the Shimano listing in purchasing his Defective Crankset. Through his exposure to Shimano's advertisements, promotional materials, and other public statements, Mr. Jennings was aware of Shimano's pervasive marketing messages that its bicycle products were safe, high-quality, durable, and dependable, which was material to his decision to purchase the Defective Crankset. When Mr. Jennings acquired the

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Defective Crankset, he believed, based on Shimano's pervasive marketing messages, that he was purchasing a safe and dependable crankset – one that is safer, higher-quality, more durable, and more dependable than a crankset that is not marketed as safe, high-quality, durable, and dependable. At no point before Mr. Jennings purchased his Defective Crankset did Shimano disclose that the crankset was not safe, high-quality, durable, and dependable, or that the crankset had a defect that made it susceptible to delamination and breaking. As a reasonable consumer, Mr. Jennings believed that information regarding critical safety defects, like the substantial risk of physical injury due to sudden separation and failure of the Defective Crankset, would have been prominently disclosed by the manufacturer on the packing and online listings, and would have been disclosed by third-party retail sellers at the direction of Shimano. Because no such risk was disclosed, let alone prominently on packaging or other advertising, Mr. Jennings understood that the Defective Crankset was safe under ordinary use. Mr. Jennings relied on Shimano's representations and omissions in purchasing the Defective Crankset. Had Shimano disclosed the Crankset Defect, Mr. Jennings would have heard, seen, and been aware of it (and, indeed, Mr. Jennings became aware of the defect shortly after Shimano, years later, disclosed it in September 2023). Mr. Jennings had no way of knowing when he purchased his Defective Crankset that it was defective and only recently learned of the Crankset Defect in September 2023, shortly before commencing his lawsuit. The value of Mr. Jennings's Ultegra R8000 crankset has been diminished as a result of the Crankset Defect. If Mr. Jennings had known about the defect, he either would have not purchased the Ultegra R8000 crankset or would have paid less to do so. At a minimum, Mr. Jennings paid a price premium for the Defective Crankset based on Shimano's omission and concealment of the safety defect. Mr. Jennings would purchase Shimano bicycle products in the future if Shimano's representations about its products, including with respect to their safety, quality, and

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

durability, were accurate.

20.    Plaintiff Moussa Kouyate was, at all times relevant to this matter, a resident of the State of New York. Mr. Kouyate purchased a new Mongoose Flatrock Hardtail mountain bicycle that came equipped with a Shimano Dura-Ace FC-R9100 with the production code "LG." Mr. Kouyate purchased the Class Bicycle from Daniel's Bike Shop in The Bronx, New York in May 2023. Mr. Kouyate's Class Bicycle and defective Shimano Dura-Ace FC-R9100 crankset were covered by written warranties. Through his exposure to Mongoose and Shimano's advertisements, promotional materials, and other public statements, Mr. Kouyate was aware of Mongoose and Shimano's pervasive marketing messages that their bicycles and bicycle products were safe, high-quality, durable, and dependable, which was material to his decision to purchase the Class Bicycle. When Mr. Kouyate purchased his Class Bicycle in May 2023, he believed, based on Mongoose and Shimano's pervasive marketing messages, that he was purchasing a safe, high-quality, durable, and dependable bicycle with a safe, high-quality, durable, and dependable crankset – one that is safer, higher-quality, more durable, and more dependable than one that is not marketed as safe, high-quality, durable, and dependable. At no point before Mr. Kouyate purchased his Class Bicycle equipped with a defective Shimano Dura-Ace FC-R9100 crankset did Mongoose or Shimano disclose that it was not safe, high-quality, durable, and dependable, or that the crankset on the bicycle had a defect that made it susceptible to delamination and breaking. Had Mongoose or Shimano disclosed the defect, Mr. Kouyate would have heard, seen, and been aware of it (and, indeed, Mr. Kouyate became aware of the defect shortly after Shimano disclosed it in September 2023). Specifically, Mr. Kouyate became aware of the defect when his Shimano crankset broke while he was riding his bicycle in October 2023. He had the Shimano crankset replaced in or around November 2023. Thus, Mr. Kouyate was left with a dangerous Defective

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

Crankset, and he was forced to either continue riding a dangerous bicycle equipped with a Defective Crankset—risking a crash or personal injury—or to pay out of pocket to replace the Defective Crankset. Mr. Kouyate had no way of knowing when he purchased his Class Bicycle equipped with a defective Shimano Dura-Ace FC-R9100 crankset that it was defective and only recently learned of the presence of the defect in September 2023, shortly before commencing his lawsuit. The value of Mr. Kouyate's bicycle has been diminished as a result of the Crankset Defect. If Mr. Kouyate had known about the defect, he either would have not purchased the Class Bicycle equipped with a defective Shimano Dura-Ace FC-R9100 crankset, or he would have paid less to do so. At a minimum, Mr. Kouyate paid a price premium for the Class Bicycles and Defective Cranksets based on Mongoose and Shimano's omission and concealment of the safety defect. Mr. Kouyate would purchase Mongoose and Shimano bicycle products in the future if Mongoose and Shimano's representations about their products, including with respect to their safety, quality, and durability, were accurate.

21. Plaintiff Marcus Lewis was, at all times relevant to this matter, a resident of the State of Illinois, residing in Chicago. Mr. Lewis purchased a new Specialized Tarmac Disk Comp SL6 bicycle that came equipped with a Shimano Ultegra FC-R8000 crankset with the production code "QD." Mr. Lewis purchased the Class Bicycle from Kozy Inc. in Chicago, Illinois for over $2,500. Mr. Lewis placed the Class Bicycle on layaway with Kozy Inc. in September 2019 and completed the purchase and first took possession of the Class Bicycle in March 2023. Mr. Lewis's Class Bicycle and defective Shimano Ultegra FC-R8000 crankset were covered by written warranties. Through his exposure to Specialized's and Shimano's advertisements, promotional materials, and other public statements, Mr. Lewis was aware of Specialized's and Shimano's pervasive marketing messages that their bicycles and bicycle products were safe, high-quality, durable, and dependable,

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

which was material to his decision to purchase the Class Bicycle. When Mr. Lewis placed the Class Bicycle on layaway in September 2019, and when he completed the purchase and first took possession of the Class Bicycle in March 2023, he believed, based on Specialized's and Shimano's pervasive marketing messages, that he was purchasing a safe, high-quality, durable, and dependable bicycle with a safe, high-quality, durable, and dependable crankset – one that is safer, higher-quality, more durable, and more dependable than a crankset that is not marketed as safe, high-quality, durable, and dependable. At no point before Mr. Lewis purchased his Class Bicycle equipped with a defective Shimano Ultegra FC-R8000 crankset did Specialized or Shimano disclose that it was not safe, high-quality, durable, and dependable, or that the crankset on the bicycle had a defect that made it susceptible to delamination and breaking. Had Specialized or Shimano disclosed the defect, Mr. Lewis would have heard, seen, and been aware of it (and, indeed, Mr. Lewis became aware of the defect shortly after Shimano disclosed it in September 2023). After Shimano disclosed the defect, Mr. Lewis took his Shimano Ultegra FC-R8000 crankset in for inspection as part of Shimano's recall, but Mr. Lewis was denied a replacement crankset. Thus, Mr. Lewis is left with a dangerous Defective Crankset and he is forced to either continue riding a dangerous bicycle equipped with a Defective Crankset—risking a crash or personal injury—or choose to pay, out of pocket, to replace the Defective Crankset. Mr. Lewis had no way of knowing when he purchased his Class Bicycle equipped with a defective Shimano Ultegra FC-R8000 crankset that it was defective and only recently learned of the presence of the defect in September 2023, shortly before commencing his lawsuit. The value of Mr. Lewis's bicycle has been diminished as a result of the Crankset Defect. If Mr. Lewis had known about the defect, he either would have not purchased the Class Bicycle equipped with a defective Shimano Ultegra R-8000 crankset, or would have paid less to do so. At a minimum, Mr. Lewis paid a price premium for the Class Bicycles

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

1    and Defective Cranksets based on Specialized's and Shimano's omission and
2    concealment of the safety defect. Mr. Lewis would purchase Specialized and
3    Shimano bicycle products in the future if Specialized's and Shimano's
4    representations about their products, including with respect to their safety, quality,
5    and durability, were accurate.

6          22.    Plaintiff Kevin Litam was, at all times relevant to this matter, a resident
7    of the State of California, residing in Glendale. Mr. Litam purchased a new BMC
8    Roadmachine SLR03 bicycle that came equipped with a Shimano Ultegra FC-6800
9    crankset with the production code "NL." Mr. Litam purchased the bicycle from Velo
10   Pasadena Inc. in Pasadena, California for approximately $2,800. Mr. Litam's Class
11   Bicycle and Shimano defective Ultegra FC-6800 crankset was covered by a written
12   warranty. Through his exposure to BMC's and Shimano's advertisements,
13   promotional materials, and other public statements, Mr. Litam was aware of BMC's
14   and Shimano's pervasive marketing messages that their bicycles and bicycle
15   components were safe, high-qualify, durable, and dependable, which was material
16   to his decision to purchase the Class Bicycle. Indeed, Mr. Litam specifically sought
17   out a bicycle that was equipped with the Shimano Ultegra FC-6800 crankset because
18   of his understanding that it was a safe, high-qualify, durable, and dependable bicycle
19   component. When Mr. Litam acquired the Class Bicycle, he believed, based on
20   BMC's and Shimano's pervasive marketing messages, that he was purchasing a safe,
21   high-qualify, durable, and dependable bicycle with a safe, high-quality, durable, and
22   dependable crankset—one that is safer, higher-quality, more durable, and more
23   dependable than a bicycle that is not marketed as safe, high-qualify, durable, and
24   dependable. At no point before Mr. Litam purchased his bicycle did BMC or
25   Shimano disclose that it was not safe, high-qualify, durable, and dependable, or that
26   the crankset on the bicycle had a defect that made it susceptible to delamination and
27   breaking. Had Defendants disclosed the Crankset Defect, Mr. Litam would have
28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

heard, seen, and been aware of it (and, indeed, Mr. Litam became aware of the Shimano recall shortly after Shimano finally announced it in September 2023). After Shimano disclosed the defect, Mr. Litam took his Shimano Ultegra FC-6800 crankset in for inspection as part of Shimano's recall, but Mr. Litam was denied a replacement crankset. Mr. Litam had no way of knowing when he purchased his Class Bicycle equipped with a defective Shimano Ultegra FC-6800 crankset that it contained a Defective Crankset and only recently learned of the presence of the defective crankset in his Class Bicycle in September 2023, shortly before commencing his lawsuit. The value of Mr. Litam's bicycle has been diminished as a result of the Crankset Defect. If Mr. Litam had known about the Crankset Defect, he either would have not purchased the Class Bicycle equipped with a Shimano Ultegra FC-6800 crankset, or he would have paid less to do so. At a minimum, Mr. Litam paid a price premium for the Class Bicycles and Defective Cranksets based on BMC's and Shimano's omission and concealment of the safety defect. Mr. Litam would purchase bicycle products from BMC or Shimano in the future if Defendants' representations with respect to the safety, quality, and durability of those products were accurate.

23.    Plaintiff Maurice Scorsolini was, at all times relevant to this matter, a resident of the State of Florida, residing in Davenport. Mr. Scorsolini purchased a Giant Advanced SL bicycle from The Pro's Closet in July 2022, for approximately $3,380. The Class Bicycle was equipped with a Shimano Ultegra FC-6800 crankset with the production code "OC." Mr. Scorsolini's Class Bicycle and defective Shimano Ultegra FC-6800 crankset were covered by written warranties. Through his exposure to Giant's and Shimano's advertisements, promotional materials, and other public statements, Mr. Scorsolini was aware of Giant's and Shimano's pervasive marketing messages that their bicycle products were safe, high-quality, durable, and dependable, which was material to his decision to purchase the Class Bicycle. When

19

2995224.1

Mr. Scorsolini acquired the Class Bicycle, he believed, based on Giant's and Shimano's pervasive marketing message, that he was purchasing a safe, high-quality, durable, and dependable bicycle with a safe, high-quality, durable and dependable crankset—one that is safer, higher-quality, more durable, and more dependable than a bicycle that is not so marketed. At no point before Mr. Scorsolini purchased his Class Bicycle did Giant or Shimano disclose that it was not safe, high-quality, durable, and dependable, or that the crankset on the bicycle had a defect that made it susceptible to delamination and breaking. Had Giant or Shimano disclosed the defect, Mr. Scorsolini would have heard, seen, and been aware of it (and, indeed, Mr. Scorsolini became aware of the defect shortly after it was finally disclosed by Shimano in September 2023). Mr. Scorsolini had no way of knowing when he purchased his Class Bicycle equipped with a defective Shimano Ultegra FC-6800 crankset that it contained a Defective Crankset and only recently learned of the presence of the Crankset Defect in his Class Bicycle in September 2023, shortly before commencing his lawsuit. To Mr. Scorsolini's knowledge, the Defective Crankset in his Class Bicycle has not been repaired or replaced and is not presently eligible for replacement under Shimano's limited recall. The value of Plaintiff's Class Bicycle has been diminished as a result of the Crankset Defect. If Plaintiff had known about the Crankset Defect, he either would have not purchased the Class Bicycle, or would have paid less to do so. At a minimum, Mr. Scorsolini paid a price premium for the Class Bicycles and Defective Cranksets based on Giant's and Shimano's omission and concealment of the safety defect. Plaintiff would purchase bicycle products from Giant or Shimano in the future if Defendants' representations with respect to the safety, quality, and durability of those products were accurate.

24.     Plaintiff Dimitri Semizarov ("Mr. Semizarov") was, at all times relevant to this matter, a resident of Evanston, Illinois. In September 2021, Mr. Semizarov purchased a new Bianchi bicycle that came equipped with a Shimano

Dura-Ace FC-R9100P crankset with the production code "QA." Mr. Semizarov purchased the bicycle from R&A Cycles in Brooklyn, NY. Mr. Semizarov's Shimano Dura-Ace FC-9100P crankset was covered by a written warranty. Through his exposure to Shimano's advertisements, promotional materials, and other public statements, Mr. Semizarov was aware of Shimano's pervasive marketing messages that its bicycle products were high-quality and dependable, which was material to his decision to purchase the bicycle and crankset. When Mr. Semizarov purchased the bicycle he believed, based on Shimano's pervasive marketing messages, that he was purchasing a safe and dependable bicycle with a safe and dependable crankset – one that is higher-quality and more reliable than a crankset that is not marketed as high-quality and dependable. At no point before Mr. Semizarov purchased his bicycle equipped with a Shimano Dura-Ace FC-9100P crankset did Shimano disclose that the crankset was not high-quality or dependable, or that the crankset had a defect that made it susceptible to delamination and breaking. Upon information and belief, had Shimano disclosed the defect, Mr. Semizarov would have heard, seen, and been aware of it (and, indeed, Mr. Semizarov became aware of the defect shortly after Shimano disclosed it in September 2023). After Shimano disclosed the defect, Mr. Semizarov took his Shimano Dura-Ace FC-R9100P crankset in for inspection as part of Shimano's recall, but was denied a replacement crankset. The mechanic that inspected Mr. Semizarov's bicycle advised Mr. Semizarov that, although he is not presently eligible for a replacement crankset as part of Shimano's recall, Mr. Semizarov should nevertheless consider acquiring a different crankset in light of the danger that the defect will manifest in the future and cause the Shimano Dura-Ace FC-9100P crankset to break. Thus, Mr. Semizarov is left in the unenviable position of either paying out of pocket for a new crankset or continuing to ride a dangerous bicycle while he waits on the crankset to break and potentially cause a crash and personal injury. Mr. Semizarov had no way of knowing when he purchased

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

his bicycle equipped with a Shimano Dura-Ace FC-9100P crankset that it was defective and only recently learned of the presence of the defect in September 2023. If Mr. Semizarov had known about the defect, he either would have not purchased the bicycle equipped with a Shimano Dura-Ace FC-9100P crankset, or he would have paid less to do so. Mr. Semizarov would purchase Shimano bicycle products in the future if Shimano's representations about its products, including with respect to their safety, quality and durability, were accurate.

25.    Plaintiff Mike Tirado ("Mr. Tirado") was, at all times relevant to this matter, a resident of Casselberry, Florida. Mr. Tirado purchased a new Trek Madone SLR 9 ("Trek") bicycle from David's Worth Cycle in January 2019 for approximately $9,200. The bicycle was equipped with a Shimano Dura Ace FC-R-9100 crankset with the production code "PB." Through his exposure to Trek's and Shimano's advertisements, promotional materials, and other public statements, Tirado was aware of Trek's and Shimano's pervasive marketing messages that their bicycle products are high-quality and dependable, which was material to his decision to purchase the Class Bicycle. When Tirado acquired the Class Bicycle, he believed, based on Trek's and Shimano's pervasive marketing message, that he was purchasing a safe, high-quality, and dependable bicycle, one that is safer and more reliable than a bicycle that is not so marketed. At no point before Tirado purchased his Class Bicycle did Trek or Shimano disclose that it was not safe or dependable, or that it was equipped with a Defective Crankset. Had Defendants disclosed the defect, Tirado would have heard, seen, and been aware of it (and, indeed, Tirado became aware of the defect shortly after it was finally disclosed by Shimano in September 2023). Tirado had no way of knowing when he purchased his Class Bicycle that it contained a Defective Crankset and only recently learned of the presence of the Crankset Defect in his Class Bicycle in September 2023, shortly before commencing his lawsuit. To Tirado's knowledge, the Defective Crankset in

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

his Class Bicycle has not been repaired or replaced, and is not presently eligible for replacement under Shimano's limited recall. The value of Plaintiff's Class Bicycle has been diminished as a result of the Crankset Defect. If Plaintiff had known about the Crankset Defect, he either would have not purchased the Class Bicycle, or would have paid less to do so. Plaintiff would purchase bicycle products from Trek or Shimano in the future if Defendants' representations with respect to the safety, quality, and durability of those products were accurate.

26. Mr. Adelman, Mr. Bongiovanni, Mr. Delgado, Mr. Erazo, Mr. Gonyer, Mr. Hawkins, Mr. Jennings, Mr. Kouyate, Mr. Lewis, Mr. Litam, Mr. Scorsolini, Mr. Semizarov, and Mr. Tirado are collectively referred to as "Plaintiffs."

27. Defendant Shimano North America Bicycle Inc. (together with Shimano North America Holding Inc., "Shimano") is a California corporation with its principal place of business in Irvine, California.

28. Defendant Shimano North America Holding Inc. is a California corporation with its principal place of business in Irvine, California.

29. Defendant Specialized Bicycle Component Inc. ("Specialized") is a Delaware corporation with its principal place of business in Morgan Hill, California.

30. Defendant Trek Bicycle Corporation ("Trek") is a Wisconsin corporation with its principal place of business in Waterloo, Wisconsin.

31. Defendant Giant Bicycle, Inc. ("Giant") is a Virginia corporation with its principal place of business in Newbury Park, California.

32. Shimano, Specialized, Trek, and Giant are collectively referred to as "Defendants").

## JURISDICTION AND VENUE

33. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because: (a) there are at least 100 class members; (b) the matter in controversy

exceeds $5 million, exclusive of interest and costs; and (c) at least one plaintiff is a citizen of a different state than at least one defendant.

34.     This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. § 1965 because Defendants maintain minimum contacts with this state, and intentionally avail themselves of the laws of the United States and this state, by conducting a substantial amount of business in California. Defendants continuously and systematically place goods into the stream of commerce for distribution in California, sell the Class Bicycles and Defective Cranksets to individuals in California, and engage in wholesale of the Class Bicycles and Defective Cranksets to retailers they know will resell the Class Bicycles and Defective Cranksets at retail to individuals in California. Because of Defendants' conduct as alleged in this lawsuit, the Class Bicycles and Defective Cranksets were sold to and purchased by individuals in this State.

35.     Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## COMMON FACTUAL ALLEGATIONS

### A.     The Defective Cranksets and Class Bicycles

36.     Shimano manufactures, distributes, and sells components, technologies, services, and gears for bicycles, including cranksets. Among the various bicycle components that Shimano sells are a range of cranksets that include 11-Speed Bonded Hollowtech II Road Cranksets subject to a recall by Shimano on September 21, 2023, including the following models: Ultegra FC-6800, Dura-Ace FC-9000, Ultegra FC-R8000, Dura-Ace FC-R9100 and FC-R9100P. The recalled models were manufactured prior to July 2019 and have printed 'Ultegra' or 'Dura Ace' logos on the arm. The affected models have the following two-letter production code on the backside of the crank arm where the pedals are attached: KF, KG, KH,

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

KI, KJ, KK, KL, LA, LB, LC, LD, LE, LF, LG, LH, LI, LJ, LK, LL, MA, MB, MC, MD, ME, MF, MG, MH, MI, MJ, MK, ML, NA, NB, NC, ND, NE, NF, NG, NH, NI, NJ, NK, NL, OA, OB, OC, OD, OE, OF, OG, OH, OI, OJ, OK, OL, PA, PB, PC, PD, PE, PF, PG, PH, PI, PJ, PK, PL, QA, QB, QC, QD, QE, QF, QG, QH, QI, QJ, QK, QL, RA, RB, RC, RD, RE, and RF.[2] These cranksets are collectively referred to as the "Defective Cranksets."

37.    Approximately 680,000 Defective Cranksets were sold for between $270 and $1,500 each at bicycle stores nationwide – both as standalone components and originally equipped on bicycles sold by companies like Specialized, Trek, and Giant– from January 2012 through August 2023. The bicycles sold by these companies that were originally equipped with a Defective Crankset are referred to collectively as "Class Bicycles."

38.    The Defective Cranksets, as defined above, all suffer from an identical design defect. As a result of the defect, the Defective Cranksets are unreasonably



likely to break, separate, de-bond, or delaminate during normal use.  When the Defective Crankset separates or delaminates, the bicyclist loses the ability to properly balance, operate, and propel the bicycle, substantially increasing the risks

---

[2] Shimano Recalls Cranksets for Bicycles Due to Crash Hazard | CPSC.gov (last visited on December 27, 2023).

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

of a crash and serious injury.

39.     While the Defective Crankset models may differ in weight, price, and certain specs, the Defective Cranksets all share the same dangerously defective bind, weld, bond, or material that causes the Defective Cranksets to break, separate, de-bond or delaminate and fail under normal use.

40.     The defect at issue here involves a vital component of a bicycle, and it is unsafe to operate a bicycle with a crankset that may fail and cause an operator to lose control. A sturdy and reliable crankset is absolutely critical to the safe operation of a bicycle because bicyclists apply a range of their weight—from full weight while standing, to partial weight while pedaling in the seated position—to the crankset, and bicyclists base their balance on their ability to apply weight to the crankset consistently and reliably allowing the bicycle to remain upright and operational. Therefore, consumers cannot safely ride their bicycles, including the Class Bicycles, with the Defective Cranksets.

41.     The industry shows, including Defendants themselves, that alternative, feasible designs have been available for decades because only some of Defendants' crankset models fall prey to the inadequately designed weld, bond, bind, or material used in the Class Bicycles and Defective Cranksets. The inadequately designed Class Bicycles and Defective Cranksets that are prone to separation and breaking are therefore unsafe to use.

42.     Additionally, consumers reasonably expect that cranksets will be able to hold their weight and allow the consumer to apply ordinary force to propel the bicycle. Consumers would not, did not, and could not anticipate that a crankset specifically designed to bear the weight of the bicyclist applying normal force to propel the bicycle forward is designed in a manner that causes it to separate and/or break, and fail under normal riding.

43.     This defect renders the Class Bicycles and Defective Cranksets unfit

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

for the ordinary purpose for which they were and are intended, which is to be a weight bearing component designed to withstand the force required to propel a bicycle forward.

44.    This defect is present in all the Class Bicycles and Defective Cranksets, as identified in this case, at the time of sale because it is inherent to the design of the Class Bicycles and Defective Cranksets and is present when the Class Bicycles and Defective Cranksets come off the assembly line.

45.    Specialized manufactures, distributes, and sells assembled bicycles, and bicycle components. Among the various bicycles sold by Specialized, are the Class Bicycles equipped with Defective Cranksets, as identified in a statement by Specialized, including: "Specialized road bikes [that] were fitted as standard with 11-speed Shimano Ultegra & Dura-Ace crank sets" on "some models of Tarmac, Roubaix, Venge, Ruby, Amira, Aethos & Shiv" bicycles.[3]

46.    Each of the Class Bicycles sold by Specialized contained a defective Crankset and, therefore, suffered from the same defects that plague all of the Defective Cranksets.

47.    Trek manufactures, distributes, and sells assembled bicycles, and bicycle components. Among the various bicycles sold by Trek are the Class Bicycles equipped with Defective Cranksets, as identified in a statement by Trek notifying customers that the cranksets in their bikes were affected if they included Defective

---

[3] Shimano Voluntary Recall: 11-Speed Bonded HOLLOWTECH II Road Cranksets Inspection and Replacement Campaign, Specialized, available at https://support.specialized.com/home/en/shimano-voluntary-recall-11-speed-bonded-hollowtech-ii-road-cranksets-inspection-and-replacement-campaign#:~:text=and%20Replacement%20Campaign-,Shimano%20Voluntary%20Recall%3A%2011%2DSpeed%20Bonded%20HOLLOWTECH%20II%20Road%20Cranksets,HOLLOWTECH%20II%20Road%20Crank%20sets, last visited on December 27, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Cranksets.[4]

48.    Each of the Class Bicycles sold by Trek contained a Defective Crankset and, therefore, suffered from the same defects that plague all of the Defective Cranksets.

49.    Giant manufactures, distributes, and sells assembled bicycles, and bicycle components. Among the various bicycles sold by Giant, are the Class Bicycles equipped with Defective Cranksets.

50.    Each of the Class Bicycles sold by Giant contained a Defective Crankset and, therefore, suffered from the same defects that plague all of the Defective Cranksets.

**B.    Defendants' Prior Knowledge of the Defective Cranksets**

51.    This is not the first time Shimano has produced and sold defective cranksets.

52.    In 1997, Shimano issued a recall for 2.5 million bicycle cranksets installed on hundreds of models of mountain bikes. The faulty cranksets were manufactured from mid-1994 to mid-1995 and were installed mainly on low- to mid-priced mountain bikes sold under a number of brands, including Trek.

53.    The recall was prompted by reports of rider injuries from broken cranksets. Shimano began receiving complaints in 1995, and, by the time of the recall in 1997, executives at Shimano's Irvine, California headquarters acknowledged receiving at least 630 reports in North America of the cranksets breaking while in use, resulting in at least 22 rider injuries ranging from cuts to fractures.

**C.    Defendants' Knowledge of the Defective Cranksets**

54.    Like Defendants' knowledge of the earlier defects, Defendants were

---

[4] Shimano road crankset recall, available at https://www.trekbikes.com/us/en_US/shimano-crankset-recall/#:~:text=here%20for%20you-,Shimano%20road%20crankset%20recall,participating%20Trek%20retailer%20for%20inspection, last visited on December 15, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

aware, early on, of numerous complaints regarding the Class Bicycles and Defective Cranksets separating, failing, and causing injury. Upon information and belief, Shimano and the Bicycle Manufacturer Defendants received customer complaints regarding the Defective Cranksets breaking or separating while in use years before Shimano issued a recall, and years before the Bicycle Manufacturer Defendants stopped selling the Defective Cranksets as components on Class Bicycles.

55.    On September 1, 2016, cyclist and blogger John Carlin was riding approximately 20 miles per hour near his home in Roanoke, Virginia, on a trial called the "Brandy Loop." Without warning, while attempting to ride up a small hill, the crankset on the right-hand side of his bicycle snapped in two resulting in a crash. As a result of the Defective Crankset breaking, Mr. Carlin's foot hit the pavement, he lost control of his bicycle, and he crashed into a ditch. As Mr. Carlin describes it:

> With absolutely no warning there was a loud crack. My foot hit the pavement, the bike dove into a ditch about a foot deep and I landed between a utility pole and street sign that are little more than shoulder-width apart.[5]

56.    Mr. Carlin reported the issue to his local bicycle shop who contacted Shimano. When the shop called Shimano, the rep on the other end of the phone cut them off and said he already knew the story, indicating that Shimano had already been made aware of the Crankset defect and well before 2016.[6]

57.    Three years later, in 2019, the same blogger reported on his Dura-Ace FC-9000 crankset failing in the same way. The blogger, again, attached pictures and discussed how Defendants have been well aware since the last incident of the Class

---

[5] Epic Failure Ultegra 6800 11 Speed Crank, available at https://carlinthecyclist.com/epic-failure-ultegra-6800-11-speed-crank/, last accessed on December 27, 2023.

[6] *Id.*

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Bicycles and Defective Cranksets failing and are doing nothing about it.[7]

58.    In August 2017, a YouTube user named "Just Me" posted a video regarding a Shimano Ultegra 6800 crank failure. The video shows and describes a Defective Crankset that delaminated and snapped. The description of the video notes that "[t]he bond between the plastic part and the inner aluminum part has failed." The video description further describes that Shimano replaced Defective the Crankset, which, upon information and belief, means that the cyclist reported the issue to Shimano.

59.    In November 2017, an Instagram account named "@thanksshimano" was opened and thereafter began posting images documenting problems with the Defective Cranksets. For example, an image posted on January 18, 2018 shows a failed Shimano Ultegra FC-6800 Defective Crankset. The "@thanksshimano" Instagram account made hundreds of similar posts between 2018 and 2023. Upon information and belief, Shimano follows the "@thanksshimano" Instagram account and reviews its contents.

[7] Shimano Dura-Ace FC-9000 Crank Fail, available at https://carlinthecyclist.com/shimano-dura-ace-fc-9000-crank-fail/, last accessed on December 27, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

60.    Notably, these pictures do not show obvious signs of corrosion, de-bonding or delamination, and do not appear to give any sign or notice to the operator that they are about to break or need to be replaced.





**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

61.     Accidents and injuries continued to happen, including accidents and injuries in recent years, attracting attention from journalists and news outlets. On the morning of January 15, 2020, a cyclist was riding his bicycle in the rain on his commute to work when, just as he came out of a corner and stood up on his pedals, his Shimano Ultegra 6800 Defective Crankset failed spectacularly. The incident was subsequently researched by a bicycle journalist working for www.bikeradar.com. The journalist raised the incident with Shimano, and asked if Shimano was aware of a pattern of failures with its Hollowtech cranksets. The journalist published Shimano's response, in full. The publication of Shimano's response reveals Shimano's affirmative misrepresentation and concealment of the Crankset Defect, as reflected in the following excerpts:

> [T]here is no overall pattern that we have identified to explain why one consumer might have an issue whilst a similar consumer will have a lifetime of riding enjoyment."

> [W]e are always studying and learning from our current products to make better products in the future, so feedback like this, even though in this case it was an anomaly that was experienced on an older previous generation model, will undoubtedly contribute towards better products for consumers."

> Finally, we recommend that any consumers experiencing any less-than-perfect Shimano product should take it to their nearest dealer to discuss a solution.[8]

62.     On October 17, 2021, a rider posted on the blog www.road.cc describing an incident in which the Defective Crankset on his bicycle split in two and caused him to crash. On November 16, 2021, www.road.cc further reported on the issue in an article titled "Shimano denies design problem with Hollowtech cranks despite reports of cracked arms," with a sub-headline reading "Shimano says that

---

[8] Loveridge, Matthew, "Understanding an unusual Shimano crankset failure," BikeRadar, April 3, 2020, available at https://www.bikeradar.com/features/shimano-crank-failure, last accessed on December 27, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

there isn't a design problem with its Hollowtech cranks despite reports of a pattern of failures."[9]  The report states that "[w]e brought the reported failures of cranks to the company's attention and in a nutshell, Shimano says there is no design problem." The report quotes Shimano as stating, among other things, that "'[c]rank failures do occur, even though our cranks do not have any design problems . . . We would like to be able to give further details, but we cannot at this point . . . .'" Shimano's response further confirmed that Shimano was conducting an internal investigation into the Defective Cranksets.

63.    On February 3, 2022, Hambini Performance Engineering published an engineering analysis of a Defective Crankset failure.[10]  The report states that: "Shimano have had some issues with their high end cranksets in recent times. It seems as though the Ultegra and Dura Ace cranksets are the primary units affected. There have been many reports of the cranksets fracturing in half." The report contains an engineering analysis of one crankset failure, concluding that:

> The ultimate mode of failure is a break in the joint between the two halves of the crankset. . . . In the case of this failed example, there is clear evidence of galvanic corrosion and almost all units have failed as a result of some form of corrosion.
>
> *    *    *
>
> It is highly unlikely that a crank of this design in the field has no onset of corrosion. It would need to be operated in a completely arid environment devoid of any potential electrolyte.

The report further notes that "Shimano have largely tried to deflect the situation and

---

[9] Hughes, Anna Marie, "Shimano denies design problem with Hollowtech cranks despite reports of cracked arms," Road.cc, available at https://road.cc/content/tech-news/shimano-claims-no-design-problem-hollowtech-cranks-287827#:~:text=Shimano%20says%20that%20there%20isn,rotating%20mass%20he lps%20with%20acceleration., last accessed on December 15, 2023.

[10] "Shimano Crankset Failures: An Engineering Analysis," Hambini Performance Engineering, available at https://www.hambini.com/shimano-crankset-failures-an-engineering-analysis/, last accessed on December 15, 2023.

33

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

at least publicly deny there is a problem."

64.     On April 5, 2022, Outside magazine published an article titled "What's going on with Shimano's road cranks?"[11] The article states that:

> You may have caught wind of some reliability issues concerning previous-generation, high-end Shimano road cranks, specifically Dura-Ace 9000 and R9100, and Ultegra R8000 and 6800. Basically, some of them are coming apart. Shimano won't officially comment on the issue (perhaps due to legal constraints – and believe me, we've asked) . . . .

The article further states that "third-party analyses have suggested a common symptom for many of these failures: corrosion. . . . That corrosion can then compromise the bond integrity, which can then potentially lead to complete structural failure under load."

65.     Although Shimano previously described Defective Crankset failure as "an anomaly," and repeatedly assured consumers that the Defective Cranksets were safe and not defective, Shimano has now admitted – in the September 21, 2023 recall – that it received "4,519 incidents of cranksets separating," several of which caused significant personal injuries, including "bone fractures, joint displacement and lacerations." The actual number of failed Cranksets is higher than the number officially reported to Shimano, as many such incidents would not be reported to Shimano.

66.     Similar stories abound on the internet and in the Consumer Protection Safety Commission's ("CPSC") data clearinghouse. Examples of complaints made to CPSC including the following:

> SUDDEN CATASTROPHIC FAILURE OF A SHIMANO ULTEGRA COMPACT CRANK THAT WAS USED ON MY 2007 CERVELO R3 BICYCLE. THIS WAS THE 50/34 ULTEGRA 10 SPD CRANK THAT CAME WITH THE BIKE WHEN I BOUGHT IT IN

---

[11] Huang, James, "What's going on with Shimano's road cranks?," Outside Magazine, available at https://velo.outsideonline.com/road/road-racing/whats-going-on-with-shimanos-road-cranks/, last accessed on December 15, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

AUGUST 2007. I HAVE HAD NO PRIOR ISSUES WITH THE CRANK AND HAD BOTTOM BRACKET REPLACED TWICE, MOST RECENTLY 15 MONTHS EARLIER. AS YOU CAN SEE IT FAILED DRAMATICALLY. ON 12 SEPTEMBER 2015 I WAS RIDING UPHILL ON HWY 39 AT ABOUT 8-10 MPH IN THE SAN GABRIEL MTNS AND GOT TO A SWITCHBACK I HAD BEEN ON COUNTLESS TIMES IN THE PAST (AND EARLIER IN THE SAME DAY) WHEN OUT OF THE SADDLE THE CRANK SUDDENLY FAILED WITH ZERO WARNING AND I TUMBLED INTO THE ROAD. I AM 6'1" AND WEIGH 188LBS. THE BIKE HAS NEVER BEEN IN ANY SORT OF MAJOR ACCIDENT AND THAT PEDAL HAS NEVER BEEN HIT HARD IN ANY KIND OF MISHAP. NO ONE OTHER THAN ME AND SHOP PERSONNEL HAVE EVER RIDDEN THE BIKE. OTHER THAN SCRAPES I WAS UNHURT. I INCLUDE PHOTOS WITH THE CRANKSET IF A SUBSEQUENT PAGE OF THE REPORT WILL ALLOW ME TO DO SO.[12]

THE SHIMANO ULTEGRA 6800 CRANKS ON MY ROAD BIKE FAILED. THE CRANK CRACKED AT THE SPINDLE. THIS CREATED A POTENTIALLY HAZARDOUS SITUATION AS IF THERE WAS A COMPLETE FAILURE, WHICH WAS SURE TO EVENTUALLY HAPPEN, A CRASH WAS LIKELY TO OCCUR. THE CRACK WAS PICKED UP BY MY LOCAL BIKE SHOP. THERE SEEM TO BE A LOT OF REPORTS OF FAILURES OF THIS PARTICULAR CRANK. IT SHOULD NOT FAIL DURING NORMAL USAGE. MY BIKE WAS NEVER CRASHED OR DAMAGED. THESE CRANKS SHOULD BE RECALLED AND REPLACED. THEY ARE NOT SAFE. THERE WAS NO "INCIDENT" AS I DID NOT CRASH.[13]

BICYCLE: SHIMANO DURA ACE 10 SPEED CRANK ARM BROKE IN HALF. ITS LUCKY I WAS NOT INJURED OR KILLED.[14]

---

[12] Incident ID 20150919-69EAB-2147428241, September 2015 (all caps included in the original).

[13] Incident ID 20190807-A0F41-2147379394, August 2019 (all caps included in the original).

[14] Incident ID 2021.215-FR798-2147365875, February 2021 (all caps included in the original).

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
2995224.1

SHIMANO FC-7800 DURA ACE CRANK ARM ON HIGH-END BICYCLE SNAPPED WITHOUT WARNING.[15]

A FRIEND OF MINE WAS INJURED WHEN THE CRANKARM OF HIS BIKE SNAPPED IN HALF AS HE WAS ACCELERATING, AND AS IT TURNS OUT, THESE TYPES OF CRANKS HAVE SUCH A NOTORIOUS REPUTATION THAT A WHOLE [REDACTED] ACCOUNT HAS BEEN MADE CATALOGUING THE FAILURES OF SHIMANO'S CRANKARMS. [REDACTED].[16]

67.    On information and belief, Shimano likely possess records regarding thousands of complaints about Defective Cranksets and the defect dating back to at least 2012.

68.    Not only do the number of complaints and the publicity of such through media, blogs, news outlets, and various other channels, as well as Defendants' own statements, comments, and responses to such outlets, demonstrate that Defendants must have been keenly aware of this defect for at least many years, but the substance of the complaints shows that consumers were surprised, frustrated, and disappointed with the poor build quality of the Class Bicycles and Defective Cranksets, and would not have purchased the Class Bicycles and Defective Cranksets had the defect been disclosed.

69.    Defendants would have seen the above-described complaints and news coverage because Online Reputation Management (ORM) is now a standard business practice among major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. ORM involves the monitoring of the reputation of an individual or a brand on the internet, addressing content, which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation. Many companies offer ORM consulting services

[15] Incident ID 20210619-2246D-2147363413, June 2021 (all caps in original).
[16] Incident ID 20220415-66EFB-2147356847, April 2022 (all caps in original).

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

for businesses.

70.     Like most companies, Defendants care about their reputation and regularly monitor online customer reviews and media because they provide valuable data regarding quality control issues, customer satisfaction, and marketing analytics. Poor reviews and negative media attention would be particularly attention-grabbing for Defendants' management because negative publicity and poor reviews are often the result of material problems. As such, Defendants' management knew about the above-referenced consumer complaints, which is further evidenced by their documented responses to bike shops, blogs, and other outlets.

71.     While bicyclists experienced the defect when their Defective Cranksets failed, they did not know, and could not know, *why* their Defective Cranksets had failed and that they had failed due to a defective design. Even experienced bike store owners could not independently determine that the Defective Cranksets posed a safety hazard. As Roderick Russell, who has owned a bike store for more than ten years and sells hundreds of bicycles every year, stated, "Prior to Shimano's announcement of the recall, I was not aware of the bonding separation and delamination issue because the Shimano Cranksets did not appear defective to the naked eye."[17]

72.     Defendants, on the other hand, are experienced in designing and manufacturing bicycle parts such as the Class Bicycles and Defective Cranksets. They are exclusively privy to a host of factors that go into the design and manufacture of the Defective Cranksets. Dr. Kim Cameron is a Principal at ESi, a leading scientific and engineering consulting firm. She has twenty years of experience consulting in the areas of mechanical engineering and materials science, has led numerous multidisciplinary engineering investigations, and performed many failure analyses, including of exercise equipment and bicycles. Upon examination of the

---

[17] Russell Decl., Exh. 1 ¶ 6.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

subject crankset, she described the hollow Crankset design and the potential mechanisms of failure when the adhesive used to join the parts of the Defective Cranksets does not remain intact causing the Defective Cranksets to break apart. Consumers, on the other hand, "would find it difficult to assess the adequacy of the design because several critical factors are only known to Shimano, including: surface preparation before application of adhesive; adhesive properties; applied adhesive thickness and location; processing steps related to adhesive; and part tolerances."

73.    As an experienced manufacturer, Defendants conduct pre-sale and post-sale testing to verify design integrity and the safety risks posed to users of the Class Bicycles and Defective Cranksets. Defendants would have conducted additional post-sale testing upon being notified of the earliest above-described complaint. On information and belief, Defendants discovered this safety risk during testing both before and after publicly releasing the Class Bicycles and Defective Cranksets for sale. Consumers are not able to conduct the testing required to know that their cranksets are safe. They do not know that the Defective Cranksets are made from separate hollow parts which are simply glued together or what type of adhesive is holding the Defective Cranksets together. As Dr. Cameron states, it "would be helpful to investigate the fracture surfaces with a scanning electron microscope to determine whether fatigue was part of the failure mechanism. The adhesive and surface could also be better examined under a microscope and Fourier-transform infrared spectroscopy could potentially be used to identify the chemical composition of the adhesive."

74.    Worse, the Defective Cranksets can and do break without warning, so riders do not gradually learn or become aware that they are in danger. As Dr. Cameron states, "when assessing the design and failures of the crankset, of particular concern is that consumers will not necessarily be alerted to the initial failure of the adhesive depending on how the loss of adhesion progresses. It is possible for the

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

failure to be sudden when the loss of adhesive propagates quickly under load."

75.    Another failure investigation performed by Dr. Mark Bingley concluded that the "failure might well occur suddenly and without warning and result in widespread "unzipping" of the inner and outer channels and the complete failure (as observed) of the crank arm.  The analysis indicates that this would be possible at relatively low loads that might easily be applied during normal cycling conditions."[18]

76.    In sum, Defendants have known of the defect and its associated manifestations and damage through (1) records of customer complaints, (2) media, (3) direct communications with bike shops and customers seeking to make Defendants aware of the problem, and (4) pre- and post-sale testing, but made no substantive design modifications to eliminate the defect, and did not recall the Defective Cranksets until September 21, 2023, despite knowing the defect existed almost a decade prior.

**D.    Defendants' Misrepresentations and Omissions Regarding the Defective Cranksets and Class Bicycles**

77.    All Defendants made affirmative misrepresentations regarding the Defective Cranksets and/or the Class Bicycles.

78.    Shimano regularly touted the stiffness and durability of the Defective Cranksets in its marketing materials to assure customers of its products' safety.  In doing so, Shimano knew that stiffness and durability are two characteristics that tie directly to the safety and reliability of a crankset and Shimano falsely touted these characteristics to induce consumer reliance.

79.    With respect to its overall bicycle engineering and manufacturing capabilities, Shimano told consumers, "we realize innovative new products excelling both in high precision and in durability by the metal-processing technologies we have

---

[18] *See* https://road.cc/content/feature/investigating-shimanos-snapping-cranksets-304173 (accessed on April 29, 2024).

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

developed for many years."[19]

80.    Shimano's website describes the entire Hollowtech II series, which includes all of the Defective Cranksets, as "the best balance of stiffness, strength, weight and rotating performance," and "high-precision sealing in the bearing area to increase durability maintaining the excellent rotating performance for long periods." Shimano's references to the Defective Cranksets' stiffness and durability are made to induce consumer reliance.[20]

81.    Shimano has published numerous marketing materials on their website and through third-party media outlets emphasizing the Defective Cranksets' performance, strength, reliability and durability to further induce consumer reliance on the purported high-quality of its Defective Cranksets:[21]

- "the best balance of stiffness, strength, weight and rotating performance;"
- "[T]he crankset is designed by careful consideration of the total balance of those elements to prevent breakage;"
- "high precision sealing in the bearing area to increase durability;"
- "Maintains high rigidity and reduces weight;"
- "Its outboard bottom bracket bearing system provides better weight distribution and more pedaling stability; and"
- "HOLLOWTECH technology is an ultra-lightweight hollow crankarm created by SHIMANO with the company's own proprietary forging technology that also maintains rigidity."

---

[19] https://www.shimano.com/en/manufacturing/bicycle.html, last accessed on December 15, 2023.

[20] https://bike.shimano.com/en-EU/technologies/component/details/hollowtech-2.html, last accessed on December 15, 2023.

[21] *E.g.,* https://bike.shimano.com/en-EU/technologies/component/details/hollowtech-2.html; https://bike.shimano.com/en-US/product/component/duraace-9000/FC-9000.html; https://www.bikeradar.com/news/shimano-dura-ace-9000-launched/; https://www.shimano.com/en/manufacturing/bicycle.html.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

82.     These representations are misleading because they were made to assure consumers of the safety of the Defective Cranksets, that they were durable, and would not break. Indeed, as the owner of a bicycle store who sells hundreds of bikes every year, points out, "[i]n the cycling community, these terms are understood as representations about the cranksets' performance and safety."[22] Terms and phrases like "rigidity," "more pedaling stability," and "designed…to prevent breakage" were employed by Shimano for this purpose, despite the opposite being true: the Defective Cranksets were designed with the Crankset Defect, which resulted in an unreasonable risk of physical injury during ordinary use. Defendants omitted this information on packaging, labeling, and advertising to benefit their bottom line.

83.     None of these representations made by Shimano was accurate. In fact, they affirmatively misrepresented the qualities of the Defective Cranksets. The Defective Cranksets were not "designed…to prevent breakage," and, in fact, did break for several consumers. Similarly, the Defective Cranksets do not provide consumers with more pedaling stability since the Crankset Defect  jeopardizes pedaling stability and rider safety.

84.     As Shimano has its principal place of business in California, on information and belief, decisions about the Defective Cranksets, including, but not limited to, marketing, advertising, promotional activities, and literature about the Defective Cranksets were coordinated at, emanated from, and were developed, conceived, approved and otherwise controlled, at its California headquarters. All critical decisions regarding the Defective Cranksets, were made in California and via Shimano's California-based executives and leadership personnel. Many of Shimano's executives and leadership personnel—including its Director of Distribution, OEM Sales Manager, National Sales Manager, and Marketing Specialists—are located in California. Thus, the deceptive practices,

---

[22] Russell Decl., Exh. 1 ¶ 13.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

misrepresentations, and omissions alleged herein were conceived, reviewed, approved and otherwise controlled from Shimano's headquarters and principal place of business in California.

85. Specialized regularly touted the quality and reliability of its Class Bicycles. The following is one example of Specialized's pervasive marketing of its bicycles as flawless and high-quality[23]:

**Strive for Performance:** We seek to relentlessly innovate, in order to redefine riders' expectations for safety, performance, and durability.

86. As another example of Specialized's pervasive marketing regarding the quality of its Class Bicycles, Specialized claimed that, with respect to its Tarmac SL6 Class Bicycle, it "scrutinized every single aspect . . . to ensure you're getting the perfect ride."[24]

87. Specialized made these statements to induce consumers to rely on the high quality of its Class Bicycles, including the component Defective Crankset. The terms Specialized used to describe Class Bicycles "are understood as representations about the [products'] performance and safety" in the cycling community.[25]

88. None of these representations made by Specialized was accurate. In fact, they affirmatively misrepresented the qualities of the Defective Cranksets. Instead of being safe and durable, Specialized Class Bicycles came equipped with Defective Cranksets that can separate and fail without warning and cause accidents, crashes, and significant personal injury. Specialized omitted, and did not disclose, that its Class Bicycles in fact were unsafe and not durable because they were

---

[23] https://www.specialized.com/us/en/sustainability, last accessed on April 28, 2024.
[24] https://rocknroadcyclery.com/products/2019-specialized-tarmac-men-sl6-comp-disc, last visited on December 21, 2023.
[25] Russell Decl., Exh. 1 ¶ 13.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

equipped with Defective Cranksets.

89.     As Specialized has its principal place of business in California, on information and belief, decisions about its Class Bicycles and the Defective Cranksets, including, but not limited to, marketing, advertising, promotional activities, and literature about its Class Bicycles and the Defective Cranksets were coordinated at, emanated from, and were developed, conceived, approved and otherwise controlled, at its California headquarters, and that all critical decisions regarding its Class Bicycles and the Defective Cranksets, were made in California and via Specialized's California-based executives and leadership personnel. Many of Specialized's executives and leadership personnel—including its Global Digital Planning & Consumer Engagement Leader, Merchandising Director, Founder & Chief Executive Officer, Chief Operating Officer, and Global Marketing Operations Leader, and Chief Marketing Officer—are located in California. Thus, the deceptive practices, misrepresentations, and omissions alleged herein were conceived, reviewed, approved and otherwise controlled from Specialized's headquarters and principal place of business in California.

90.     Trek regularly touted the quality of its Class Bicycles. Trek holds itself out as selling "bikes to last" and "stand[s] behind every one that…bears [the Trek] name."[26] Trek posits that it "has applied the most sophisticated concepts of metallurgy and stretched them to the absolute maximum."[27] In fact, of its carbon frame bikes, Trek states that its bike frames and components minimize voids, or "the spaces that exist between the layers of carbon fiber…as more voids translates to reduced strength and durability of the composite material."[28]

---

[26] https://www.trekbikes.com/au/en_AU/inside_trek/oclv_carbon/, last accessed on April 28, 2024.

[27] https://www.trekbikes.com/au/en_AU/inside_trek/aluminum/, last accessed on April 28, 2024.

[28] https://www.trekbikes.com/au/en_AU/inside_trek/oclv_carbon/, last accessed on April 28, 2024.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

91.    Trek further tells consumers that each of its bicycles comes with "a carefully selected combination of parts," including "the cranks," and that Shimano in particular "makes incredible components for our bikes which have their own benefits to better suit how you like to ride."[29]

92.    Trek so integrated Shimano's branding and components into its own branding and marketing that Trek painted Shimano's logo on certain high-end Trek Class Bicycles alongside the Trek logo.



93.    None of these representations made by Trek was accurate. In fact, they affirmatively misrepresented the specific qualities of the Defective Cranksets in order to induce consumers to rely on the purported safety and durability of Trek's Class Bicycles. The terms Trek used to describe Class Bicycles are understood as representations about the their Class Bikes' performance and safety in the cycling community.[30]

---

[29] https://www.trekbikes.com/us/en_US/road_buyers_guide/, last accessed on December 30, 2023.

[30] Russell Decl., Exh. 1 ¶ 13.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

94.     Instead, the Trek Class Bicycles were equipped with Defective Cranksets made by Shimano that can unexpectedly separate and fail, causing crashes and significant personal injury, directly contradicting Trek's claims about the safety of the Class Bicycles. Trek misled, omitted, and did not disclose, that its Class Bicycles in fact were equipped with Defective Cranksets.

95.     Giant holds itself out as "the world's leading brand of high-quality bicycles and cycling gear."[31] Trek represents that its bikes will unleash each rider's full potential, whatever their goal might be. Giant further represents that its bikes combine craftsmanship, technology and innovative design. Giant's representations about itself as a company and its Class Bicycles emphasize winning. For example, Giant represented that its Propel Advanced Disc 1 bike was good "[o]n the attack, in a spring, or cornering at speed" and that "it gets up to speed and stays there with minimal resistance." Similarly, Giant represented that its TCR Advanced SL bike was "[k]ing of the mountains. The race leader's jersey. Any race, any time, this legendary road machine is a proven winner." Giant further represented that the TCR Advanced SL could "[p]ower up steep climbs. Sprint for the finish. Whatever the race situation, the legendary TCR Advanced SL gives you an advantage."

96.     These representations convey the message that Giant's Class Bicycles function properly under normal riding and, as described by Giant, are "high-quality" and, therefore, utilize safe and reliable parts.

97.     Giant's Class Bicycles, however, were equipped with Defective Cranksets. As just two examples, Giant's Propel and TCR Advanced SL bikes were

---

[31] https://www.giant-bicycles.com/us/about-us, last accessed on December 22, 2023.

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

originally equipped with Shimano Ultegra 11-speed cranksets.





98.     None of these representations made by Giant was accurate. In fact, they affirmatively misrepresented the qualities of the Defective Cranksets. Class Bicycles are not "high-quality." They are not fit for any goal a rider may have. They are not of high-quality craftsmanship. They do not give riders an advantage and they do not function properly under normal riding conditions. Rather, the Class Bicycles were

equipped with Defective Cranksets made by Shimano that can unexpectedly separate and fail, causing crashes and significant personal injury. Giant omitted, and did not disclose, that its Class Bicycles in fact were equipped with Defective Cranksets.

99.    As Giant has its principal place of business in California, on information and belief, decisions about the Class Bicycles and Defective Cranksets, including, but not limited to, marketing, advertising, promotional activities, and literature about the Class Bicycles and Defective Cranksets were coordinated at, emanated from, and were developed, conceived, approved and otherwise controlled, at its California headquarters. All critical decisions regarding the Class Bicycles and Defective Cranksets, were made in California and via Giant's California-based executives and leadership personnel. Many of Giant's executives and leadership personnel— including its Global Product Marketing Manager, Sales Operations Manager, Global Head of Product & Marketing, Product Management Director, and Director of Group Global Marketing—are located in California. Thus, the deceptive practices, misrepresentations, and omissions alleged herein were conceived, reviewed, approved and otherwise controlled from Giant's headquarters and principal place of business in California.

100.    All Defendants omitted, concealed, and/or failed to disclose the Crankset Defect. On information and belief, all Defendants were aware of the Crankset Defect in the Defective Cranksets. Despite this knowledge, and despite the representations alleged above, none of the Defendants disclosed the Crankset Defect or the safety risks associated therewith.

**E.    Defendants' Duty to Disclose the Crankset Defect**

101.    Knowledge of Material Safety Risk: As alleged, The Defective Cranksets give rise to material safety concerns, which are particularly pronounced among modern road bicycles that are predominantly ridden on roads, at high speed, near motor vehicles, while operators' feet are clipped into the pedals attached to the

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

end of the crank arms because these operators are riding nearest to dangerous traffic and moving at significant speeds. Shimano's notice of the CPSC recalls states plainly that it is being made due to "safety and quality" concerns and to address "any possible safety hazard to our consumers." These material safety concerns associated with the Defective Cranksets have led to accidents and physical injuries from riding Class Bicycles and/or bicycles equipped with Defective Cranksets. This safety-related defect in the Defective Cranksets and Class Bicycles triggers a duty to disclose.

102.  <u>Superior Knowledge</u>: As alleged, Defendants alone designed and manufactured the Class Bicycles and the Defective Cranksets. And, only Defendants are aware of the elements that go into the design and manufacture of a crankset. Dr. Cameron lists some of these particular factors, which are proprietary to Defendants: surface preparation before application of adhesive; adhesive properties; applied adhesive thickness and location; processing steps related to adhesive; and part tolerances. As experienced manufacturers, Defendants conduct tests, including pre-sale testing, to verify the cranksets they sell are free from defects and align with Defendants' specifications, marketing representations, and intended use. The tests required to measure the strength and durability of the materials used in the manufacture of the Defective Cranksets cannot be conducted by consumers, and only Defendants can properly investigate failed cranksets. As Dr. Cameron advises, in the wake of a failure, "it would be helpful to investigate the fracture surfaces with a scanning electron microscope to determine whether fatigue was part of the failure mechanism.  The adhesive and surface could also be better examined under a microscope and Fourier-transform infrared spectroscopy could potentially be used to identify the chemical composition of the adhesive."  Defendants also receive, monitor, and aggregate consumer complaints and publications regarding the crankset failures, accidents, and parts that do not perform as designed or advertised. A

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

reasonable consumer does not have access to the granular design and engineering data in Defendants' possession and would not be on notice of the presence of a design defect, would not be on notice of the design defect, and would have no knowledge of the causes of the crankset failures, or the severity of the design defect. A reasonable consumer is also not privy to the engineering or bicycle expertise possessed by Defendants and does not possess the equipment or knowledge necessary to enable them to learn of the Crankset Defect.

103.    <u>Active Concealment</u>: Defendants actively concealed the Crankset Defect. As described above, Defendants actively concealed the Crankset Defect from Plaintiffs and the other Class Members in direct communications with them and in communications with the media. In response to consumer complaints about crankset failures, Defendants' offered to replace the Defective Cranksets with the same Defective Cranksets ensuring that the Crankset Defect will manifest again outside of the warranty period allowing Defendants to deny warranty claims entirely. Defendants also responded to negative reviews about the crankset failures by denying the existence of any design defect in the cranksets, even to specialized biking publications, as the Hambini report notes. In fact, Defendants continue to expressly deny that all Defective Cranksets are defective or pose an unreasonable safety risk by instituting an inadequate recall.

104.    <u>Partial Representation</u>: Defendants made many representations as to the quality of their products, but routinely failed to disclose the existence of the Crankset Defect. These partial representations did not reveal the full truth—that the Defective Cranksets were defective and posed a serious risk of accident and personal injury. By choosing to speak and making partial representations regarding the Defective Cranksets, Defendants were obligated to speak fully and truthfully regarding the Defective Cranksets.

105.    Defendants could have and should have prominently disclosed the

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

defect on the product listings on its website, on the Defective Cranksets' packaging, and to third-party retailers. Had Defendants disclosed the defect in this manner, consumers would have been aware of it.

## F.    **Defendants' Recall Is Inadequate to Remedy the Defect or Harm Suffered by Plaintiffs and the Other Class Members**

106.    On September 21, 2023, Shimano finally issued a recall on the Defective Cranksets.

107.    According to Shimano's recall, the Defective Cranksets "can separate and break, posing a crash hazard to consumers," and "[c]onsumers should immediately stop using the cranksets manufactured before July 1, 2019, and contact an authorized Shimano dealer to schedule a free crankset inspection."[32] Shimano directed retailers to opt into an "Inspect and Replace" program, so that the dealer would be listed as an "Authorized Inspection" location, and directed dealers to obtain Shimano's "B2B Access" to participate in the recall, and authorized payments to the retailers in connection with the recall.

108.    Shimano's recall then explains that "[o]nly consumers whose cranksets show signs of bonding separation or delamination during the inspection will be provided a free replacement crankset and installation."[33]

109.    Shimano's recall is inadequate for multiple reasons, including:

- First, hundreds of thousands of consumers are now left without a bicycle while they navigate the process of attempting to schedule a time-consuming inspection with a finite number of local bicycle mechanics alongside hundreds of thousands of other impacted cyclists. This process will inevitably cause consumers to be without their bicycles for extended

---

[32] Shimano Recalls Cranksets for Bicycles Due to Crash Hazard, available at https://www.cpsc.gov/Recalls/2023/Shimano-Recalls-Cranksets-for-Bicycles-Due-to-Crash-Hazard, last accessed on December 30, 2023.

[33] *Id.*

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

periods of time while they await the initial inspection.

- Second, Shimano touts the Defective Cranksets as sophisticated pieces of performance engineering, but, to save money during the recall, is deferring to local bike shops to make an important engineering determination – whether any particular Defective Crankset shows "signs of bonding separation or delamination" – that is critical to rider safety. Many local bicycle mechanics are not engineers and should not be put in the position of making complicated engineering judgments related to a critical safety issue (and incurring the potential legal liability in the event a replacement is denied and the Defective Crankset later breaks and causes an injury). Making matters worse, on information and belief, the bicycle mechanics are being asked to make this engineering judgment based solely on a visual inspection, without the benefit of stress testing. Rather, Shimano's frequently asked questions document provided to retailers directs retailers to "[r]emind [customers] of the importance of paying attention to changes in the sound and feel of how their bike is riding."

- Third, and most importantly, rather than offering to repair or replace (or refund) each of the approximately 680,000 Defective Cranksets subject to the U.S. recall, Shimano's proposed recall remedy states that only "[c]onsumers whose cranksets show signs of bonding separation or delamination during the inspection will be provided a free replacement crankset . . . that the dealer will professionally install."  In other words, Shimano is not offering any remedy for Defective Cranksets that have not yet begun to fail, and consumers who own a Defective Crankset that has not already begun to fail are left in the frightening position of having to ride a dangerous bicycle for months or years, waiting on their cranksets to separate and potentially cause a crash before Shimano will give them a new

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

one.

- Fourth, if consumers have already discarded their Defective Cranksets or attempted to fix it themselves, they are, upon information and belief, ineligible to participate in the recall.

- Fifth, those consumers eligible to receive a replacement are not made whole as part of the recall. Rather than providing customers a non-defective component of equivalent specification and value, Shimano is replacing the 11-speed Defective Cranksets with 12-speed cranksets. These 12-speed cranksets may not properly integrate with the balance of the components on any particular bicycle – for example, the replacement 12-speed cranksets are geared to better interact with the gear ratios of a 12-speed cassette, which most or all consumers replacing an 11-speed Defective Crankset will not have equipped on their bike. And even putting compatibility with other components aside, the replacement 12-speed crankset may not be the desired or optimum performance choice for any particular owner of a Defective Crankset, all of whom had previously selected and purchased an 11-speed crankset as their optimum choice.

110.    One bicycle shop owner explains the untenable position in which Shimano's recall procedures have placed him. Shimano's "training materials instruct mechanics to visually inspect the cranksets for signs of bonding separation or delamination." However, "Shimano did not provide dealers any equipment to scan or image the Shimano Cranksets to identify signs of bonding separation or delamination, which is necessary to thoroughly examine the cranksets for signs of bonding separation or delamination."[34] As he explains, "A visual inspection is insufficient to identify the safety issue with the Shimano Cranksets."[35] This is

---

[34] Russell Decl., Exh. 1 ¶ 8.

[35] Id. ¶ 9.

2995224.1

because "[t]he cranksets can separate and break at any time, including in the days, weeks, or months after they "pass" the visual inspection performed in connection with the crankset recall. I am aware of a report from another bicycle mechanic that a Shimano Crankset failed shortly after it 'passed' a visual inspection. Early signs of separation or delamination may not be visible to the naked eye, and, given the nature of the defect, even those Shimano Cranksets that have not yet started to visibly fail may fail at any time in the future."[36] This is consistent with the conclusions of Dr. Cameron, the mechanic who inspected Plaintiff Semizarov's bicycle, and the experiences of numerous other riders.

111.    Shimano made the decision to unreasonably limit the proposed recall remedy for profit reasons. Each of the approximately 680,000 Defective Cranksets sold for between $270 and $1,500. Doing the right thing and replacing all of the Defective Cranksets would, on information and belief, cost Shimano hundreds of millions of dollars. By issuing a narrow recall with a plainly inadequate remedy – shop inspection followed by only replacing the subset of Defective Cranksets that a shop inspector determines have already begun to fail – Shimano will save significant money at the expense of rider safety.

112.    A proper recall would replace or refund all the 680,000 Defective Cranksets, including those installed on the Class Bicycles, because they are unsafe and pose a serious risk to users. However, the Defendants are yet again placing their finances over consumer safety and the majority of Class Bicycles and Defective Cranksets are still on the road endangering consumers and the public at large. For many, it will be too late to replace the Defective Cranksets, including those installed on the Class Bicycles, after they have started to show failure. Many will continue to fail even with customers taking extra precautions and inspecting the Class Bicycles and Defective Cranksets. Defendants need to revise their recall and replace and

---

[36] *Id.*

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

remove from the streets all the defective and unsafe Defective Cranksets, including those installed on the Class Bicycles.

113.    Upon information and belief, Shimano does not have a sufficient quantity of non-defective cranksets to replace all of the Defective Cranksets.

114.    Neither Specialized, Trek, nor Giant have issued a recall on the Class Bicycles.

## G.    Plaintiffs' Counsel Served Defendants with Sufficient Pre-Suit Notice

115.    Plaintiffs' counsel, on behalf of Plaintiffs, served Defendants with notice of their violations of applicable consumer-protection and warranty laws related to the Defective Cranksets and demanded that Defendants correct or agree to correct the actions described therein.

116.    In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs and the other Class Members, sent Shimano notice, on and September 29, 2023, of their alleged violations of Cal. Civ. Code §§ 1770(a) relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described therein within thirty (30) days of such notice. Plaintiffs' counsel, on behalf of Plaintiffs Jarett Hawkins and Christopher Jennings and the other Class Members, also sent Shimano notice in accordance with section 1782(a) on October 27, 2023.  Plaintiffs' counsel, on behalf of Plaintiffs and the other Class Members, sent Specialized notice, on September 29, 2023, of their alleged violation of Cal. Civ. Code §§ 1770(a) relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described herein within thirty (30) days of such notice. Plaintiffs' counsel, on behalf of Plaintiffs Jarett Hawkins and Christopher Jennings and the other Class Members, also sent Shimano notice in accordance with section 1782(a) on October 30, 2023. Plaintiffs' counsel,

2995224.1

on behalf of Plaintiffs and the other Class Members, sent Giant notice, on December 29, 2023, of their alleged violation of Cal. Civ. Code §§ 1770(a) relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described herein within thirty (30) days of such notice.  Plaintiffs' counsel, on behalf of Plaintiffs and the other Class Members, sent Trek notice, on September 29, 2023, of their alleged violation of Cal. Civ. Code §§ 1770(a) relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described herein within thirty (30) days of such notice.

117.    Similarly, Plaintiffs' counsel, on behalf of Plaintiffs and the other Class Members, sent Shimano notice, on September 29, 2023 and October 27, 2023, of their alleged violations of the express and implied warranty statutes in all 50 states and the District of Columbia relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described therein. Plaintiffs' counsel, on behalf of Plaintiffs and the other Class Members, sent Specialized notice, on September 29, 2023 and October 30, 2023, of their alleged violations of the express and implied warranty statutes in all 50 states and the District of Columbia relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described therein. Plaintiffs' counsel, on behalf of Plaintiffs and the other Class Members, sent Trek notice, on September 29, 2023, of their alleged violations of the express and implied warranty statutes in all 50 states and the District of Columbia relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described

2995224.1

therein. Plaintiffs' counsel, on behalf of Plaintiffs and the other Class Members, sent Giant notice, on December 29, 2023, of their alleged violations of the express and implied warranty statutes in all 50 states and the District of Columbia relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described therein.

118.  On January 2, 2024, Plaintiffs' counsel, on behalf of Plaintiffs all named Plaintiffs and Class Members, sent each Defendant a follow up notice letter reaffirming their alleged violations of the consumer protection statutes, and breaches of express and implied warranty statutes, in all in all 50 states and the District of Columbia relating to the defectively designed Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members, and demanded that they correct or agree to correct the actions described therein.

119.  Furthermore, Plaintiffs' counsel, on behalf of Plaintiffs and Class Members, provided Defendants with sufficient notice of their alleged violations of the consumer protection statutes, and breach of express and implied warranty statutes, by filing the initial complaint in this matter and in *Jose Erazo et al v. Shimano North America Bicycle, Inc. et al*, No. 8:23CV02174 (C.D. Cal. 2023).

**H.    Safety Risks Associated with Use of the Class Bicycles and Defective Cranksets and Harm Suffered by Plaintiffs and the Other Class Members**

120.  As a result of the safety risks to consumers associated with normal use of the Class Bicycles and Defective Cranksets, together with Defendants' misrepresentations, concealment and omission of these risks from the date they were first reported to Defendants or discovered by Defendants, the Class Bicycles and Defective Cranksets are subject to an inadequately narrow recall and have been rendered entirely worthless or, at the very least, have substantially diminished in

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

value.

121.    Material safety defects, like the Crankset Defect, affect the market price of a product. Consumers are not willing to overlook such dangers and would instead purchase a comparable product manufactured by another company without a recent history of wide-scale product recalls.

122.    The Defendants' recent recall instructs consumers to stop using the Class Bicycles and Defective Cranksets and subject their Class Bicycles and Defective Cranksets to a visual inspection at a local bike shop. This demonstrates that at the very least, the value of the Class Bicycles and Defective Cranksets has substantially diminished because bicyclists should not use them because separation or failure during use is a severe hazard to the bicyclist and potentially the public at large.

123.    As a result of the foregoing, the Defective Cranksets and Class Bicycles are worth less than the prices the Class Members paid for them. When assessing the value of a crankset or bicycle and whether to purchase it, neither the market nor any reasonable consumer would ignore the material danger involving bonded crank parts that separate and break, posing a crash hazard to consumers. Consequently, Plaintiffs paid more for their Defective Cranksets and Class Bicycles than they otherwise would have because of the Crankset Defect, or they purchased Defective Cranksets and/or Class Bicycles that they otherwise would not have purchased.

124.    By concealing the Crankset Defect, Defendants distorted and misrepresented the true value of every Defective Crankset and Class Bicycle. Every Plaintiff and Class member received a Defective Crankset and/or Class Bicycle with different characteristics and of different and substantially lesser value than they reasonably believed they were receiving. Accordingly, Plaintiffs and the other Class Members did not realize the benefit of their bargain in purchasing the Defective Cranksets and Class Bicycles, and their expectations as ordinary reasonable

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

consumers were not met.

125.  Plaintiffs and the other Class Members did not receive the benefit of their bargain.  They bargained for Class Bicycles and Defective Cranksets that were fit for their ordinary purpose and did not have any safety defect substantially likely to manifest and which could cause severe physical injury. By actively concealing and omitting this information from consumers, including at the point of sale, Plaintiffs and the other Class Members overpaid for the Class Bicycles and Defective Cranksets.

126.  The Defective Cranksets are but one of the broader sets of "drivetrain" or "groupset" bicycle components, which include not only the crankset but also, among other things, the brake levers/shift levers, rear derailleur, front derailleur, and cassette (the gear sprockets at the rear of the bike). Consumers often purchase these components as part of a single complete set, i.e., many consumers who purchased a Dura-Ace 9100 Defective Crankset also purchased matching Dura-Ace groupset components, all of which were designed and styled to go together on the bicycle. Because of the Defective Cranksets, many consumers will now be forced to either (a) purchase a non-matching crankset to replace the Defective Crankset, and incur the related performance and aesthetic cost, or (b) replace the entire groupset, and incur significant additional out-of-pocket expenses.

127.  Shimano's September 21, 2023 recall of the Defective Cranksets was widely publicized in the cycling community, and Shimano's inadequate recall remedy (i.e., only replacing those Defective Cranksets that have already begun to visibly delaminate or crack) sparked consternation among cyclists. Shimano's limited recall has thus tainted the resale market for Defective Cranksets and Class Bicycles because, upon information and belief, subsequent purchasers will be less likely to shop for and purchase Class Bicycles out of concern that many will not qualify for replacement of the Defective Crankset under Shimano's recall.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

128.   For these reasons, every Defective Crankset and Class Bicycle was worth less than what Plaintiffs and the other Class Members paid for them. Plaintiffs and the other Class Members suffered "price premium" damages in the amount they overpaid for the Class Bicycles and Defective Cranksets as a result of the hidden safety defect.

129.   Moreover, if consumers choose to discontinue using the Class Bicycles and Defective Cranksets for fear of injury, they must pay for another expensive replacement product—either a replacement bicycle or replacement crankset.

130.   Plaintiff and members of the Classes also suffered out-of-pocket and/or loss-of-use expenses and costs.

## **TOLLING OF APPLICABLE STATUTE OF LIMITATIONS**

131.   Any applicable statutes of limitation have been tolled by the discovery rule and Defendants' knowing and active concealment of the defect.

132.   Plaintiffs and the other Class Members had no knowledge of the misconduct and concealment alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until September 2023 when Shimano recalled the Defective Crankset. Through no fault or lack of diligence, Plaintiffs and the other Class Members were deceived regarding the Crankset Defect and could not reasonably discover it or Defendants' deception with respect to the defect.

133.   Prior to purchasing and using the Class Bicycles and Defective Cranksets, Plaintiffs and the other Class Members had no reasonable way of knowing about the Class Bicycles' and Defective Cranksets' uniformly defective design resulting in unreasonable risk of separation, delamination, and failure during ordinary use. Further, Plaintiffs and members of the Classes did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants were engaged in the conduct alleged herein. Prior to the recall, no information in the public domain was available to the Plaintiffs and the other Class

Members sufficient to show the extent of Defendants' misconduct or the extent of the defect.

134.    Plaintiffs and the other Class Members are consumers who purchased Defective Cranksets and Class Bicycles. No information in the public domain was available to the Plaintiffs and the other Class Members prior to August 2023 that revealed sufficient information to suggest that Defendants were involved in the misconduct or concealment alleged herein. Therefore, the statute of limitations did not begin to run because Plaintiffs and the other Class Members did not and could not discover their claims.

135.    In the alternative, the statute of limitations did not begin to run because the Defendants fraudulently concealed the Defective Cranksets until, at the earliest, September 2023. On information and belief, Defendant Shimano and the Bicycle Manufacturer Defendants have known of the defects in the cranksets for years, through, among other sources, pre- and post-market testing, customer complaints, warranty repairs, internal investigations, and/or public reporting. Defendants knew of the defects well before the Plaintiffs and many of Class Members purchased the Defective Cranksets and/or Class Bicycles, and have concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the Crankset Defect.

136.    Plaintiffs and the other Class Members had no means of obtaining any facts or information concerning the proprietary materials constituting the Defective Cranksets, any aspect of Shimano's investigation into the Defective Cranksets (which Shimano refused to disclose publicly) or Shimano's dealings with the Bicycle Manufacturer Defendants, much less the fact that they had engaged in the misconduct and concealment alleged herein. For these reasons, the statute of limitations as to Plaintiffs' and Class Members' claims did not begin to run and has been tolled with respect to the claims that Plaintiffs and the other Class Members

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

have alleged in this Complaint.

137.    Further, by failing to provide immediate notice of the risks of separation, delamination, and failure associated with ordinary use of the Class Bicycles and Defective Cranksets, and by refusing to publicly acknowledge the defect, Defendants actively concealed the defect from Plaintiffs and the other Class Members.

138.    As alleged above, Plaintiffs did not know and could not have known of the alleged defect in the Crankset and their Class Bicycle because he did not have notice of the facts giving rise to their claims. Plaintiffs first learned of the uniform defect in the Defective Cranksets and their Class Bicycles when Shimano announced its recall on September 21, 2023.

139.    Upon information and belief, Defendants intended their acts to conceal the facts and claims from Plaintiffs and the other Class Members. Defendants fraudulently concealed the defect in the Class Bicycles and Defective Cranksets until September 21, 2023, the date of the recall.

140.    Plaintiffs and the other Class Members were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant's conduct.

141.    For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or Class Members should be tolled based on the discovery rule and Defendants' active concealment.

## CLASS ACTION ALLEGATIONS

142.    The claims of all Class Members derive directly from the same Defective Cranksets and Class Bicycles that were originally equipped with Defective Cranksets. This case is about the responsibility of Shimano and the Bicycle Manufacturer Defendants for their products, and the affirmative misrepresentations and concealment/omissions they made with respect to their products. Shimano and

the Bicycle Manufacturer Defendants engaged in uniform and standardized conduct toward the Classes. They did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of their statements or omissions, among individual Class Members. The objective facts are the same for all Class members. Within each cause of action asserted by the respective Classes, the same legal standards govern. Additionally, many states, and for some claims all states, share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes for some or all claims. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

> **Nationwide Class**: All persons in the United States who purchased the Class Bicycles and Defective Cranksets during the Class Period other than for resale.

> **California Subclass**: All persons in California who purchased the Class Bicycles and Defective Cranksets during the Class Period other than for resale.

> **Florida Subclass**: All persons in Florida who purchased the Class Bicycles and Defective Cranksets during the Class Period other than for resale.

> **Illinois Subclass**: All persons in Illinois who purchased the Class Bicycles and Defective Cranksets during the Class Period other than for resale.

> **New York Subclass**: All persons in New York who purchased the Class Bicycles and Defective Cranksets during the Class Period other than for resale.

The Nationwide Class, California Subclass, Florida Subclass, Illinois Subclass, and New York Subclass are all referred to as the "Class" or the "Classes." Members of

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

each of the Classes are referred to, collectively, as "Class Members."

143.   Excluded from the Classes are (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of any Defendant or any entity in which a Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for any Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

144.   The "Class Period" begins on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of the recall issued by Shimano.

145.   Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that the Classes should be expanded or otherwise modified.

146.   **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains unknown at this time, upon information and belief, there are hundreds of thousands of putative Class Members. Moreover, the number of members of the Classes may be ascertained from Defendants' books and records. Individual joinder of all Class Members is impracticable. Each of the Classes is ascertainable because its members can be readily identified using sales records, production records, and other information kept by Shimano and the Bicycle Manufacturer Defendants or third parties in the usual course of business and within their control.

147.   **Common Questions of Law and Fact Predominate**. Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

2995224.1

a.    Whether the Defective Cranksets are defective;

b.    Whether the Class Bicycles are equipped with the Defective Cranksets;

c.    Whether the Defective Cranksets suffer from the same or substantially similar defect;

d.    Whether Defendants knew or should have known about the defect, and, if so, for how long;

e.    Whether the Defective Cranksets pose an unreasonable safety risk to consumers;

f.    Whether the defective nature of the Defective Cranksets constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Crankset or bicycle containing a Defective Crankset;

g.    Whether Defendants made affirmative misrepresentations of material fact about the Defective Cranksets;

h.    Whether Defendants had a duty to disclose the defective nature of the Defective Cranksets to Plaintiffs and the other Class Members;

i.    Whether Defendants omitted and failed to disclose material facts about the Defective Cranksets;

j.    Whether Defendants failed to appropriately warn Class members of the damages that could result from use of the Class Bicycles and Defective Cranksets;

k.    Whether Defendants' concealment of the true nature of the Defective Cranksets induced Plaintiffs and the other Class Members to act to their detriment by purchasing the Defective Cranksets or bicycles containing the Defective Cranksets;

l.    Whether Defendants conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

m.    Whether Defendants misrepresented that the Defective Cranksets or bicycles containing the Defective Cranksets were safe, made of high-quality materials, and reliable;

n.    Whether Defendants engaged in unfair, deceptive, and unlawful acts or practices in trade or commerce by failing to disclose that the Defective Cranksets were defective;

o.    Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

p.    Whether Defendants' statements, concealments, and omissions regarding the Defective Cranksets were material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating the Defective Cranksets or bicycles

64

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

containing the Defective Cranksets;

q.   Whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

r.   Whether the Defective Cranksets were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

s.   Whether Class Members suffered an ascertainable loss of money or property, or other value as a result of Defendants' acts, and misrepresentations and omissions of material facts;

t.   Whether Plaintiffs and the other Class Members are entitled to a declaratory judgment stating that the Defective Cranksets are defective and/or not merchantable;

u.   Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiffs and the other Class Members;

v.   Whether Defendants have been unjustly enriched by their conduct;

w.   Whether Class Members are entitled to equitable or injunctive relief and, if so, the nature of such relief; and

x.   What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy.

148.   **Typicality**. Plaintiffs' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members each purchased and used the Class Bicycles and Defective Cranksets and each sustained damages arising from Defendants' wrongful conduct, as alleged more fully herein. Plaintiffs share the aforementioned facts and legal claims or questions with putative members of the Classes. Plaintiffs and all members of the putative Classes have been similarly affected by Defendants' common course of conduct alleged herein. Plaintiff and all members of the putative Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' actions, and misrepresentations and omissions regarding the Class Bicycles and Defective Cranksets.

149.   **Adequacy**. Plaintiffs will fairly and adequately protect the interests of the Classes. By prevailing on their own claims, Plaintiffs will establish Defendants' liability to all Class Members. Plaintiffs' counsel are unaware of any conflicts of

interest between Plaintiffs as class representatives and absent Class Members with respect to the matters at issue in this litigation; Plaintiffs will vigorously prosecute the suit on behalf of the Classes. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their counsel are committed to the vigorous prosecution of this action.

150. **Insufficiency of Separate Actions**. Absent a class action, Plaintiff and members of the Classes will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendants.

151. **Injunctive Relief**. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and all Class Members, thereby making appropriate final injunctive relief, as described below, concerning the Class Members as a whole.

152. **Superiority**. A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Classes do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct;

b. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Classes;

66

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

d.    Individual joinder of all members of the Classes is impracticable;

e.    Absent a class action, Plaintiffs and members of the putative Classes will continue to suffer harm as a result of Defendants' unlawful conduct; and

f.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the putative Classes can seek redress for the harm caused by Defendants.

153.    In the alternative, the Classes may be certified for the following reasons:

a.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication concerning individual members of the Classes, which would establish incompatible standards of conduct for Defendants;

b.    Adjudications of claims of the individual members of the Classes against Defendants would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests; and

c.    Defendants have acted or refused to act on grounds generally applicable to the members of the putative Classes, thereby making appropriate final and injunctive relief concerning the putative Classes as a whole.

154.    The Classes expressly disclaim any recovery in this action for physical injury resulting from the Defective Cranksets without waiving or dismissing such claims. Injuries suffered in bicycle crashes as a result of Defective Cranksets constitute evidence supporting various claims, including diminution of value, and are continuing to occur because of Shimano's delays and inaction regarding the commencement and completion of a meaningful recall. The increased risk of injury from the Defective Cranksets serves as an independent justification for the relief sought by Plaintiffs and the other Class Members.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## INADEQUACY OF LEGAL REMEDIES

155.   In the alternative to those claims seeking remedies at law, Plaintiffs and the other Class Members allege that no plain, adequate, and complete remedy exists at law to address Defendants' unlawful and unfair business practices. The legal remedies available to Plaintiff are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief. *Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); *see also United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("'The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

156.   Additionally, unlike damages, the Court's discretion in fashioning equitable relief is very broad and can be awarded when the entitlement to damages may prove difficult. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal.4th 163, 177-80 (2000) (restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred.").

157.   Thus, restitution would allow recovery even when normal consideration associated with damages would not. *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007) (noting that restitution is available even when damages are unavailable). Furthermore, the standard and necessary elements for a violation of the UCL "unfair" prong and for quasi-contract/unjust enrichment are different from the standard that governs a legal claim. Additionally, Plaintiffs seek injunctive relief that may not be available as legal damages.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

158.    Moreover, Plaintiffs are unable to assess whether the cranksets Defendants sell or will sell are similarly defective (*i.e.*, the Crankset Defect) because Plaintiffs do not possess the specialized knowledge or equipment required to identify and analyze the defect.  Plaintiffs would purchase Defendants' products in the future if they believed Defendants' representations were accurate.

## CLAIMS ASSERTED ON BEHALF OF THE NATIONWIDE CLASS

### A.    COUNT I: FRAUD

159.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

160.    Plaintiffs bring this fraud count, under both the misrepresentation and omission/concealment theories, under California law, individually and on behalf of the Nationwide Class against all Defendants.

161.    Alternatively, Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraud, both by misrepresentation and omission/concealment, as there are no true conflicts among the states' laws of fraudulent concealment.

162.    For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

163.    For purposes of this count, Shimano and the Bicycle Manufacturer Defendants are collectively referred to as "Defendants."

### 1.    Affirmative Misrepresentation

164.    Defendants represented and marketed the Class Bicycles and Defective Cranksets as strong, of high-quality, durable, dependable, and reliable. These representations signal to consumers that the Defective Cranksets are "safe" for ordinary use.

165.    The strength, quality, durability, dependability and reliability of the Defective Cranksets and the Class Bicycles in which the Defective Cranksets were

2995224.1

installed were material facts because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members.

166. Defendants' representations regarding the Defective Cranksets and Class Bicycles' strength, quality, durability, dependability and reliability—again, all terms that signal "safety" to consumers and the bicycling community—were false because the Class Bicycles and Defective Cranksets contain the Crankset Defect that causes the cranksets to break during normal use. In doing so, the presence of the Crankset Defect makes the Defective Cranksets and Class Bicycles unsafe for normal use.

167. Defendants knew that their representations were false and intended Plaintiffs and the other Class Members to rely on them, which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

168. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendants' deception on their own.

169. Had Plaintiffs and the other Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

170. As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

171.    Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**2.    Omission/Concealment**

172.    Defendants are liable for fraud by omission, concealment, and/or non-disclosure. *See*, *e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

173.    Defendants owed Plaintiffs and the other Class Members a duty to disclose all the material facts concerning the Defective Cranksets in the Class Bicycles and Defective Cranksets because:

a.    Given the Defendants' role in the design, manufacture, pre-sale testing, sale, and post-sale monitoring of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.    Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets, including their component parts, tolerances, design, adhesive properties, and other information not known to Plaintiffs or Class Members;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

c.  Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.  Given the Crankset Defect's hidden, proprietary, and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.  Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.  Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.  The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.  Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.     Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.     Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth. In breach of their duties, Defendants failed to disclose the Crankset Defect and that the Class Bicycles and Defective Cranksets were not strong, safety, high-quality, durable, or free of defects to Plaintiffs and the other Class Members in connection with the sale of the Class Bicycles and Defective Cranksets.

174.    The Crankset Defect within the Class Bicycles and Defective Cranksets is material to the sale of the of the Class Bicycles and Defective Cranksets because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

175.   Defendants intended for Plaintiffs and the other Class Members to rely on their omissions and concealment—which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

176.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendants' deception on their own.

177.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Bicycles and Defective Cranksets installed in them, and the Defective Cranksets themselves, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and the other Class Members.

178.   If Defendants had fully and adequately disclosed the Crankset Defect to consumers, Plaintiffs and the other Class Members would have seen such a disclosure.

179.   Through their omissions and concealment with respect to the Crankset Defect within the Class Bicycles and Defective Cranksets, Defendants intended to induce, and did induce, Plaintiffs and the other Class Members to either purchase a Class Bicycle or a Defective Crankset that they otherwise would not have purchased, or pay more for than they otherwise would have paid for a Class Bicycle or Defective Crankset.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

180.    Had Plaintiffs and the other Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

181.    As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

182.    Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**B.    COUNT II: UNJUST ENRICHMENT**

183.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

184.    Plaintiffs bring this count under California law, individually and on behalf of the other members of the Nationwide Class against all Defendants.

185.    Alternatively, Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of unjust enrichment, as there are no true conflicts among the states' laws of unjust enrichment.

186.    For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

187.    When they purchased the Class Bicycles or Defective Cranksets, Plaintiffs and the other Class Members conferred a tangible and material economic benefits on Defendants. Defendants readily accepted and retained the benefits.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

188.    Plaintiffs and Class Members would not have purchased the Defective Cranksets or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Defendants profited from the sale of the Defective Cranksets and Class Bicycles to the detriment and expense of Plaintiffs and the other Class Members.

189.    Defendants knew or should have known that the payments rendered by Plaintiffs and the other Class Members were given with the expectation that the Class Bicycles and Defective Cranksets would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. Defendants appreciated the economic benefits. The benefits were the expected result of Defendants acting in their own pecuniary interest at the expense of Plaintiffs and the other Class Members. Defendants knew of the benefits they were receiving because they were aware of the Crankset Defect in the Class Bicycles and Defective Cranksets, yet they failed to disclose this knowledge and misled Plaintiffs and the other Class Members regarding the nature and quality of the Class Bicycles and Defective Cranksets while profiting from their deception. As such, it would be unjust, inequitable and unconscionable for Defendants to retain the benefit of the payments under these circumstances.

190.    By their wrongful acts and omissions described herein, including selling the Class Bicycles and Defective Cranksets which contain the Crankset Defect, Defendants were unjustly enriched at the expense of Plaintiffs and the other Class Members.

191.    Plaintiffs' and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

192.    Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the other Class Members. It would be unjust, inequitable, and unconscionable for Defendants to retain the profits,

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

benefits, and other compensation obtained from their wrongful conduct alleged herein.

193. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Class Bicycles and Defective Cranksets, which retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured the Class Bicycles and Defective Cranksets, and Defendants affirmatively misrepresented and omitted and/or concealed the nature of the Class Bicycles and Defective Cranksets, and knowingly marketed and promoted dangerous and Class Bicycles and Defective Cranksets, which injured Plaintiffs and the other Class Members because they would not have purchased the Class Bicycles and Defective Cranksets based on the exact representations if the true facts concerning the Class Bicycles and Defective Cranksets had been known.

194. Plaintiffs and putative Class Members are entitled to restitution and to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants in the amount necessary to return Plaintiffs and the other Class Members to the position they occupied prior to dealing with Defendants, with such amounts to be determined at trial.

195. As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

196. Plaintiffs plead this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendants, Plaintiffs will have no adequate legal remedy.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

## C.      COUNT III: VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)

(Against Shimano, Specialized and Giant Defendants)

197.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

198.   Plaintiffs bring this count, individually and on behalf of the other members of the Nationwide Class against Shimano, Specialized and Giant Defendants for their respective Class Bicycles and Defective Cranksets.

199.   For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

200.   For purposes of this count, Shimano, Specialized and Giant shall be referred to as "Defendants."

201.   Defendants are "persons" under Cal. Civ. Code §1761(c).

202.   Plaintiffs and the other Class Members are "consumers" under Cal. Civ. Code §1761(d) because they purchased the Defective Cranksets and/or Class Bicycles primarily for personal, family, or household use.

203.   The purchase of the Defective Cranksets and/or Class Bicycles by Plaintiffs and the other Class Members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

204.   The Defective Cranksets and the Class Bicycles are "goods" under Cal. Civ. Code § 1761(a).

205.   The California Consumer Legal Remedies Act ("CLRA") prohibits deceptive practices concerning the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

206.   Defendants, directly and through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability,

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

safety, and performance of the Class Bicycles and Defective Cranksets, as detailed above.

207. Defendants' violations of the CLRA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, and sale the Class Bicycles and Defective Cranksets.

208. Defendants had an ongoing duty to Plaintiffs and the other Class Members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, Defendants owed Plaintiffs and the other Class Members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

  a.  Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

  b.  Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

  c.  Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

  d.  Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

e.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.  Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.  Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.  The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.  Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.  Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

k.    Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

209.    By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a.    Representing that the Class Bicycles and Defective Cranksets had a characteristic that they did not actually have—i.e., that they were strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects suitable for normal use, when, in fact, they were not because the Class Bicycles and Defective Cranksets were defectively designed such that they had an unreasonably dangerous propensity to break, causing accidents and injuries;

b.    Representing that the Class Bicycles and the Defective Cranksets were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.    Concealing and failing to disclose that the Class Bicycles and Defective Cranksets were inherently defective, defectively designed, and not

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

suitable for their intended use despite advertising them as safe and suitable for their intended function; and

d. Failing to market, distribute, and sell the Class Bicycles and Defective Cranksets in accordance with Defendants' previous representations— i.e., that the Class Bicycles and Defective Cranksets s were strong, high-quality, safe, dependable, durable, reliable and suitable for their intended use, when, in fact, they were not because of the Crankset Defect.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

210. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, dependable, durable and reliable, and had properly-functioning cranksets that would properly function and be reliable. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and the other Class Members, about the true safety, strength, dependability, durability, and reliability of the Class Bicycles and Defective Cranksets.

211. Defendants intended for Plaintiffs and the other Class Members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the Defective Cranksets and Class Bicycles at the prices they paid believing that their Defective Cranksets and Class Bicycles would not have a Crankset Defect that would affect the strength, quality, durability, dependability, reliability, and safety of the Class Bicycles and the Defective Cranksets.

212. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the Defective Cranksets and Class Bicycles were material to the decisions of

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Plaintiffs and the other Class Members to purchase those cranksets and bicycles, as Defendants intended. Plaintiffs and the other Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and their Defective Cranksets were safe and reliable in deciding to purchase the Class Bicycles and Defective Cranksets.

213.    Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendants' deception on their own.

214.    A reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Defective Cranksets or pay a lesser price. Had they known the truth about the Crankset Defect, Plaintiffs and the Class members would not have purchased the Defective Cranksets and/or Class Bicycles, or would have paid significantly less for them.

215.    Defendants could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendants disclosed the Crankset Defect in this manner, Plaintiffs, Class Members and reasonable consumers would have been aware of it.

216.    Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Defective Cranksets to unwary purchasers.

217.    As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and the other Class Members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and

omissions alleged above – that first occurred at the time each Defective Crankset and/or Class Bicycle was purchased.

218.  Defendants' violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the Crankset Defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

219.  Plaintiffs and the other Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seeks all damages and relief to which Plaintiffs and the other Class Members are entitled.

220.  Alternatively, Plaintiffs and the other Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendants knew about the Crankset Defect for years. Moreover, although Shimano issued a recall, that recall is inadequate because, inter alia: (a) it is belated because Defendants knew about the Defective Cranksets, including Defective Cranksets included in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendants' misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and Defective Cranksets.

221.  Defendants' violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

2995224.1

222.    Plaintiffs currently seek injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper, and do not yet seek money damages under this count. In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel provided notice, on behalf of Plaintiffs and the other Class Members, as alleged above.

223.    As Defendants failed to correct or agree to correct their actions, Plaintiff may pursue the compensatory and monetary damages to which Plaintiff and other Class Members are entitled.

224.    Pursuant to California Civil Code § 1780, Plaintiff seeks compensatory damages, injunctive relief, reasonable attorney fees and costs, and any other relief the Court deems proper, including punitive damages.

D.    **COUNT IV: FALSE ADVERTISING UNDER THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, ET SEQ.)**

(Against Shimano, Specialized and Giant Defendants)

225.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

226.    Plaintiffs bring this count, individually and on behalf of the other members of the Nationwide Class against Shimano, Specialized and Giant Defendants for their respective Class Bicycles and Defective Cranksets.

227.    For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

228.    For purposes of this count, Shimano, Specialized and Giant shall be referred to as "Defendants."

229.    Plaintiff, Class Members and Defendants are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

230.    The California False Advertising Law ("FAL") states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

231.    Defendants, directly and through their agents, employees, and/or subsidiaries, violated the FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the strength, reliability, durability of the Class Bicycles and Defective Cranksets, as detailed above. Defendants' actionable conduct includes misrepresentations, omissions, concealment, and failure to disclose the known separation, delamination, and failure defect of the Class Bicycles and Defective Cranksets.

232.    The FAL imposes an ongoing duty on Defendants to refrain from unfair and deceptive business practices, which includes disclosing all material facts, such as latent dangerous defects, of the Class Bicycles and Defective Cranksets to consumers because:

a.    Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.    Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and

long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.    Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.    Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.    Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.    Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.    The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.    Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs

of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.    Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.    Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

233.   By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

234.   Defendants made or caused to be made and disseminated from California, nationwide advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were

known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

235. Defendants' unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were safe, secure, and reliable, and that they did not contain a defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiff and Class Members, about the true safety and reliability of the Class Bicycles and Defective Cranksets, the quality of the Class Bicycles and Defective Cranksets, and the true value of the Class Bicycles and Defective Cranksets.

236. Defendants intended for Plaintiffs and the other Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing Class Bicycles and Defective Cranksets at the prices they paid believing that the Class Bicycles and Defective Cranksets would not have a defect that would affect their quality, reliability, and safety.

237. Defendants' misrepresentations, omissions, and concealment of materials regarding the defect in the Class Bicycles and Defective Cranksets, and true characteristics thereof, were material to the decisions of Plaintiffs and the other Class Members to purchase the Class Bicycles and Defective Cranksets, as Defendants intended. Plaintiffs and the other Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on the Defendants' misrepresentations and omissions that the Class Bicycles and Defective Cranksets were safe, secure, and reliable in deciding to purchase and Class Bicycles and Defective Cranksets.

238.   Absent Defendants' disclosure of material facts, Plaintiffs and the other Class Members cannot discover the defect because it requires complex defective Crankset manufacturing knowledge and access to documents in the exclusive possession of the Defendants.

239.   The fact that the Class Bicycles and Defective Cranksets may separate, delaminate, or fail is a material fact that requires disclosure under the FAL.

240.   Defendants did not disclose the defect to consumers until almost a decade after discovering it, in their recall on September 21, 2023.

241.   Plaintiffs and the other Class Members reasonably relied on Defendants' concealment of misrepresentations, omissions, and concealment of material facts regarding the reliability, durability, and strength of the Class Bicycles and defective Crankset by purchasing them and believing they would be safe to use.

242.   Plaintiffs' and Class Members' reliance on Defendants' misrepresentations, omissions and concealment was reasonable because they did not and could not know of the defect because they do not possess the necessary complex skill and knowledge required to identify it, and Defendants misrepresented, concealed and failed to disclose material facts that would have made discovery of the defect possible to ordinary consumers.

243.   Had Plaintiffs and the other Class Members known the truth about the defective nature of the Class Bicycles and Defective Cranksets, they would not have purchased them or would have paid significantly paid less for them.

244.   Defendants' violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the defect. The unlawful acts and practices complained of, herein, affect the public interest.

245.   Plaintiffs and the other Class Members will likely continue to be damaged by Defendants' deceptive trade practices because Defendants continue

2995224.1

disseminating misleading information on the Class Bicycles and Defective Cranksets' packaging and online retail listings. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

246.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members. Plaintiffs have suffered injury in fact as a result of Defendants' unlawful conduct.

247.    Plaintiffs and the other Class Members seek an order enjoining the Defendants' false advertising, any such orders or judgments as may be necessary to restore to Plaintiffs and the other Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

248.    Plaintiffs plead this claim separately, see "Inadequacy of Legal Remedies," supra, as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendants, Plaintiffs' will have no adequate legal remedy.

E.    **COUNT V: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

(Against Shimano, Specialized and Giant Defendants)

249.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

250.    Plaintiffs bring this count, individually and on behalf of the other members of the Nationwide Class against Shimano, Specialized and Giant Defendants for their respective Class Bicycles and Defective Cranksets.

251.    For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

252.    For purposes of this count, Shimano, Specialized and Giant shall be referred to as "Defendants."

253.    California's Unfair Competition Law ("UCL") prohibits "unfair [business] competition," including any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

254.    Defendants committed an unlawful business act or practice in violation of § 17200 by violating the California FAL and CLRA, California Commercial Code, Song-Berry Consumer Warranty Act, consumer protection act of any state in which Plaintiffs reside, and the Commercial Code of any state in which Plaintiffs reside, and other laws alleged herein.

255.    Unfair: Defendant's conduct concerning the labeling, advertising, and sale of the Class Bicycles and Defective Cranksets was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims. Distributing materially unsafe Class Bicycles and Defective Cranksets has no public utility at all. These acts and practices offend established public policy. Defendants' conduct impaired competition and prevented Plaintiffs and the other Class Members from making fully informed decisions about whether to purchase the Class Bicycles and Defective Cranksets and/or the price to be paid to purchase them.

256.    Any countervailing benefits to consumers or competition did not outweigh this injury. Selling Class Bicycles and Defective Cranksets unsafe and unfit for their intended purposes only injures healthy competition and harms consumers. Defendants also minimized and ignored the scope of the defect for many years despite knowing the Class Bicycles and Defective Cranksets are unreasonably dangerous, made repairs and replacements during the warranty period that caused instances of

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

failure and unbeknownst to consumers did not provide a permanent fix, and knowingly sold defective Class Bicycles and Defective Cranksets in hopes of forcing consumers to purchase replacement bicycles and cranksets.

257.    Defendants' conduct concerning the labeling, advertising, and sale of the Class Bicycles and Defective Cranksets was and is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act, and consumer protection statutes and other laws of states in which Plaintiffs reside.

258.    Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

259.    As set forth herein, Defendants designed, developed, manufactured, and sold Defective Cranksets and installed them in the Class Bicycles, knowingly and intentionally marketed the Class Bicycles and Defective Cranksets with the defect while misrepresenting the strength, high-quality, safety, dependability, durability and reliability of the Class Bicycles and Defective Cranksets and/or knowingly omitting and failing to disclose material facts that the Class Bicycles and Defective Cranksets suffer from the Crankset Defect (and the costs, risks, and diminished value of the Class Bicycles and Defective Cranksets as a result). Defendants knew that the Class Bicycles and Defective Cranksets were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

260.    Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Bicycles and Defective Cranksets because:

a.    Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry,

they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.    Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.    Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.    Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.    Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.    Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.    The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

i.    Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.    Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.    Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

261.   Defendants could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendants disclosed the defect in this manner, Plaintiffs, Class Members, and reasonable consumers would have been aware of it.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

262.   Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, high quality, reliable, durable, dependable, and properly functioning and that the Class Bicycles and Defective Cranksets did not contain any defects. Those misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and the other Class Members, about the true strength, quality, safety, durability, dependability, and reliability of the Class Bicycles and Defective Cranksets, as well as the quality and true value thereof.

263.   Defendants' misrepresentations, concealments, omissions, and suppressions of material facts were material to Plaintiffs' and Class Members' decisions in that a reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Defective Cranksets or pay a lesser price. Plaintiffs and the other Class Members were exposed to Defendants' misrepresentations, concealments, omissions, and suppressions of facts, and relied on Defendants' misrepresentations, concealment, omission and non-disclosure that the Class Bicycles and Defective Cranksets were safe and reliable.

264.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning of the defect, as alleged above. Plaintiffs and the other Class Members did not, and could not, unravel Defendants' deception on their own.

265.   Had Plaintiffs and the other Class Members known about the defective nature of the Class Bicycles and Defective Cranksets, they would not have purchased them or paid less for them.

266.   Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Defective Cranksets to unwary purchasers.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

267.    Plaintiffs and the other Class Members suffered ascertainable loss as a direct and proximate result of Defendants' unlawful, fraudulent, and unfair business acts and practices. Plaintiffs and the other Class Members will likely continue to be damaged, as will the general public, by Defendants' deceptive trade practices because Defendants continue disseminating misleading information on the packaging and in online retail listings regarding the Class Bicycles and Defective Cranksets, and the Class Bicycles and Defective Cranksets remain unsafe due to the defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

268.    Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendants' unlawful conduct.

269.    Under Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore, to Plaintiffs and the other Class Members, any money acquired by unfair competition, including restitution of all monies from the sale of the Class Bicycles and Defective Cranksets and/or restitutionary disgorgement of all moneys which were unjustly acquired through acts of unlawful competition as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the California UCL.

270.    Plaintiffs plead this claim separately, see "Inadequacy of Legal Remedies," *supra*, as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendants, Plaintiffs' will have no adequate legal remedy.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

F.    **COUNT VI: VIOLATIONS OF THE SONG-BEVERLY ACT (CIV. CODE § 1790, *ET SEQ.*), VIA BREACH OF IMPLIED WARRANTY**

(Against All Defendants)

271.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

272.   Plaintiffs bring this count, individually and on behalf of the other members of the Nationwide Class against all Defendants for their respective Class Bicycles and Defective Cranksets.

273.   For purposes of this count, members of the Nationwide Class shall be referred to as "Class Members."

274.   For purposes of this count, Shimano, Specialized, Trek, and Giant shall be referred to as "Defendants."

275.   Plaintiffs and the other Class Members are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

276.   The Class Bicycles and Defective Cranksets are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

277.   Defendants are the "manufacturers" and "sellers" of the Class Bicycles and Defective Cranksets within the meaning of Cal. Civ. Code § 1791(j) and (l).

278.   Cal. Civ. Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. Defendants did not at any time properly disclaim the warranty.

279.   Defendants knew of the particular purposes for which the Class Bicycles and Defective Cranksets were intended and impliedly warranted to Plaintiffs and the other Class Members that the Class Bicycles and Defective Cranksets were "merchantable" under Cal. Civ. Code §§ 1791.1(a) & 1792.

280.   However, the Class Bicycles and Defective Cranksets do not have the quality that a reasonable purchaser would expect.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

281.    The Class Bicycles and Defective Cranksets are not merchantable and, as such, Defendants breached their implied warranties because:

a.    The Class Bicycles and Defective Cranksets would not pass without objection in the trade because of the separation, delamination, and failure defect alleged herein.

b.    The Class Bicycles and Defective Cranksets have a dangerous defect in that the defective Crankset part may separate, delaminate, and or fail when ordinary force to propel the bicycle forward is applied to the pedal, rendering safe control of a bicycle near impossible and posing a significant safety hazard for consumers.  As a result of the defect, consumers may lose control of their bicycle and crash endangering both themselves and the public at large. Such a design defect is extraordinarily dangerous and has rendered the Class Bicycles and Defective Cranksets unsuitable for their principal and intended purpose.

282.    For the same reasons, the Class Bicycles and Defective Cranksets are not fit for the ordinary purpose they are used—propelling a bicycle forward—because of the safety defect as alleged herein.

283.    The safety defect in the Class Bicycles and Defective Cranksets is latent. Though the Class Bicycles and Defective Cranksets appear operable when new, the safety defect existed at the time of sale and throughout the one year under the Song-Beverly Act.  Accordingly, any subsequent discovery of the safety defect by Class Members beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

284.    Further, despite due diligence, Plaintiffs and the other Class Members could not have discovered the safety defect before the manifestation of its symptoms in the form of separation, delamination, and failure while riding.   Those Class

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Members whose claims would have otherwise expired allege that the discovery rule and doctrine of fraudulent concealment tolls them.

285.    Defendants breached the implied warranty of merchantability by manufacturing and selling Class Bicycles and Defective Cranksets containing the safety defect. The existence of the defect has caused Plaintiffs and the other Class Members not to receive the benefit of their bargain and have caused Class Bicycles and Defective Cranksets to depreciate.

286.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially impairs their value to Plaintiffs and the other Class Members. Plaintiffs and the other Class Members have been damaged as a result of the diminished value of the Class Bicycles and Defective Cranksets.

287.    Plaintiffs and the other Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Bicycles and Defective Cranksets or the overpayment or diminution in value of their Class Bicycles and Defective Cranksets. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

288.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class Members are entitled to costs and attorneys' fees.

## CLAIMS ASSERTED ON BEHALF OF CALIFORNIA STATE SUBCLASS

A.    **COUNT VI: BREACH OF EXPRESS WARRANTY (CAL. COM. CODE §§ 2313 AND 10210)**

(Against Shimano)

289.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

290.    Plaintiffs Delgado, Erazo, Gonyer Hawkins, Jennings, and Litam bring this count under California law, individually and on behalf of the other members of the California Subclass against Shimano for the Defective Cranksets.

291.    For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano shall be referred to as "Defendant."

292.    Plaintiffs' Class Bicycles and Defective Cranksets are a "good" under Cal. Com. Code §§ 2105(1) and 10103(a)(8).

293.    Plaintiffs and the other Class Members who purchased Defective Cranksets or Class Bicycles equipped with Defective Cranksets are "buyers" under Cal. Com. Code §§ 2013(1)(a) and 10103(a)(14).

294.    Shimano is a "merchant" and "seller" of the Defective Cranksets under Cal. Com. Code §§2104(1) and 2103(1)(d), respectively.

295.    Defendant issued an express written warranty for each Defective Crankset they sold (including Defective Cranksets equipped in Class Bicycles), including that:

   a.    The Defective Cranksets would be "free from a defect in material and workmanship" at the time of sale; and[37]

   b.    The Defective Cranksets were strong, high quality, safe, durable, dependable, and reliable, and their cranksets would function properly during the operation of the bicycles.

296.    The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

---

[37] Shimano Warranty Policy, https://ride.shimano.com/pages/shimano-warranty-policy, last accessed on December 29, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

297.    Defendant knowingly breached its warranty for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets because:

a.    The Defective Cranksets or Class Bicycles equipped with Defective Cranksets have latent defects which have a dangerous propensity to cause the bonded crank parts to separate and break, subjecting Plaintiffs and the other Class Members to the risk of loss and injury; and

b.    Defendant denied, concealed, and misrepresented (affirmatively and by omission) the Crankset Defect, in the process of refusing to pay for or provide, in a reasonably timely fashion, the needed repairs and replacements for Plaintiffs and the other Class Members.

298.    Defendant knew or should have known that the warranties were false and/or misleading. Specifically, Defendant was aware of the Crankset Defect, which made the Defective Cranksets or Class Bicycles equipped with Defective Cranksets inherently defective and dangerous at the time that they were sold to Plaintiffs and the other Class Members.

299.    Plaintiffs and the other Class Members were exposed to Defendant's misrepresentations and omissions/concealment, and they had no way of discerning that Defendant's representations and omissions/concealment were false and misleading or otherwise learning the material facts that Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and the other Class Members reasonably relied on Defendant's express warranties when purchasing the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

300.    Plaintiffs and the other Class Members timely provided the Defendant notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendant's notice, above.

301.    Alternatively, Plaintiffs and the other Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

1   would have been futile. As alleged above, Defendant knew about the Crankset Defect
2   for years. Moreover, although Defendant issued a recall, that recall is inadequate
3   because, inter alia: (a) it is belated because Defendant knew about the Defective
4   Cranksets, including Defective Cranksets included in Class Bicycles, for years and
5   did nothing to recall or remedy the serious safety defect; (b) with hundreds of
6   thousands of Class Bicycles and Defective Cranksets impacted in existing and
7   potential future recalls, as a result of Defendant's misrepresentations about and
8   omission/concealment of the Crankset Defect, the recalls cannot be implemented
9   effectively due to supply constraints and resulting delays; and (c) the recalls are
10  incomplete, and apply to only a subset of the Defective Cranksets or Class Bicycles
11  equipped with Defective Cranksets.

12      302.   Privity of contract is not required here because Plaintiffs and the other
13  Class Members were each intended third-party beneficiaries of the Defective
14  Cranksets or Class Bicycles equipped with Defective Cranksets sold through
15  independent retailers. The retailers were not intended to be the ultimate consumers of
16  the Defective Cranksets or Class Bicycles equipped with Defective Cranksets and
17  have no rights under the warranty provided with the Defective Cranksets or Class
18  Bicycles equipped with Defective Cranksets.

19      303.   Alternatively, privity of contract is satisfied because Plaintiffs and the
20  other Class Members purchased the Defective Cranksets or Class Bicycles equipped
21  with Defective Cranksets from retailers who were the exclusive retail sellers of
22  Defendant's products and/or acted as agents of the Defendants.

23      304.   Plaintiffs and the other Class Members did not receive or otherwise have
24  the opportunity to review, at or before the time of sale, any purported warranty
25  exclusions and limitations of remedies. Accordingly, any such exclusions and
26  limitations of remedies are unconscionable and unenforceable.

27

28

305.   As a direct and proximate result of Defendant's breach of their express warranties, the Defective Cranksets or Class Bicycles equipped with Defective Cranksets were and are defective and the Crankset Defect was not remedied. Therefore, Plaintiffs and the other Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets with an undisclosed safety defect that would not be remedied.

**B.    COUNT VII: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE §§ 2314 AND 10212)**

(Against Shimano, Specialized and Trek)

306.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

307.   Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam bring this count under California law, individually and on behalf of the other members of the California Subclass against all Shimano, and Trek for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

308.   For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Trek shall be referred to as "Defendants."

309.   For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

310.   The Class Bicycles and Defective Cranksets are "goods" under Cal. Com. Code § 2105(1).

311.    Plaintiffs and the other Class Members are "buyers" of the Class Bicycles and Defective Cranksets under Cal. Com. Code § 2103(1)(a).

312.    Defendants are "merchants" and "sellers" under Cal. Com. Code §§ 2104(1) and 2103(1)(d).

313.    California law conferred an implied warranty that the Defective Cranksets and Class Bicycles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code § 2314.

314.    The Defective Cranksets and Class Bicycles are not merchantable and, as such, Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Bicycles and Defective Cranksets suffer from a safety defect that renders them unsafe to ride and/or operate;

b.    The Defective Cranksets and the Class Bicycles would not pass without objection in the bicycle trade given the Crankset Defect;

c.    The Crankset Defect renders the Defective Cranksets and Class Bicycles unsafe to ride and unfit for ordinary purposes; and

d.    The Crankset Defect affects the central functionality of the Class Bicycles and Defective Cranksets.

315.    Due to the Crankset Defect, Plaintiffs and the other Class Members cannot operate their Class Bicycles and Defective Cranksets as intended, substantially free from defects. The Class Bicycles and Defective Cranksets do not provide a safe and reliable way to propel a bicycle forward and pose a serious risk of injury, including crashing, bone fracture, laceration, and death. As a result, Plaintiffs and the other Class Members cannot use their Class Bicycles and Defective Cranksets for the purposes for which they purchased them.

316.    Plaintiffs and the other Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

317.    Alternatively, Plaintiffs and the other Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendants knew about the Crankset Defect for years. Moreover, although Defendants issued a recall, that recall is inadequate because, inter alia: (a) it is belated because Defendants knew about the Defective Cranksets, including the Defective Cranksets installed in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendants' misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and Defective Cranksets.

318.    Plaintiffs and the other Class Members have had sufficient direct dealings with Defendants or their agents (retailers) to establish privity of contract between Plaintiffs and the other Class Members. Shimano has employed its authorized dealers to carry out the inspection of its Defective Cranksets.[38] To do so, Shimano developed and distributed materials to its authorized dealers who Shimano has tasked with inspecting the Defective Cranksets for the Crankset Defect.[39] Outside of the CPSC Recall, Shimano also authorized its dealers to carry out the warranty evaluation process on Shimano's behalf.[40] In performing these functions, Shimano

---

[38] https://www.cpsc.gov/Recalls/2023/Shimano-Recalls-Cranksets-for-Bicycles-Due-to-Crash-Hazard, last accessed on April 28, 2024.

[39] Russell Decl., Exh. 1 ¶ 7.

[40] https://bike.shimano.com/en-US/information/warranty.html, last accessed on April 28, 2024; https://bike.shimano.com/content/dam/productsite/shimano-northamerica/pdf/SAC%20Warranty.pdf, last accessed on April 28, 2024.

authorized dealers to act as agents of Shimano such that, by purchasing Class Bicycles from these authorized dealers, Plaintiffs and Class members directly dealt with Defendants.

319.    Plaintiffs, individually and on behalf Class Members, seeks all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## C.    COUNT VIII: VIOLATIONS OF THE SONG-BEVERLY ACT (CIV. CODE § 1790, *ET SEQ.*), VIA BREACH OF IMPLIED WARRANTY

(Against Shimano, Specialized, and Trek)

320.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

321.    Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam bring this count under California law, individually and on behalf of the other members of the California Subclass against all Shimano and Trek for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

322.    For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Trek shall be referred to as "Defendants."

323.    Plaintiffs and the other Class Members who purchased the Class Bicycles and Defective Cranksets in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

324.    The Class Bicycles and Defective Cranksets are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

325.    Defendants are the "manufacturers" and "sellers" of the Class Bicycles and Defective Cranksets within the meaning of Cal. Civ. Code § 1791(j) and (l)

326.    Cal. Civ. Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. Defendants did not at any time properly disclaim the warranty.

327.    Defendants knew of the particular purposes for which the Class Bicycles and Defective Cranksets were intended and impliedly warranted to Plaintiffs and the other Class Members that the Class Bicycles and Defective Cranksets were "merchantable" under Cal. Civ. Code §§ 1791.1(a) & 1792.

328.    However, the Class Bicycles and Defective Cranksets do not have the quality that a reasonable purchaser would expect.

329.    The Class Bicycles and Defective Cranksets are not merchantable and, as such, Defendants breached their implied warranties because:

a.    The Class Bicycles and Defective Cranksets would not pass without objection in the trade because of the separation, delamination, and failure defect alleged herein.

b.    The Class Bicycles and Defective Cranksets have a dangerous defect in that the defective Crankset part may separate, delaminate, and or fail when ordinary force to propel the bicycle forward to applied to the pedal, rendering safe control of a bicycle near impossible and posing a significant safety hazard for consumers.  As a result of the defect, consumers may lose control of their bicycle and crash endangering both themselves and the public at large. Such a design defect is extraordinarily dangerous and has rendered the Class Bicycles and Defective Cranksets unsuitable for their principal and intended purpose.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

330.    For the same reasons, the Class Bicycles and Defective Cranksets are not fit for the ordinary purpose they are used—propelling a bicycle forward—because of the safety defect as alleged herein.

331.    The safety defect in the Class Bicycles and Defective Cranksets is latent. Though the Class Bicycles and Defective Cranksets appear operable when new, the safety defect existed at the time of sale and throughout the one year under the Song-Beverly Act.  Accordingly, any subsequent discovery of the safety defect by Class Members beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

332.    Further, despite due diligence, Plaintiffs and the other Class Members could not have discovered the safety defect before the manifestation of its symptoms in the form of separation, delamination, and failure while riding.  Those Class Members whose claims would have otherwise expired allege that the discovery rule and doctrine of fraudulent concealment tolls them.

333.    Defendants breached the implied warranty of merchantability by manufacturing and selling Class Bicycles and Defective Cranksets containing the safety defect. The existence of the defect has caused Plaintiffs and the other Class Members not to receive the benefit of their bargain and have caused Class Bicycles and Defective Cranksets to depreciate.

334.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other Class Members received goods whose defective condition substantially impairs their value to Plaintiff and the other California members. Plaintiffs and the other California Class Members have been damaged as a result of the diminished value of the Class Bicycles and Defective Cranksets.

335.    Plaintiffs and the other California Class Members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

their Class Bicycles and Defective Cranksets or the overpayment or diminution in value of their Class Bicycles and Defective Cranksets. Plaintiffs, individually and on behalf of Class Members, seek all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

336.    Pursuant to Cal. Civ. Code § 1794, Plaintiffs and the other Class Members are entitled to costs and attorneys' fees.

## D.    COUNT IX: VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*)

(Against Shimano, Specialized, and Trek)

337.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

338.    Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam bring this count under California law, individually and on behalf of the other members of the California Subclass against all Shimano and Trek for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

339.    For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Trek shall be referred to as "Defendants."

340.    Defendants are "persons" under Cal. Civ. Code §1761(c).

341.    Plaintiffs and the other Class Members are "consumers" under Cal. Civ. Code §1761(d) because they purchased the Defective Cranksets and/or Class Bicycles primarily for personal, family, or household use.

342.   The purchase of the Defective Cranksets and/or Class Bicycles by Plaintiffs and the other Class Members constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

343.   The Defective Cranksets and the Class Bicycles are "goods" under Cal. Civ. Code § 1761(a).

344.   The California Consumer Legal Remedies Act ("CLRA") prohibits deceptive practices concerning the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

345.   Defendants, directly and through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and Defective Cranksets, as detailed above.

346.   Defendants' violations of the CLRA occurred repeatedly in their trade or practice—including the design, manufacture, distribution, marketing, and sale the Class Bicycles and Defective Cranksets.

347.   Defendants had an ongoing duty to Plaintiffs and the other Class Members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, Defendants owed Plaintiffs and the other Class Members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

a.   Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

b.   Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.   Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.   Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.   Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.   Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.   The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.   Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC,

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.    Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.    Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

348.    By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

a.  Representing that the Class Bicycles and Defective Cranksets had a characteristic that they did not actually have—i.e., that they were strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects suitable for normal use, when, in fact, they were not because the Class Bicycles and Defective Cranksets were defectively designed such that they had an unreasonably dangerous propensity to break, causing accidents and injuries;

b.  Representing that the Class Bicycles and the Defective Cranksets were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.  Concealing and failing to disclose that the Class Bicycles and Defective Cranksets were inherently defective, defectively designed, and not suitable for their intended use despite advertising them as safe and suitable for their intended function; and

d.  Failing to market, distribute, and sell the Class Bicycles and Defective Cranksets in accordance with Defendants' previous representations—i.e., that the Class Bicycles and Defective Cranksets s were strong, high-quality, safe, dependable, durable, reliable and suitable for their intended use, when, in fact, they were not because of the Crankset Defect.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

349. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, dependable, durable and reliable, and had properly-functioning cranksets that would properly function and be reliable. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive

reasonable consumers, including Plaintiffs and the other Class Members, about the true safety, strength, dependability, durability, and reliability of the Class Bicycles and Defective Cranksets

350.  Defendants intended for Plaintiffs and the other Class Members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the Defective Cranksets and Class Bicycles at the prices they paid believing that their Defective Cranksets and Class Bicycles would not have a Crankset Defect that would affect the strength, quality, durability, dependability, reliability, and safety of the Class Bicycles and the Defective Cranksets.

351. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the Defective Cranksets and Class Bicycles were material to the decisions of Plaintiffs and the other Class Members to purchase those cranksets and bicycles, as Defendants intended. Plaintiffs and the other Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and their Defective Cranksets were safe and reliable in deciding to purchase the Class Bicycles and Defective Cranksets.

352.  Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendants' deception on their own.

353.  A reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Defective Cranksets or pay a lesser price. Had they known the truth about the Crankset Defect, Plaintiffs and

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

the Class members would not have purchased the Defective Cranksets and/or Class Bicycles, or would have paid significantly less for them.

354.   Defendants could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendants disclosed the Crankset Defect in this manner, Plaintiffs, Class Members and reasonable consumers would have been aware of it.

355.   Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Defective Cranksets to unwary purchasers.

356.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and the other Class Members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above – that first occurred at the time each Defective Crankset and/or Class Bicycle was purchased.

357.   Defendants' violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the Crankset Defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

358.   Plaintiffs and the other Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above. Because Defendants failed to adequately remedy their unlawful conduct, Plaintiffs seeks all damages and relief to which Plaintiffs and the other Class Members are entitled.

359.   Alternatively, Plaintiffs and the other Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendants knew about the Crankset Defect for years. Moreover, although Shimano issued a recall, that recall is inadequate

because, inter alia: (a) it is belated because Defendants knew about the Defective Cranksets, including Defective Cranksets included in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendants' misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and Defective Cranksets.

360.    Defendants' violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

361.    Plaintiffs currently seek injunctive relief, reasonable attorney fees and costs, and any other relief that the Court deems proper, and do not yet seek money damages under this count. In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel provided notice, on behalf of Plaintiffs and the other Class Members, as alleged above.

362.    If Defendants fail to correct or agree to correct their actions, Plaintiff will amend this Complaint to include compensatory and monetary damages to which Plaintiff and other Class Members are entitled.

363.    Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, reasonable attorney fees and costs, and any other relief the Court deems proper.

E.    **COUNT X: FALSE ADVERTISING UNDER THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*)**

(Against Shimano, Specialized, and Trek)

364.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

365.    Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam bring this count under California law, individually and on behalf of the other members of the California Subclass against all Shimano and Trek for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

366.    For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Trek shall be referred to as "Defendants."

367.    Plaintiffs, Class Members and Defendants are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

368.    The California False Advertising Law ("FAL") states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

369.    Defendants, directly and through their agents, employees, and/or subsidiaries, violated the FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the strength, reliability, durability of the Class Bicycles and Defective Cranksets, as detailed above.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Defendants' actionable conduct includes misrepresentations, omissions, concealment, and failure to disclose the known separation, delamination, and failure defect of the Class Bicycles and Defective Cranksets.

370.    The FAL imposes an ongoing duty on Defendants to refrain from unfair and deceptive business practices, which includes disclosing all material facts, such as latent dangerous defects, of the Class Bicycles and Defective Cranksets to consumers because:

a.    Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.    Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.    Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.    Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

2995224.1

f.   Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.   Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.   The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.   Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.   Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.   Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

371. By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendants engaged in untrue and misleading advertising prohibited by Cal. Bus. & Prof. Code § 17500.

372. Defendants made or caused to be made and disseminated throughout California advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiffs and the other Class Members.

373. Defendants' unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were safe, secure, and reliable, and that they did not contain a defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of the Class Bicycles and Defective Cranksets, the quality of the Class Bicycles and Defective Cranksets, and the true value of the Class Bicycles and Defective Cranksets.

374. Defendants intended for Plaintiffs and the other Class Members to rely on their misrepresentations, omissions, and concealment—which they did by

purchasing Class Bicycles and Defective Cranksets at the prices they paid believing that the Class Bicycles and Defective Cranksets would not have a defect that would affect their quality, reliability, and safety.

375.  Defendants' misrepresentations, omissions, and concealment of materials regarding the defect in the Class Bicycles and Defective Cranksets, and true characteristics thereof, were material to the decisions of Plaintiffs and the other Class Members to purchase the Class Bicycles and Defective Cranksets, as Defendants intended. Plaintiffs and the other Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on the Defendants' misrepresentations and omissions that the Class Bicycles and Defective Cranksets were safe, secure, and reliable in deciding to purchase and Class Bicycles and Defective Cranksets.

376.  Absent Defendants' disclosure of material facts, Plaintiffs and the other Class Members cannot discover the defect because it requires complex defective Crankset manufacturing knowledge and access to documents in the exclusive possession of the Defendants.

377.  The fact that the Class Bicycles and Defective Cranksets may separate, delaminate, or fail is a material fact that requires disclosure under the FAL.

378.  Defendants did not disclose the defect to consumers until almost a decade after discovering it, in their recall on September 21, 2023.

379.  Plaintiffs and the other Class Members reasonably relied on Defendants' concealment of misrepresentations, omissions, and concealment of material facts regarding the reliability, durability, and strength of the Class Bicycles and defective Crankset by purchasing them and believing they would be safe to use.

380.  Plaintiffs' and Class Members' reliance on Defendants' misrepresentations, omissions and concealment was reasonable because they did not and could not know of the defect because they do not possess the necessary complex

2995224.1

skill and knowledge required to identify it, and Defendants misrepresented, concealed and failed to disclose material facts that would have made discovery of the defect possible to ordinary consumers.

381.   Had Plaintiffs and the other Class Members known the truth about the defective nature of the Class Bicycles and Defective Cranksets, they would not have purchased them or would have paid significantly paid less for them.

382.   Defendants' violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the defect. The unlawful acts and practices complained of, herein, affect the public interest.

383.   Plaintiffs and the other Class Members will likely continue to be damaged by Defendants' deceptive trade practices because Defendants continue disseminating misleading information on the Class Bicycles and Defective Cranksets' packaging and online retail listings. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

384.   Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members. Plaintiffs have suffered injury in fact as a result of Defendants' unlawful conduct.

385.   Plaintiffs and the other Class Members seek an order enjoining the Defendants' false advertising, any such orders or judgments as may be necessary to restore to Plaintiffs and the other Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

386.   Plaintiffs plead this claim separately, see "Inadequacy of Legal Remedies," *supra*, as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters

judgment on them in favor of the Defendants, Plaintiffs' will have no adequate legal remedy.

**F.**    **COUNT XI: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

(Against Shimano, Specialized, and Trek)

387.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

388.    Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam bring this count under California law, individually and on behalf of the other members of the California Subclass against all Shimano and Trek for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

389.    For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Trek shall be referred to as "Defendants."

390.    California's Unfair Competition Law ("UCL") prohibits "unfair [business] competition," including any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

391.    Defendants committed an unlawful business act or practice in violation of § 17200 by violating the California FAL and CLRA, California Commercial Code, and Song-Beverly Consumer Warranty Act, and other laws alleged herein.

392.    Unfair: Defendant's conduct concerning the labeling, advertising, and sale of the Class Bicycles and Defective Cranksets was "unfair" because Defendants' conduct was immoral, unethical, unscrupulous, or substantially injurious to

consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims. Distributing materially unsafe Class Bicycles and Defective Cranksets has no public utility at all. These acts and practices offend established public policy. Defendants' conduct impaired competition and prevented Plaintiffs and the other Class Members from making fully informed decisions about whether to purchase the Class Bicycles and Defective Cranksets and/or the price to be paid to purchase them.

393.   Any countervailing benefits to consumers or competition did not outweigh this injury. Selling Class Bicycles and Defective Cranksets unsafe and unfit for their intended purposes only injures healthy competition and harms consumers. Defendants also minimized and ignored the scope of the defect for many years despite knowing the Class Bicycles and Defective Cranksets are unreasonably dangerous, made repairs and replacements during the warranty period that caused instances of failure and unbeknownst to consumers did not provide a permanent fix, and knowingly sold defective Class Bicycles and Defective Cranksets in hopes of forcing consumers to purchase replacement bicycles and cranksets.

394.   Defendants' conduct concerning the labeling, advertising, and sale of the Class Bicycles and Defective Cranksets was and is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to the applicable sections of the Consumers Legal Remedies Act and the Song-Beverly Consumer Warranty Act.

395.   Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

396.   As set forth herein, Defendants designed, developed, manufactured, and sold Defective Cranksets and installed them in the Class Bicycles, knowingly and intentionally marketed the Class Bicycles and Defective Cranksets with the defect

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

while misrepresenting the strength, high-quality, safety, dependability, durability and reliability of the Class Bicycles and Defective Cranksets and/or knowingly omitting and failing to disclose material facts that the Class Bicycles and Defective Cranksets suffer from the Crankset Defect (and the costs, risks, and diminished value of the Class Bicycles and Defective Cranksets as a result). Defendants knew that the Class Bicycles and Defective Cranksets were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

397.    Defendants were under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Bicycles and Defective Cranksets because:

a.    Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.    Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.    Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.    Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

e.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.    Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.    Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.    The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.    Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.    Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

k.   Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

398.   Defendants could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendants disclosed the defect in this manner, Plaintiffs, Class Members, and reasonable consumers would have been aware of it.

399.   Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, high quality, reliable, durable, dependable, and properly functioning and that the Class Bicycles and Defective Cranksets did not contain any defects. Those misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and the other Class Members, about the true strength, quality, safety, durability, dependability, and reliability of the Class Bicycles and Defective Cranksets, as well as the quality and true value thereof.

400.   Defendants' misrepresentations, concealments, omissions, and suppressions of material facts were material to Plaintiffs' and Class Members' decisions in that a reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Defective Cranksets or pay a lesser price. Plaintiffs and the other Class Members were exposed to

Defendants' misrepresentations, concealments, omissions, and suppressions of facts, and relied on Defendants' misrepresentations, concealment, omission and non-disclosure that the Class Bicycles and Defective Cranksets were safe and reliable.

401.  Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning of the defect, as alleged above. Plaintiffs and the other Class Members did not, and could not, unravel Defendants' deception on their own.

402.  Had Plaintiffs and the other Class Members known about the defective nature of the Class Bicycles and Defective Cranksets, they would not have purchased them or paid less for them.

403.  Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Defective Cranksets to unwary purchasers.

404.  Plaintiffs and the other Class Members suffered ascertainable loss as a direct and proximate result of Defendants' unlawful, fraudulent, and unfair business acts and practices. Plaintiffs and the other Class Members will likely continue to be damaged, as will the general public, by Defendants' deceptive trade practices because Defendants continue disseminating misleading information on the packaging and in online retail listings regarding the Class Bicycles and Defective Cranksets, and the Class Bicycles and Defective Cranksets remain unsafe due to the defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest. Thus, injunctive relief enjoining Defendants' deceptive practices is proper.

405.  Defendants' conduct caused and continues to cause substantial injury to Plaintiffs and the other Class Members. Plaintiff has suffered injury in fact as a result of Defendants' unlawful conduct.

406.  Under Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore, to Plaintiffs and the other Class Members, any money

acquired by unfair competition, including restitution of all monies from the sale of the Class Bicycles and Defective Cranksets and/or restitutionary disgorgement of all moneys which were unjustly acquired through acts of unlawful competition as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the California UCL.

407. Plaintiffs plead this claim separately, see "Inadequacy of Legal Remedies," *supra*, as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendants, Plaintiffs' will have no adequate legal remedy.

## G.    COUNT XII: FRAUD

(Against Shimano, Specialized, and Trek)

408. Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

409. Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam bring this count under California law, under both the misrepresentation and omission/concealment theories, under California law, individually and on behalf of the California Subclass against Shimano and Trek for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

410. For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Trek shall be referred to as "Defendants."

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

### 1.     Affirmative Misrepresentation

411.   Defendants represented and marketed the Class Bicycles and Defective Cranksets as strong, of high-quality, durable, dependable, and reliable. These representations are understood in the cycling community and consumers to mean that the Class Bicycles and Defective Cranksets are "safe" for ordinary use.

412.   The strength, quality, durability, dependability and reliability of the Defective Cranksets and the Class Bicycles in which the Defective Cranksets were installed were material facts because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members.

413.   Defendants' representations regarding the Defective Cranksets and Class Bicycles' strength, quality, durability, dependability and reliability—all terms that signal "safety" to consumers—were false because the Class Bicycles and Defective Cranksets contain the Crankset Defect that causes the cranksets to break during normal use. In doing so, the presence of the Crankset Defect makes the Defective Cranksets and Class Bicycles unsafe for normal use.

414.   Defendants knew that their representations were false and intended Plaintiffs and the other Class Members to rely on them. —which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

415.  Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and

2995224.1

the other Class Members did not, and could not, unravel Defendants' deception on their own.

416.   Had Plaintiffs and the other Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

417.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

418.   Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### 2.    Omission/Concealment

419.   Defendants are liable for fraud by omission, concealment, and/or non-disclosure. *See*, *e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

420.   Defendants owed Plaintiffs and the other Class Members a duty to disclose all the material facts concerning the Defective Cranksets in the Class Bicycles and Defective Cranksets because:

> a. Given the Defendants' role in the design, manufacture, pre-sale testing, sale, and post-sale monitoring of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.  Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets, including their component parts, design, adhesive properties, tolerances, and other information not known to Plaintiffs or Class Members;

c.  Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.  Given the Crankset Defect's hidden, proprietary, and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.  Defendants knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.  Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

h. The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i. Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j. Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k. Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

421.    In breach of their duties, Defendants failed to disclose the Crankset Defect and that the Class Bicycles and Defective Cranksets were not strong, safety, high-quality, durable, durable or free of defects to Plaintiffs and the other Class Members in connection with the sale of the Class Bicycles and Defective Cranksets.

422.    The Crankset Defect within the Class Bicycles and Defective Cranksets is material to the sale of the of the Class Bicycles and Defective Cranksets because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members.

423.    Defendants intended for Plaintiffs and the other Class Members to rely on their omissions and concealment—which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

424.    Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets s contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendants' deception on their own.

425.    Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Bicycles and Defective Cranksets installed in them, and the Defective Cranksets themselves, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and the other Class Members.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

426.   If Defendants had fully and adequately disclosed the Crankset Defect to consumers, Plaintiffs and the other Class Members would have seen such a disclosure.

427.   Through their omissions and concealment with respect to the Crankset Defect within the Class Bicycles and Defective Cranksets, Defendants intended to induce, and did induce, Plaintiffs and the other Class Members to either purchase a Class Bicycle or a Defective Crankset that they otherwise would not have purchased, or pay more for than they otherwise would have paid for a Class Bicycle or Defective Crankset.

428.   Had Plaintiffs and the other Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

429.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

430.   Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## H.    COUNT XIII: UNJUST ENRICHMENT

(Against Shimano, Specialized, and Trek)

431.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

432.    Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam bring this count under California law, individually and on behalf of the other members of the California Subclass against all Shimano and Trek for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

433.    For purposes of this count, Plaintiffs Delgado, Erazo, Gonyer, Hawkins, Jennings, and Litam shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Trek shall be referred to as "Defendants."

434.    When they purchased the Class Bicycles or Defective Cranksets, Plaintiffs and Class Member conferred a tangible and material economic benefits on Defendants. Defendants readily accepted and retained the benefits.

435.    Plaintiffs and the other Class Members would not have purchased the Defective Cranksets or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Defendants profited from the sale of the Defective Cranksets and Class Bicycles to the detriment and expense of Plaintiffs and the other Class Members.

436.    Defendants knew or should have known that the payments rendered by Plaintiffs and the other Class Members were given with the expectation that the Class Bicycles and Defective Cranksets would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. Defendants appreciated the economic benefits. The benefits were the expected result of Defendants acting in their own pecuniary interest at the expense of Plaintiffs and the other Class Members. Defendants knew of the benefits they were receiving because they were aware of the Crankset Defect in the Class Bicycles and Defective Cranksets, yet they failed to disclose this knowledge and misled Plaintiffs and the other Class Members regarding

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

the nature and quality of the Class Bicycles and Defective Cranksets while profiting from their deception. As such, it would be unjust, inequitable, and unconscionable for Defendants to retain the benefit of the payments under these circumstances.

437.    By their wrongful acts and omissions described herein, including selling the Class Bicycles and Defective Cranksets which contain the Crankset Defect, Defendants were unjustly enriched at the expense of Plaintiffs and the other Class Members.

438.    Plaintiffs' and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

439.    Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the other Class Members. It would be unjust, inequitable and unconscionable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct alleged herein

440.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Class Bicycles and Defective Cranksets, which retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured the Class Bicycles and Defective Cranksets, and Defendants affirmatively misrepresented and omitted and/or concealed the nature of the Class Bicycles and Defective Cranksets, and knowingly marketed and promoted dangerous and Class Bicycles and Defective Cranksets, which injured Plaintiffs and the other Class Members because they would not have purchased the Class Bicycles and Defective Cranksets based on the exact representations if the true facts concerning the Class Bicycles and Defective Cranksets had been known.

441.    Plaintiffs and putative Class Members are entitled to restitution and to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants in the amount necessary to return Plaintiffs and the other Class

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Members to the position they occupied prior to dealing with Defendants, with such amounts to be determined at trial.

442.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

443.   Plaintiffs plead this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendants, Plaintiffs will have no adequate legal remedy.

## CLAIMS ASSERTED ON BEHALF OF FLORIDA STATE SUBCLASS

### A.    COUNT XIV: BREACH OF EXPRESS WARRANTY (FLA. STAT. § 672.313)

(Against Shimano)

444.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

445.   Plaintiffs Bongiovanni, Scorsolini, and Tirado brings this count under Florida law, individually and on behalf of the other members of the Florida Subclass against Shimano for the Defective Cranksets.

446.   For purposes of this count, Plaintiffs Bongiovanni, Scorsolini, and Tirado shall be referred to as "Plaintiffs," and members of the Florida Subclass shall be referred to as "Class Members." For purposes of this count, Shimano shall be referred to as "Defendant."

447.   The Class Bicycles and Defective Cranksets are all "goods" under Fla. Stat. § 672.105(1).

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

448.   Defendants are "merchants" and "sellers" of the Class Bicycles and Defective Cranksets under Fla. Stat. §§ 672.104(1) and 672.103(1)(d), respectively.

449.   Plaintiffs and Class Members who purchased the Class Bicycles and Defective Cranksets in Florida are "buyers" under Fla. Stat. §§ 672.103(1)(a).

450.   Defendant issued an express written warranty for each Defective Crankset they sold (including Defective Cranksets equipped in Class Bicycles), including that:

a.   The Defective Cranksets would be "free of defects in materials and workmanship" at the time of sale;[41] and

b.   The Defective Cranksets were strong, high quality, safe, durable, dependable, and reliable, and their cranksets would function properly during the operation of the bicycles.

451.   The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

452.   Defendant knowingly breached its warranty for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets because:

a.   The Defective Cranksets or Class Bicycles equipped with Defective Cranksets have latent defects which have a dangerous propensity to cause the bonded crank parts to separate and break, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

b.   Defendant denied, concealed, and misrepresented (affirmatively and by omission) the Crankset Defect, in the process of refusing to pay for or provide, in a reasonably timely fashion, the needed repairs and replacements for Plaintiffs and Class Members.

---

[41] Shimano Warranty Policy, https://ride.shimano.com/pages/shimano-warranty-policy, last accessed on December 29, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

453.  Defendant knew or should have known that the warranties were false and/or misleading. Specifically, Defendant was aware of the Crankset Defect, which made the Defective Cranksets or Class Bicycles equipped with Defective Cranksets inherently defective and dangerous at the time that they were sold to Plaintiffs and Class Members.

454.  Plaintiffs and Class Members were exposed to Defendant's misrepresentations and omissions/concealment, and they had no way of discerning that Defendant's representations and omissions/concealment were false and misleading or otherwise learning the material facts that Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on Defendant's express warranties when purchasing the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

455.  Plaintiffs and Class Members timely provided the Defendant notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendant's notice, above.

456.  Alternatively, Plaintiffs and Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendant knew about the Crankset Defect for years. Moreover, although Defendant issued a recall, that recall is inadequate because, inter alia: (a) it is belated because Defendant knew about the Defective Cranksets, including Defective Cranksets included in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendant's misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

incomplete, and apply to only a subset of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

457.   Privity of contract is not required here because Plaintiffs and Class Members were each intended third-party beneficiaries of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets and have no rights under the warranty provided with the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

458.   Alternatively, privity of contract is satisfied because Plaintiffs and Class Members purchased the Defective Cranksets or Class Bicycles equipped with Defective Cranksets from retailers who were the exclusive retail sellers of Defendant's products and/or acted as agents of the Defendants.

459.   Plaintiffs and Class Members did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable.

460.   As a direct and proximate result of Defendant's breach of their express warranties, the Defective Cranksets or Class Bicycles equipped with Defective Cranksets were and are defective and the Crankset Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets with an undisclosed safety defect that would not be remedied.

## B. <u>COUNT XV: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (FLA. STAT. § 672.314)</u>

(Against Shimano, Trek, and Giant)

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

461.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

462.    Plaintiffs Bongiovanni, Scorsolini, and Tirado brings this count under Florida law, individually and on behalf of the other members of the Florida Subclass against Shimano and Giant for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

463.    For purposes of this count, Plaintiffs Bongiovanni, Scorsolini, and Tirado be referred to as "Plaintiffs," and members of the Florida Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Giant shall be referred to as "Defendants."

464.    The Defective Cranksets and the Class Bicycles are "goods" under Fla. Stat. §672.105(1).

465.    Defendants are "merchants" and "sellers" of the Defective Cranksets and Class Bicycles under Fla. Stat. Code §§ 672.104(1), and 672.103(1)(d), respectively.

466.    Plaintiffs and Class Members who purchased the Defective Cranksets and Class Bicycles in Florida are "buyers" under Fla. Stat. § 672.103(1)(a).

467.    Florida law conferred an implied warranty that the Defective Cranksets and Class Bicycles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Fla. Stat. § 672.314.

468.    The Defective Cranksets and Class Bicycles are not merchantable and, as such, Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Bicycles and Defective Cranksets suffer from a safety defect that renders them unsafe to ride and/or operate;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

b.     The Defective Cranksets and the Class Bicycles would not pass without objection in the bicycle trade given the Crankset Defect;

c.     The Crankset Defect renders the Defective Cranksets and Class Bicycles unsafe to ride and unfit for ordinary purposes; and

d.     The Crankset Defect affects the central functionality of the Class Bicycles and Defective Cranksets.

469.   Due to the Crankset Defect, Plaintiffs and Class Members cannot operate their Class Bicycles and Defective Cranksets as intended, substantially free from defects. The Class Bicycles and Defective Cranksets do not provide a safe and reliable way to propel a bicycle forward and pose a serious risk of injury, including crashing, bone fracture, laceration, and death. As a result, Plaintiffs and Class Members cannot use their Class Bicycles and Defective Cranksets for the purposes for which they purchased them.

470.   Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

471.   Alternatively, Plaintiffs and Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendants knew about the Crankset Defect for years. Moreover, although Defendants issued a recall, that recall is inadequate because, *inter alia*: (a) it is belated because Defendants knew about the Defective Cranksets, including the Defective Cranksets installed in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendants' misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

1  effectively due to supply constraints and resulting delays; and (c) the recalls are

2  incomplete, and apply to only a subset of the Class Bicycles and Defective Cranksets.

3      472.   Plaintiffs and Class Members have had sufficient direct dealings with

4  Defendants or their agents (retailers) to establish privity of contract between

5  Plaintiffs and Class Members. Notwithstanding this, privity is not required in this

6  case because Plaintiffs and Class Members are intended third-party beneficiaries of

7  contracts between Defendants and their agents; specifically, they are the intended

8  beneficiaries of Defendants' implied warranties. The retailers were not intended to

9  be the ultimate consumers of the Class Bicycles or Defective Cranksets and have no

10  rights under the warranty agreements provided with the Class Bicycles; the warranty

11  agreements were designed for and intended to benefit the ultimate consumers only.

12  Finally, privity is also not required because Plaintiffs' and Class Members' Class

13  Bicycles and Defective Cranksets are dangerous instrumentalities due to the

14  aforementioned defects and nonconformities.

15      473.   Plaintiffs, individually and on behalf Class Members, seeks all

16  available monetary damages (including actual, compensatory, and punitive

17  damages), injunctive and equitable relief, and attorneys' fees and costs.

18  **C.    COUNT XVI: VIOLATIONS OF THE FLORIDA DECEPTIVE &**

19  **UNFAIR TRADE PRACTICES ACT (FLA. STAT. §§ 501.201, *ET SEQ.*)**

20      (Against Shimano, Trek, Giant)

21      474.   Plaintiffs reallege and incorporate by reference each of the allegations in

22  Paragraphs 1-158, above, as though fully set forth herein.

23      475.   Plaintiffs Bongiovanni, Scorsolini, and Tirado brings this count under

24  Florida law, individually and on behalf of the other members of the Florida Subclass

25  against Shimano and Giant for their respective Class Bicycles and Defective

26  Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class

27

28

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

476.   For purposes of this count, Plaintiffs Bongiovanni, Scorsolini, and Tirado shall be referred to as "Plaintiffs," and members of the Florida Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Giant shall be referred to as "Defendants."

477.   Plaintiffs and Class Members are "consumers" under Fla. Stat. §501.203(7) because they purchased the Defective Cranksets and/or Class Bicycles primarily for personal, family, or household use.

478.   Defendants were and are engaged in "trade or commerce" under the meaning of Fla. Stat. § 501.203(8).

479.   The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

480.   Defendants' violations of the Florida UDTPA occurred repeatedly in their trade or practice – including the design, manufacture, distribution, marketing, and sale of the Defective Cranksets and the Class Bicycles.

481.   Defendants, through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and the Defective Cranksets, as detailed above.

482.   As set forth herein, Defendants engaged in deceptive acts by knowingly misrepresenting and concealing or omitting from Plaintiffs and Class Members that the Class Bicycles and Defective Cranksets suffer from the Crankset Defect (and the costs, risks, and diminished value of the Class Bicycles and Defective Cranksets as a

2995224.1

result). Defendants knew that the Class Bicycles and Defective Cranksets were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

483. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

a. Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b. Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c. Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d. Given the Crankset Defect's hidden and technical nature, Plaintiffs and Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
2995224.1

e.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.    Defendants knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.    Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.    The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.    Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.    Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

148
**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

k.     Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

484.    By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

485.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, dependable, durable and reliable, and had properly-functioning cranksets that would properly function and be reliable. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety, strength, dependability, durability, and reliability of the Class Bicycles and Defective Cranksets

486.    Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the Defective Cranksets and Class Bicycles at the prices they paid believing that their

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Defective Cranksets and Class Bicycles would not have a Crankset Defect that would affect the strength, quality, durability, dependability, reliability, and safety of the Class Bicycles and the Defective Cranksets.

487. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the Defective Cranksets and Class Bicycles were material to the decisions of Plaintiffs and Class Members to purchase those cranksets and bicycles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and their Defective Cranksets were safe and reliable in deciding to purchase the Class Bicycles and Defective Cranksets.

488. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

489. A reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Defective Cranksets or pay a lesser price. Had they known the truth about the Crankset Defect, Plaintiffs and the Class members would not have purchased the Defective Cranksets and/or Class Bicycles, or would have paid significantly less for them.

490. Defendants could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendants disclosed the Crankset Defect in this manner, Plaintiffs, Class Members and reasonable consumers would have been aware of it.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

491.   Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Defective Cranksets to unwary purchasers.

492.   As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above – that first occurred at the time each Defective Crankset and/or Class Bicycle was purchased.

493.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the Crankset Defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

494.   Pursuant to Fla. Stat. § 501.211, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Florida UDTPA against all Defendants.

## D.   COUNT XVII: FRAUD

(Against Shimano, Trek, and Giant)

495.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

496.   Plaintiffs Bongiovanni, Scorsolini, and Tirado brings this count under Florida law, under both the misrepresentation and omission/concealment theories, under Florida law, individually and on behalf of the Florida Subclass against Shimano and Giant for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

497.    For purposes of this count, Plaintiffs Bongiovanni, Scorsolini, and Tirado shall be referred to as "Plaintiffs," and members of the Florida Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Giant shall be referred to as "Defendants."

### 1.    Affirmative Misrepresentation

498.    Defendants represented and marketed the Class Bicycles and Defective Cranksets as strong, of high-quality, durable, dependable, and reliable. These representations are understood by consumers to mean that the Class Bicycles and Defective Cranksets are "safe" for ordinary use.

499.    The strength, quality, durability, dependability and reliability of the Defective Cranksets and the Class Bicycles in which the Defective Cranksets were installed were material facts because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and Class Members.

500.    Defendants' representations regarding the Defective Cranksets and Class Bicycles' strength, quality, durability, dependability and reliability—all terms that signal "safety" in the cycling community—were false because the Class Bicycles and Defective Cranksets contain the Crankset Defect that causes the cranksets to break during normal use. In doing so, the presence of the Crankset Defect makes the Defective Cranksets and Class Bicycles unsafe for normal use.

501.    Defendants knew that their representations were false and intended Plaintiffs and Class Members to rely on them. —which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

502.   Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

503.   Had Plaintiffs and Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

504.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

505.   Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**2.    Omission/Concealment**

506.   Defendants are liable for fraud by omission, concealment, and/or non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

507.   Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Cranksets in the Class Bicycles and Defective Cranksets because:

a.     Given the Defendants' role in the design, manufacture, pre-sale testing, sale, and post-sale monitoring of the Class Bicycles and Defective

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.  Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets, including their component parts, design, adhesive properties, and other information not known to Plaintiffs or Class Members;

c.  Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.  Given the Crankset Defect's hidden, proprietary, and technical nature, Plaintiffs and Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.  Defendants knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

g.   Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.   The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.   Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.   Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.   Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered

155

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

for sale to consumers, Defendants had the duty to disclose the whole truth.

508. In breach of their duties, Defendants failed to disclose the Crankset Defect and that the Class Bicycles and Defective Cranksets were not strong, safety, high-quality, durable, or free of defects to Plaintiffs and Class Members in connection with the sale of the Class Bicycles and Defective Cranksets.

509. The Crankset Defect within the Class Bicycles and Defective Cranksets is material to the sale of the of the Class Bicycles and Defective Cranksets because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and Class Members.

510. Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

511. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

512. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Bicycles and Defective Cranksets installed in them, and the Defective Cranksets themselves, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

513.   If Defendants had fully and adequately disclosed the Crankset Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

514.   Through their omissions and concealment with respect to the Crankset Defect within the Class Bicycles and Defective Cranksets, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Bicycle or a Defective Crankset that they otherwise would not have purchased, or pay more for than they otherwise would have paid for a Class Bicycle or Defective Crankset.

515.   Had Plaintiffs and Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

516.   As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

517.   Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

E.   **COUNT XVIII: UNJUST ENRICHMENT**

(Against Shimano, Trek, and Giant)

518.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

519.   Plaintiffs Bongiovanni, Scorsolini, and Tirado brings this count under Florida law, individually and on behalf of the other members of the Florida Subclass against Shimano and Giant for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

520.   For purposes of this count, Plaintiffs Bongiovanni, Scorsolini, and Tirado shall be referred to as "Plaintiffs," and members of the Florida Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Giant shall be referred to as "Defendants."

521.   When they purchased the Class Bicycles or Defective Cranksets, Plaintiffs and Class Member conferred a tangible and material economic benefits on Defendants. Defendants readily accepted and retained the benefits.

522.   Plaintiffs and Class Members would not have purchased the Defective Cranksets or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Defendants profited from the sale of the Defective Cranksets and Class Bicycles to the detriment and expense of Plaintiffs and Class Members.

523.   Defendants knew or should have known that the payments rendered by Plaintiffs and Class Members were given with the expectation that the Class Bicycles and Defective Cranksets would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. Defendants appreciated the economic benefits. The benefits were the expected result of Defendants acting in their own pecuniary interest at the expense of Plaintiffs and Class members. Defendants knew of the benefits they were receiving because they were aware of the Crankset Defect in the Class Bicycles and Defective Cranksets, yet they failed to disclose this knowledge and misled Plaintiffs and Class Members regarding the nature and quality

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

of the Class Bicycles and Defective Cranksets while profiting from their deception. As such, it would be unjust, inequitable, and unconscionable for Defendants to retain the benefit of the payments under these circumstances.

524.   By their wrongful acts and omissions described herein, including selling the Class Bicycles and Defective Cranksets which contain the Crankset Defect, Defendants were unjustly enriched at the expense of Plaintiffs and Class Members.

525.   Plaintiffs' and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

526.   Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and Class Members. It would be unjust, inequitable and unconscionable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct alleged herein.

527.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Class Bicycles and Defective Cranksets, which retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured the Class Bicycles and Defective Cranksets, and Defendants affirmatively misrepresented and omitted and/or concealed the nature of the Class Bicycles and Defective Cranksets, and knowingly marketed and promoted dangerous and Class Bicycles and Defective Cranksets, which injured Plaintiffs and Class Members because they would not have purchased the Class Bicycles and Defective Cranksets based on the exact representations if the true facts concerning the Class Bicycles and Defective Cranksets had been known.

528.   Plaintiffs and putative Class Members are entitled to restitution and to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants in the amount necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with Defendants, with such amounts to be determined at trial.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

529.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

530.   Plaintiffs plead this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendants, Plaintiff will have no adequate legal remedy.

## CLAIMS ASSERTED ON BEHALF OF ILLINOIS STATE SUBCLASS

**A.    COUNT XIX: BREACH OF EXPRESS WARRANTY (810 ILL. COMP. STAT. 5/2-313)**

(Against Shimano)

531.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

532.   Plaintiffs Lewis and Semizarov bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclass against Shimano for the Defective Cranksets.

533.   For purposes of this count, Plaintiffs Lewis and Semizarov shall be referred to as "Plaintiffs," and members of the Illinois Subclass shall be referred to as "Class Members." For purposes of this count, Shimano shall be referred to as "Defendant."

534.   Shimano is and was at all relevant times a "merchant" with respect to the Defective Cranksets under 810 Ill. Comp. Stat. 5/2-104(1), and a "seller" of the Defective Cranksets under 5/2-103(1)(d).

535.   All Class Members who purchased Defective Cranksets and Class Bicycles in Illinois are "buyers" within the meaning of 810 Ill. Comp. Stat. 5/2-103(1)(a).

536.   The Defective Cranksets and Class Bicycles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. 5/2-105(1).

537.   Defendant issued an express written warranty for each Defective Crankset they sold (including Defective Cranksets equipped in Class Bicycles), including that:

    a.    The Defective Cranksets would be "free of defects in materials and workmanship" at the time of sale;[42] and

    b.    The Defective Cranksets were strong, high quality, safe, durable, dependable, and reliable, and their cranksets would function properly during the operation of the bicycles.

538.   The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and Class Members' purchase of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

539.   Defendant knowingly breached its warranty for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets because:

    a.    The Defective Cranksets or Class Bicycles equipped with Defective Cranksets have latent defects which have a dangerous propensity to cause the bonded crank parts to separate and break, subjecting Plaintiffs and Class Members to the risk of loss and injury; and

    b.    Defendant denied, concealed, and misrepresented (affirmatively and by omission) the Crankset Defect, in the process of refusing to pay for or

---

[42] Shimano Warranty Policy, https://ride.shimano.com/pages/shimano-warranty-policy, last accessed on December 29, 2023.

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

provide, in a reasonably timely fashion, the needed repairs and replacements for Plaintiffs and Class Members.

540.    Defendant knew or should have known that the warranties were false and/or misleading. Specifically, Defendant was aware of the Crankset Defect, which made the Defective Cranksets or Class Bicycles equipped with Defective Cranksets inherently defective and dangerous at the time that they were sold to Plaintiffs and Class Members.

541.    Plaintiffs and Class Members were exposed to Defendant's misrepresentations and omissions/concealment, and they had no way of discerning that Defendant's representations and omissions/concealment were false and misleading or otherwise learning the material facts that Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and Class Members reasonably relied on Defendant's express warranties when purchasing the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

542.    Plaintiffs and Class Members timely provided the Defendant notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendant's notice, above.

543.    Alternatively, Plaintiffs and Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendant knew about the Crankset Defect for years. Moreover, although Defendant issued a recall, that recall is inadequate because, inter alia: (a) it is belated because Defendant knew about the Defective Cranksets, including Defective Cranksets included in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendant's misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented

effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

544.    Privity of contract is not required here because Plaintiffs and Class Members were each intended third-party beneficiaries of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets and have no rights under the warranty provided with the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

545.    Alternatively, privity of contract is satisfied because Plaintiffs and Class Members purchased the Defective Cranksets or Class Bicycles equipped with Defective Cranksets from retailers who were the exclusive retail sellers of Defendant's products and/or acted as agents of the Defendants.

546.    Plaintiffs and Class Members did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable.

547.    As a direct and proximate result of Defendant's breach of their express warranties, the Defective Cranksets or Class Bicycles equipped with Defective Cranksets were and are defective and the Crankset Defect was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets with an undisclosed safety defect that would not be remedied.

SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

2995224.1

**B.    COUNT XX: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (801 ILL. COMP. STAT. 5/2-314)**

(Against Shimano, Specialized, and Giant)

548.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

549.    Plaintiffs Lewis and Semizarov bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclass against Shimano and Specialized for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

550.    For purposes of this count, Plaintiffs Lewis and Semizarov shall be referred to as "Plaintiffs," and members of the Illinois Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Specialized shall be referred to as "Defendants."

551.    A warranty that the Defective Cranksets and Class Bicycles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 Ill. Comp. Stat. 5/2-314.

552.    Defendants are and were at all relevant times "merchants" with respect to bicycles under 810 Ill. Comp. Stat. 5/2-104(1), and a "seller" of bicycles under 5/2-103(1)(d).

553.    All Class Members who purchased Defective Cranksets and/or Class Bicycles in Illinois are "buyers" within the meaning of 810 Ill. Comp. Stat. 5/2-103(1)(a).

554.    The Class Bicycles and Defective Cranksets are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. 5/2-105(1).

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

555.    The Defective Cranksets and Class Bicycles are not merchantable and, as such, Defendants breached their implied warranties, because at the time of sale and all times thereafter:

a.    The Class Bicycles and Defective Cranksets suffer from a safety defect that renders them unsafe to ride and/or operate;

b.    The Defective Cranksets and the Class Bicycles would not pass without objection in the bicycle trade given the Crankset Defect;

c.    The Crankset Defect renders the Defective Cranksets and Class Bicycles unsafe to ride and unfit for ordinary purposes; and

d.    The Crankset Defect affects the central functionality of the Class Bicycles and Defective Cranksets.

556.    Due to the Crankset Defect, Plaintiffs and Class Members cannot operate their Class Bicycles and Defective Cranksets as intended, substantially free from defects. The Class Bicycles and Defective Cranksets do not provide a safe and reliable way to propel a bicycle forward and pose a serious risk of injury, including crashing, bone fracture, laceration, and death. As a result, Plaintiffs and Class Members cannot use their Class Bicycles and Defective Cranksets for the purposes for which they purchased them.

557.    Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above.

558.    Alternatively, Plaintiffs and Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendants knew about the Crankset Defect for years. Moreover, although Shimano issued a recall, that recall is inadequate because, inter alia: (a) it is belated because Defendants knew about the Defective Cranksets, including the Defective Cranksets installed in Class Bicycles, for years and

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendants' misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and Defective Cranksets.

559.  Plaintiffs and Class Members have had sufficient direct dealings with Defendants or their agents (retailers) to establish privity of contract between Plaintiffs and Class Members. As alleged in the preceding paragraphs, Defendant Shimano made several statements about the strength and durability of its products (and thus, the safety of its products), including the Defective Crankset, such that Plaintiffs were induced to rely on Shimano's assurances in making their purchases.  Notwithstanding this, privity is not required in this case because Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Defendants and their agents; specifically, they are the intended beneficiaries of Defendants' implied warranties. The retailers were not intended to be the ultimate consumers of the Class Bicycles or Defective Cranksets and have no rights under the warranty agreements provided with the Class Bicycles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and Class Members' Class Bicycles and Defective Cranksets are dangerous instrumentalities due to the aforementioned defects and nonconformities.

560.  Plaintiffs, individually and on behalf Class Members, seeks all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

**C.      COUNT XXI: VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILL COMP. STAT. 505/1, *ET SEQ.*)**

(Against Shimano, Specialized, and Giant)

561.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

562.    Plaintiffs Lewis and Semizarov bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclass against Shimano and Specialized for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

563.    For purposes of this count, Plaintiffs Lewis and Semizarov shall be referred to as "Plaintiffs," and members of the Illinois Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Specialized shall be referred to as "Defendants."

564.    Defendants, Plaintiffs, and Class Members are "persons" within the meaning of 815 Ill. Comp. Stat. 505/1(c).

565.    Plaintiffs and Class Members are "consumers" within the meaning of 815 Ill. Comp. Stat. 505/1I.

566.    The Defective Cranksets and Class Bicycles are "merchandise" within the meaning of 815 Ill. Comp. Stat. 505/1(b).

567.    Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 Ill. Comp. Stat. 505/1(f).

568.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices." 815 Ill. Comp. Stat. 505/2.

569.   Defendants' violations of the Illinois CFA occurred repeatedly in their trade or practice – including the design, manufacture, distribution, marketing, and sale of the Defective Cranksets and the Class Bicycles.

570.   Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and the Defective Cranksets, as detailed above.

571.   As set forth herein, Defendants engaged in deceptive acts by knowingly misrepresenting and concealing or omitting from Plaintiffs and Class Members that the Class Bicycles and Defective Cranksets suffer from the Crankset Defect (and the costs, risks, and diminished value of the Class Bicycles and Defective Cranksets as a result). Defendants knew that the Class Bicycles and Defective Cranksets were defectively designed, posed an unreasonable safety risk, and unsuitable for their intended use.

572.   Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

a.   Given the Defendants' role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.   Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle

Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.      Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.      Given the Crankset Defect's hidden and technical nature, Plaintiffs and Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.      Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.      Defendants knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.      Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.      The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.      Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth

169

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.      Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.      Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

573.    By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by 815 ILCS 505/2, including the use or employment of deception and fraud, and/or the concealment, suppression or omission of material facts, and engaging in conduct which creates a likelihood of confusion or misunderstanding.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

574. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, dependable, durable and reliable, and had properly-functioning cranksets that would properly function and be reliable. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety, strength, dependability, durability, and reliability of the Class Bicycles and Defective Cranksets

575. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the Defective Cranksets and Class Bicycles at the prices they paid believing that their Defective Cranksets and Class Bicycles would not have a Crankset Defect that would affect the strength, quality, durability, dependability, reliability, and safety of the Class Bicycles and the Defective Cranksets.

576. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the Defective Cranksets and Class Bicycles were material to the decisions of Plaintiffs and Class Members to purchase those cranksets and bicycles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and their Defective Cranksets were safe and reliable in deciding to purchase the Class Bicycles and Defective Cranksets.

577. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

578.    A reasonable consumer would have considered them important in deciding whether to purchase Defendants' Class Bicycles and Defective Cranksets or pay a lesser price. Had they known the truth about the Crankset Defect, Plaintiffs and the Class members would not have purchased the Defective Cranksets and/or Class Bicycles, or would have paid significantly less for them.

579.    Defendants could have and should have prominently disclosed the defect on the product listings on its website, on product packaging, and to third-party retailers. Had Defendants disclosed the Crankset Defect in this manner, Plaintiffs, Class Members and reasonable consumers would have been aware of it.

580.    Defendants profited from selling the falsely, deceptively, and unlawfully advertised Class Bicycles and Defective Cranksets to unwary purchasers.

581.    As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above – that first occurred at the time each Defective Crankset and/or Class Bicycle was purchased.

582.    Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the Crankset Defect therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

583.    Plaintiffs and Class Members timely provided Defendants notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendants' notice, above. Because Defendants failed

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

to adequately remedy their unlawful conduct, Plaintiffs seeks all damages and relief to which Plaintiffs and Class Members are entitled.

584.    Alternatively, Plaintiffs and Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendants knew about the Crankset Defect for years. Moreover, although Shimano issued a recall, that recall is inadequate because, *inter alia*: (a) it is belated because Defendants knew about the Defective Cranksets, including Defective Cranksets included in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendants' misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and Defective Cranksets.

585.    Pursuant to 815 Ill. Comp. Stat. 505/10a, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the Illinois CFA.

**D.    <u>COUNT XXII: VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILL. COMP. STAT. 510/1, *ET SEQ*.)</u>**

(Against Shimano, Specialized, and Giant)

586.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

587.    Plaintiffs Lewis and Semizarov bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclass against Shimano and Specialized for their respective Class Bicycles and Defective Cranksets.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

588. For purposes of this count, Plaintiffs Lewis and Semizarov shall be referred to as "Plaintiffs," and members of the Illinois Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Specialized shall be referred to as "Defendants."

589. The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

590. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the strength, quality, durability, dependability, reliability, and safety of the Class Bicycles and Defective Cranksets, as detailed above.

591. By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

a. Representing that the Class Bicycle and Defective Cranksets had characteristics that they did not actually have—i.e., that Class Bicycles and Defective Cranksets were safe, strong, of high-quality, durable, dependable, reliable, properly-functioning, free from defects and suitable for normal use, when, in fact, they were not because the Defective Cranksets were defectively designed such that they had an

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

unreasonably dangerous propensity to break, causing accidents and injuries;

b.     Representing that the Class Bicycle and Defective Cranksets were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard;

c.     Advertising the Class Bicycle and Defective Cranksets with the intent not to sell them as advertised, i.e., that the Class Bicycles and Defective Cranksets were safe and suitable for their intended use, when, in fact, they were not because of the Crankset Defect; and

d.     Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(5), (7), (9), and (12)

592. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, high-quality, reliable, durable, dependable, free of defects had properly-functioning cranksets. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true strength, safety, quality, reliability, durability and dependability of the Class Bicycles and the Defective Cranksets, and the true value of the Class Bicycles and Defective Cranksets.

593. Defendants intended for Plaintiffs and Class Members to rely on their misrepresentations, omissions, and concealment—which they did by purchasing the Class Bicycles at the prices they paid believing that their bicycles would not have a Crankset Defect that would affect the strength, safety, quality, reliability, durability, and dependability of the Class Bicycles and Defective Cranksets.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

594. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the Class Bicycles and Defective Cranksets were material to the decisions of Plaintiffs and Class Members to purchase the Class Bicycles and Defective Cranksets, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Bicycles and Defective Cranksets were strong, safe, high-quality, reliable, durable, and dependable in deciding to purchase the Class Bicycles and Defective Cranksets.

595. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed, omitted or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

596. Had they known the truth about the Crankset Defect, Plaintiffs and Class Members would not have purchased the Class Bicycles or Defective Cranksets, or would have paid significantly less for them.

597. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs and Class Members have sustained economic injury and loss—either by purchasing a Class Bicycle or Crankset they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendants' actions and omissions alleged above—that first occurred at the time each Class Bicycle or Crankset was purchased.

598. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the Defective Cranksets therein. Defendants' unlawful acts and practices complained of herein affect the public interest.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

599.    Pursuant to 815 ILCS 510/3, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to them any money acquired by their unfair or deceptive acts or practices, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the Illinois UDTPA.

600.    Plaintiffs pleads this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

## E.    <u>COUNT XXIII: FRAUD</u>

(Against Shimano, Specialized, and Giant)

601.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

602.    Plaintiffs Lewis and Semizarov bring this count under Illinois law, under both the misrepresentation and omission/concealment theories, under Illinois law, individually and on behalf of the Illinois Subclass against Shimano and Giant for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

603.    For purposes of this count, Plaintiffs Lewis and Semizarov shall be referred to as "Plaintiffs," and members of the Illinois Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Giant shall be referred to as "Defendants."

### 1.    Affirmative Misrepresentation

604.    Defendants represented and marketed the Class Bicycles and Defective Cranksets as strong, of high-quality, durable, dependable, and reliable. These representations are understood by consumers to mean that the Class Bicycles and Defective Cranksets are "safe" for ordinary use.

605.    The strength, quality, durability, dependability and reliability of the Defective Cranksets and the Class Bicycles in which the Defective Cranksets were installed were material facts because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and Class Members.

606.    Defendants' representations regarding the Defective Cranksets and Class Bicycles' strength, quality, durability, dependability and reliability—, all terms that signal "safety" to consumers—were false because the Class Bicycles and Defective Cranksets contain the Crankset Defect that causes the cranksets to break during normal use. In doing so, the presence of the Crankset Defect makes the Defective Cranksets and Class Bicycles unsafe for normal use.

607.    Defendants knew that their representations were false and intended Plaintiffs and Class Members to rely on them, which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

608.    Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

609.    Had Plaintiffs and Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

610.    As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

611.    Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**2.    Omission/Concealment**

612.    Defendants are liable for fraud by omission, concealment, and/or non-disclosure. See, e.g., Restatement (Second) of Torts §§ 550-51 (1977).

613.    Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Defective Cranksets in the Class Bicycles and Defective Cranksets because:

a.    Given the Defendants' role in the design, manufacture, pre-sale testing, sale, and post-sale monitoring of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.   Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets, including their component parts, design, adhesive properties, and other information not known to Plaintiffs or Class Members;

c.   Defendants knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.   Given the Crankset Defect's hidden, proprietary, and technical nature, Plaintiffs and Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.   Defendants knew that Plaintiffs and Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.   Defendants knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.   The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.    Defendants knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.    Defendants actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.    Defendants made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendants had the duty to disclose the whole truth.

l.    In breach of their duties, Defendants failed to disclose the Crankset Defect and that the Class Bicycles and Defective Cranksets were not strong, safety, high-quality, durable, durable or free of defects to

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Plaintiffs and Class Members in connection with the sale of the Class Bicycles and Defective Cranksets.

614.  The Crankset Defect within the Class Bicycles and Defective Cranksets is material to the sale of the of the Class Bicycles and Defective Cranksets because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and Class Members.

615.  Defendants intended for Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

616.  Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

617.  Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Bicycles and Defective Cranksets installed in them, and the Defective Cranksets themselves, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

618.  If Defendants had fully and adequately disclosed the Crankset Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

619.  Through their omissions and concealment with respect to the Crankset Defect within the Class Bicycles and Defective Cranksets, Defendants intended to

182

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

induce, and did induce, Plaintiffs and Class Members to either purchase a Class Bicycle or a Defective Crankset that they otherwise would not have purchased, or pay more for than they otherwise would have paid for a Class Bicycle or Defective Crankset.

620.    Had Plaintiffs and Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

621.    As a direct and proximate result of Defendants' omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

622.    Defendants acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## F.    **COUNT XXIV: UNJUST ENRICHMENT**

(Against Shimano, Specialized, and Giant)

623.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

624.    Plaintiffs Lewis and Semizarov bring this count under Illinois law, individually and on behalf of the other members of the Illinois Subclass against Shimano and Specialized for their respective Class Bicycles and Defective Cranksets. For the remaining Defendants, Plaintiffs who purchased their Class Bicycles or

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Defective Cranksets in states with materially similar laws may represent Subclasses under this count against all other Defendants.

625. For purposes of this count, Plaintiffs Lewis and Semizarov shall be referred to as "Plaintiffs," and members of the Illinois Subclass shall be referred to as "Class Members." For purposes of this count, Shimano and Specialized shall be referred to as "Defendants."

626. When they purchased the Class Bicycles or Defective Cranksets, Plaintiffs and Class Member conferred a tangible and material economic benefits on Defendants. Defendants readily accepted and retained the benefits.

627. Plaintiffs and Class Members would not have purchased the Defective Cranksets or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Defendants profited from the sale of the Defective Cranksets and Class Bicycles to the detriment and expense of Plaintiffs and Class Members.

628. Defendants knew or should have known that the payments rendered by Plaintiffs and Class Members were given with the expectation that the Class Bicycles and Defective Cranksets would have the qualities, characteristics, and suitability for use represented and warranted by Defendants. Defendants appreciated the economic benefits. The benefits were the expected result of Defendants acting in their own pecuniary interest at the expense of Plaintiffs and Class members. Defendants knew of the benefits they were receiving because they were aware of the Crankset Defect in the Class Bicycles and Defective Cranksets, yet they failed to disclose this knowledge and misled Plaintiffs and Class Members regarding the nature and quality of the Class Bicycles and Defective Cranksets while profiting from their deception. As such, it would be unjust, inequitable and unconscionable for Defendants to retain the benefit of the payments under these circumstances.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

629.   By their wrongful acts and omissions described herein, including selling the Class Bicycles and Defective Cranksets which contain the Crankset Defect, Defendants were unjustly enriched at the expense of Plaintiffs and Class Members.

630.   Plaintiffs' and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

631.   Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and Class Members. It would be unjust, inequitable and unconscionable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct alleged herein

632.   Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Class Bicycles and Defective Cranksets, which retention of such revenues under these circumstances is unjust and inequitable because Defendants manufactured the Class Bicycles and Defective Cranksets, and Defendants affirmatively misrepresented and omitted and/or concealed the nature of the Class Bicycles and Defective Cranksets, and knowingly marketed and promoted dangerous and Class Bicycles and Defective Cranksets, which injured Plaintiffs and Class Members because they would not have purchased the Class Bicycles and Defective Cranksets based on the exact representations if the true facts concerning the Class Bicycles and Defective Cranksets had been known.

633.   Plaintiffs and putative Class Members are entitled to restitution and to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants in the amount necessary to return Plaintiffs sand Class Members to the position they occupied prior to dealing with Defendants, with such amounts to be determined at trial.

634.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits,

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

and other compensation obtained by Defendants for their inequitable and unlawful conduct.

635.   Plaintiffs plead this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendants, Plaintiff will have no adequate legal remedy.

## CLAIMS ASSERTED ON BEHALF OF NEW YORK STATE SUBCLASS

### A. COUNT XXV: BREACH OF EXPRESS WARRANTY (N.Y. U.C.C. §§ 2-313)

(Against Shimano)

636.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

637.   Plaintiffs Adelman and Kouyate bring this count under New York law, individually and on behalf of the other members of the New York Subclass against Shimano for the Defective Cranksets.

638.   For purposes of this count Plaintiffs Adelman and Kouyate shall be referred to as "Plaintiffs," and members of the New York Subclass shall be referred to as "Class Members." For purposes of this count, Shimano shall be referred to as "Defendant."

639.   Plaintiffs' Class Bicycles and Defective Cranksets are "goods" under N.Y. U.C.C. §§ 2-105(1).

640.   Plaintiffs and Class Members who purchased the Defective Cranksets in New York are "buyers" under N.Y. U.C.C. § 2-103(1)(a).

641.   Shimano is a "merchant" and "seller" of the Defective Cranksets under N.Y. U.C.C. § 2-104(1), and § 2-103(1)(d), respectively.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

642. Defendant issued an express written warranty for each Defective Crankset they sold (including Defective Cranksets equipped in Class Bicycles), including that:

a.   The Defective Cranksets would be "free from a defect in material and workmanship" at the time of sale; and[43]

b.   The Defective Cranksets were strong, high quality, safe, durable, dependable, and reliable, and their cranksets would function properly during the operation of the bicycles.

643. The warranties listed above formed the basis of the bargain with regard to Plaintiffs' and other Class Members' purchase of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

644. Defendant knowingly breached its warranty for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets because:

a.   The Defective Cranksets or Class Bicycles equipped with Defective Cranksets have latent defects which have a dangerous propensity to cause the bonded crank parts to separate and break, subjecting Plaintiffs and the other Class Members to the risk of loss and injury; and

b.   Defendant denied, concealed, and misrepresented (affirmatively and by omission) the Crankset Defect, in the process of refusing to pay for or provide, in a reasonably timely fashion, the needed repairs and replacements for Plaintiffs and the other Class Members.

645. Defendant knew or should have known that the warranties were false and/or misleading. Specifically, Defendant was aware of the Crankset Defect, which made the Defective Cranksets or Class Bicycles equipped with Defective Cranksets

---

[43] Shimano Warranty Policy, https://ride.shimano.com/pages/shimano-warranty-policy, last accessed on December 29, 2023.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

inherently defective and dangerous at the time that they were sold to Plaintiffs and the other Class Members.

646.    Plaintiffs and the other Class Members were exposed to Defendant's misrepresentations and omissions/concealment, and they had no way of discerning that Defendant's representations and omissions/concealment were false and misleading or otherwise learning the material facts that Defendants had concealed or failed to disclose. Accordingly, Plaintiffs and the other Class Members reasonably relied on Defendant's express warranties when purchasing the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

647.    Plaintiffs and the other Class Members timely provided the Defendant notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendant's notice, above.

648.    Alternatively, Plaintiffs and the other Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendant knew about the Crankset Defect for years. Moreover, although Defendant issued a recall, that recall is inadequate because, inter alia: (a) it is belated because Defendant knew about the Defective Cranksets, including Defective Cranksets included in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendant's misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

649.    Privity of contract is not required here because Plaintiffs and the other Class Members were each intended third-party beneficiaries of the Defective

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Cranksets or Class Bicycles equipped with Defective Cranksets sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Defective Cranksets or Class Bicycles equipped with Defective Cranksets and have no rights under the warranty provided with the Defective Cranksets or Class Bicycles equipped with Defective Cranksets.

650.    Alternatively, privity of contract is satisfied because Plaintiffs and the other Class Members purchased the Defective Cranksets or Class Bicycles equipped with Defective Cranksets from retailers who were the exclusive retail sellers of Defendant's products and/or acted as agents of the Defendants.

651.    Plaintiffs and the other Class Members did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies. Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable.

652.    As a direct and proximate result of Defendant's breach of their express warranties, the Defective Cranksets or Class Bicycles equipped with Defective Cranksets were and are defective and the Crankset Defect was not remedied. Therefore, Plaintiffs and the other Class Members have been damaged, in an amount to be proven at trial, through their overpayment at the time of purchase for the Defective Cranksets or Class Bicycles equipped with Defective Cranksets with an undisclosed safety defect that would not be remedied.

## B. <u>COUNT XXVI: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (N.Y. U.C.C. §§ 2-314)</u>

(Against Shimano)

653.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

654.    Plaintiffs Adelman and Kouyate bring this count under New York law, individually and on behalf of the other members of the New York Subclass against Shimano for the Defective Cranksets.

655.    For purposes of this count, Plaintiffs Adelman and Kouyate shall be referred to as "Plaintiffs," and members of the New York Subclass shall be referred to as "Class Members."

656.    For purposes of this count, Defendant Shimano shall be referred to as "Defendant."

657.    For purposes of this count, members of the California Subclass shall be referred to as "Class Members."

658.    The Class Bicycles and Defective Cranksets are "goods" under N.Y. U.C.C. §§ 2-105(1).

659.    Plaintiffs and the other Class Members are "buyers" of the Class Bicycles and Defective Cranksets under N.Y. U.C.C. § 2-103(1)(a).

660.    Defendant is a "merchant" and "seller" under N.Y. U.C.C. § 2-104(1) and § 2-103(1)(d), respectively.

661.    New York law conferred an implied warranty that the Defective Cranksets and Class Bicycles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to N.Y. U.C.C. §§ 2-314.

662.    The Defective Cranksets and Class Bicycles are not merchantable and, as such, Defendants breached their implied warranties, because at the time of sale and all times thereafter:

    a.    The Class Bicycles and Defective Cranksets suffer from a safety defect that renders them unsafe to ride and/or operate;

    b.    The Defective Cranksets and the Class Bicycles would not pass without objection in the bicycle trade given the Crankset Defect;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

c.    The Crankset Defect renders the Defective Cranksets and Class Bicycles unsafe to ride and unfit for ordinary purposes; and

d.    The Crankset Defect affects the central functionality of the Class Bicycles and Defective Cranksets.

663.    Due to the Crankset Defect, Plaintiffs and the other Class Members cannot operate their Class Bicycles and Defective Cranksets as intended, substantially free from defects. The Class Bicycles and Defective Cranksets do not provide a safe and reliable way to propel a bicycle forward and pose a serious risk of injury, including crashing, bone fracture, laceration, and death. As a result, Plaintiffs and the other Class Members cannot use their Class Bicycles and Defective Cranksets for the purposes for which they purchased them.

664.    Plaintiffs and the other Class Members timely provided Defendant notice of the issues raised in this count and this Complaint and an opportunity to cure, as alleged in the paragraphs addressing Defendant's notice, above.

665.    Alternatively, Plaintiffs and the other Class Members were excused from providing Defendant with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendant knew about the Crankset Defect for years. Moreover, although Defendant issued a recall, that recall is inadequate because, inter alia: (a) it is belated because Defendant knew about the Defective Cranksets, including the Defective Cranksets installed in Class Bicycles, for years and did nothing to recall or remedy the serious safety defect; (b) with hundreds of thousands of Class Bicycles and Defective Cranksets impacted in existing and potential future recalls, as a result of Defendant's misrepresentations about and omission/concealment of the Crankset Defect, the recalls cannot be implemented effectively due to supply constraints and resulting delays; and (c) the recalls are incomplete, and apply to only a subset of the Class Bicycles and Defective Cranksets.

191

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

666.    Plaintiffs and the other Class Members have had sufficient direct dealings with Defendant or its agents (retailers) to establish privity of contract between Plaintiffs and the other Class Members. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class Members are intended third-party beneficiaries of contracts between Defendant and its agents; specifically, they are the intended beneficiaries of Defendant's implied warranties. The retailers were not intended to be the ultimate consumers of the Class Bicycles or Defective Cranksets and have no rights under the warranty agreements provided with the Class Bicycles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and Class Members' Class Bicycles and Defective Cranksets are dangerous instrumentalities due to the aforementioned defects and nonconformities.

667.    Plaintiffs, individually and on behalf Class Members, seeks all available monetary damages (including actual, compensatory, and punitive damages), injunctive and equitable relief, and attorneys' fees and costs.

## C. <u>COUNT XXVII: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. GEN. BUS. LAW § 349, *ET SEQ.*)</u>

(Against Shimano)

668.    Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

669.    Plaintiffs Adelman and Kouyate bring this count under New York law, individually and on behalf of the other members of the New York Subclass against Shimano for the Defective Cranksets.

670.    For purposes of this count, Plaintiffs Adelman and Kouyate shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members."

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

671.    For purposes of this count, Defendant Shimano shall be referred to as "Defendant."

672.    Plaintiffs and Class Members are "persons" under N.Y. Gen. Bus. Law § 349(h).

673.    Defendant is a "person," "firm," "corporation," or "association" under N.Y. Gen. Bus. Law § 349.

674.    The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law § 349.

675.    In the course of its business, Defendant, through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and Defective Cranksets, as detailed above.

676.    Defendant had an ongoing duty to Plaintiffs and the other Class Members to refrain from unfair or deceptive practices under the New York DAPA in the course of its business. Specifically, Defendant owed Plaintiffs and the other Class Members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

a.    Given the Defendant's role in the design, manufacture, testing, and sale of the Class Bicycles and Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, they possessed exclusive access to and were in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.    Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it, along with the Bicycle

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Manufacturer Defendants, possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.      Defendant knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.      Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.      Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.      Defendant knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.      Defendant knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h.      The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.      Defendant knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth

194

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.     Defendant actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.     Defendant made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because they volunteered to provide information about the Class Bicycles and Defective Cranksets that they marketed and offered for sale to consumers, Defendant had the duty to disclose the whole truth.

677.   By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendant engaged in one or more of the unfair or deceptive business practices prohibited by N.Y. Gen. Bus. Law § 349.

678.   Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, dependable, durable and reliable, and had properly-functioning cranksets that

2995224.1

would properly function and be reliable. Defendant's misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and the other Class Members, about the true value, safety, strength, dependability, durability, and reliability of the Class Bicycles and Defective Cranksets

679. Defendant intended for Plaintiffs and the other Class Members to rely on their misrepresentations, omissions, and concealment – which they did by purchasing the Defective Cranksets and Class Bicycles at the prices they paid believing that their Defective Cranksets and Class Bicycles would not have a Crankset Defect that would affect the strength, quality, durability, dependability, reliability, and safety of the Class Bicycles and the Defective Cranksets.

680. Defendant's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the Defective Cranksets and Class Bicycles were material to the decisions of Plaintiffs and the other Class Members to purchase those cranksets and bicycles, as Defendant intended. Plaintiffs and the other Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendant's misrepresentations that the Class Bicycles and their Defective Cranksets were safe and reliable in deciding to purchase the Class Bicycles and Defective Cranksets.

681. Plaintiffs' and other Class Members' reliance was reasonable, as they had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendant's deception on their own.

682. A reasonable consumer would have considered them important in deciding whether to purchase Defendant's Class Bicycles and Defective Cranksets or

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**
2995224.1

pay a lesser price. Had they known the truth about the Crankset Defect, Plaintiffs and the Class members would not have purchased the Defective Cranksets and/or Class Bicycles, or would have paid significantly less for them.

683.   As a direct and proximate result of Defendant's deceptive practices, Plaintiffs and the other Class Members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendant's actions and omissions alleged above – that first occurred at the time each Defective Crankset and/or Class Bicycle was purchased.

684.   Defendant's violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the Crankset Defect therein. Defendant's unlawful acts and practices complained of herein affect the public interest.

685.   Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the New York DAPA against Defendant.

## D. COUNT XXVIII: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. GEN. BUS. LAW § 350, *ET SEQ.*)

(Against Shimano)

686.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

687.   Plaintiffs Adelman and Kouyate bring this count under New York law, individually and on behalf of the other members of the New York Subclass against Shimano for the Defective Cranksets.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

688.   For purposes of this count, Plaintiffs Adelman and Kouyate shall be referred to as "Plaintiffs," and members of the California Subclass shall be referred to as "Class Members."

689.   For purposes of this count, Defendant Shimano shall be referred to as "Defendant."

690.   Defendant was and is engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

691.   The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

692.   Defendant caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them to be untrue and misleading to consumers, including Plaintiffs and other Class Members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

693.   In the course of their business, Defendant, through its agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Bicycles and Defective Cranksets, as detailed above.

694.   Defendant had an ongoing duty to Plaintiffs and the other Class Members to refrain from unfair or deceptive practices under the New York FAA in the course of its business. Specifically, Defendant owed Plaintiffs and the other Class Members a duty to disclose all the material facts concerning the Defective Cranksets and the Defective Cranksets in the Class Bicycles because:

2995224.1

a.  Given the Defendant's role in the design, manufacture, testing, and sale of the Defective Cranksets, and their experience and knowledge as experts and long-time veterans of the bicycle industry, it possessed exclusive access to and was in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

b.  Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets;

c.  Defendant knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

d.  Given the Crankset Defect's hidden and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e.  Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f.  Defendant knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g.  Defendant knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

h.  The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i.  Defendant knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j.  Defendant actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets, and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k.  Defendant made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because it volunteered to provide information about the Class Bicycles and Defective Cranksets that it marketed and offered for sale to consumers, Defendant had the duty to disclose the whole truth.

695.  By misrepresenting the Class Bicycles and Defective Cranksets as strong, high-quality, safe, dependable, durable, reliable, properly-functioning and free

2995224.1

from defects, and/or by failing to disclose and actively concealing the dangers and risk posed by the Crankset Defect to consumers and CPSC, Defendant engaged in one or more of the unfair or deceptive business practices prohibited by N.Y. Gen. Bus. Law § 350.

696.    Defendant's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and/or suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Bicycles and Defective Cranksets were strong, safe, dependable, durable and reliable, and had properly-functioning cranksets that would properly function and be reliable. Defendant's misrepresentations, concealments, omissions, and suppressions of material facts did, in fact, deceive reasonable consumers, including Plaintiffs and the other Class Members, about the true value, safety, strength, dependability, durability, and reliability of the Class Bicycles and Defective Cranksets

697.    Defendant intended for Plaintiffs and the other Class Members to rely on its misrepresentations, omissions, and concealment – which they did by purchasing the Defective Cranksets and Class Bicycles at the prices they paid believing that their Defective Cranksets and Class Bicycles would not have a Crankset Defect that would affect the strength, quality, durability, dependability, reliability, and safety of the Class Bicycles and the Defective Cranksets.

698.    Defendant's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Crankset Defect and true characteristics of the Defective Cranksets and Class Bicycles were material to the decisions of Plaintiffs and the other Class Members to purchase those cranksets and bicycles, as Defendant intended. Plaintiffs and the other Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendant's misrepresentations that the Class Bicycles and their Defective

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Cranksets were safe and reliable in deciding to purchase the Class Bicycles and Defective Cranksets.

699.   Plaintiffs' and other Class Members' reliance was reasonable, as they had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendant's deception on their own.

700.   A reasonable consumer would have considered them important in deciding whether to purchase Defendant's Class Bicycles and Defective Cranksets or pay a lesser price. Had they known the truth about the Crankset Defect, Plaintiffs and the other Class members would not have purchased the Defective Cranksets and/or Class Bicycles, or would have paid significantly less for them.

701.   As a direct and proximate result of Defendant's deceptive practices, Plaintiffs and the other Class Members have sustained economic injury and loss – either by purchasing a crankset or bicycle they otherwise would not have purchased or paying more than they otherwise would have as a result of Defendant's actions and omissions alleged above – that first occurred at the time each Defective Crankset and/or Class Bicycle was purchased.

702.   Defendant's violations present a continuing risk to Plaintiffs and the other Class Members, as well as to the general public, because the Class Bicycles and Defective Cranksets remain unsafe due to the Crankset Defect therein. Defendant's unlawful acts and practices complained of herein affect the public interest.

703.   Pursuant to N.Y. Gen. Bus. Law § 350, Plaintiffs and Class Members seek an order enjoining the above unfair or deceptive acts or practices and awarding actual damages, punitive damages, and any other just and proper relief available under the New York FAA against Defendant.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

## E. **COUNT XXIX: FRAUD**

(Against Shimano)

704.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

705.   Plaintiffs Adelman and Kouyate bring this count under New York law, under both the misrepresentation and omission/concealment theories, under New York law, individually and on behalf of the New York Subclass against Shimano for the Defective Cranksets.

706.   For purposes of this count, Plaintiffs Adelman and Kouyate shall be referred to as "Plaintiffs," and members of the New York Subclass shall be referred to as "Class Members."

707.   For purposes of this count, Defendant Shimano shall be referred to as "Defendant."

### 1. **Affirmative Misrepresentation**

708.   Defendant represented and marketed Defective Cranksets as strong, of high-quality, durable, dependable, and reliable. These representations are understood by consumers to mean that the Class Bicycles and Defective Cranksets are "safe" for ordinary use.

709.   The strength, quality, durability, dependability and reliability of the Defective Cranksets and the Class Bicycles in which the Defective Cranksets were installed were material facts because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members.

710.   Defendants' representations regarding the Defective Cranksets and Class Bicycles' strength, quality, durability, dependability and reliability—all terms that

signal "safety" to consumers—were false because the Class Bicycles and Defective Cranksets contain the Crankset Defect that causes the cranksets to break during normal use. In doing so, the presence of the Crankset Defect makes the Defective Cranksets and Class Bicycles unsafe for normal use.

711. Defendant knew that its representations were false and intended Plaintiffs and the other Class Members to rely on them—which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

712. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendant's deception on their own.

713. Had Plaintiffs and the other Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

714. As a direct and proximate result of Defendant's omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendant is  liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

715. Defendant acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendant's misconduct warrants an assessment of

punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### 2. Omission/Concealment

716.    Defendant is liable for fraud by omission, concealment, and/or non-disclosure. *See*, *e.g.*, Restatement (Second) of Torts §§ 550-51 (1977).

717.    Defendant owed Plaintiffs and the other Class Members a duty to disclose all the material facts concerning the Defective Cranksets in the Class Bicycles and Defective Cranksets s because:

    a.    Given the Defendants' role in the design, manufacture, pre-sale testing,  sale, and post-sale monitoring of the Class Bicycles and Defective Cranksets, and its experience and knowledge as experts and long-time veterans of the bicycle industry, it possessed exclusive access to and was in a superior position to know the true facts about the Class Bicycles and Defective Cranksets;

    b.    Given Shimano's design, development, testing and manufacture of the Defective Cranksets and its experience and knowledge as an expert and long-time veteran of the bicycle industry, it possessed exclusive access to and was in a superior position to know the true facts about the Defective Cranksets, including their component parts, design, adhesive properties, and other information not known to Plaintiffs or Class Members;

    c.    Defendant knew that the Class Bicycles and Defective Cranksets gave rise to serious safety concerns for the consumers who purchased the Class Bicycles and Defective Cranksets;

    d.    Given the Crankset Defect's hidden, proprietary, and technical nature, Plaintiffs and the other Class Members lacked the sophisticated expertise in bicycle and crankset components and

205

design and technology necessary to discover that the Class Bicycles and Defective Cranksets were defective;

e. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that the Class Bicycles and Defective Cranksets had a safety defect before purchase;

f. Defendant knew that Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover the defect and the associated repair or replacement costs;

g. Defendant knew that the Class Bicycles and Defective Cranksets, and the defect therein, gave rise to serious safety concerns for consumers who purchased them;

h. The Class Bicycles and Defective Cranksets pose a severe risk of harm in that, among other things, the Defective Cranksets can break during normal use and riding, causing loss of balance and accidents that can lead to severe and potentially fatal injuries;

i. Defendant knew about and investigated the Crankset Defect, but then did not notify consumers about it, disclose the Crankset Defect to CPSC, or further launch a comprehensive recall for all Class Bicycles and Defective Cranksets, which individually and together deprived Plaintiffs of an opportunity that otherwise could have led them to discover the truth about the Crankset Defect in their Class Bicycles and Defective Cranksets;

j. Defendant actively concealed the defect and the associated repair and replacement costs by responding to negative reviews and inquiries without disclosing the defect, asserting that the Class Bicycles and Defective Cranksets were not defective, asserting that non-design factors caused problems with the Defective Cranksets,

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

and replacing defectively designed Class Bicycles and Defective Cranksets with identical defectively designed Class Bicycles and Defective Cranksets; and

k. Defendant made, helped to make, or conspired to make partial and incomplete representations about strength, safety, quality, durability, dependability and reliability of the Class Bicycles and Defective Cranksets, while purposefully withholding material facts about a known safety defect. Because it volunteered to provide information about the Class Bicycles and Defective Cranksets that it marketed and offered for sale to consumers, Defendant had the duty to disclose the whole truth.

718. In breach of its duties, Defendant failed to disclose the Crankset Defect and that the Class Bicycles and Defective Cranksets were not strong, safety, high-quality, durable, durable or free of defects to Plaintiffs and the other Class Members in connection with the sale of the Class Bicycles and Defective Cranksets.

719. The Crankset Defect within the Class Bicycles and Defective Cranksets is material to the sale of the of the Class Bicycles and Defective Cranksets because a reasonable person would find it important in purchasing or retaining a new or used bicycle and because it directly impacts the value of the Class Bicycles and Defective Cranksets purchased by Plaintiffs and the other Class Members.

720. Defendant intended for Plaintiffs and the other Class Members to rely on their omissions and concealment—which they did by purchasing the Class Bicycles and Defective Cranksets at the prices they paid believing that they would not have a Crankset Defect that would affect the quality, reliability, durability, strength and safety of the Class Bicycles and Defective Cranksets.

721. Plaintiffs' and Class Members' reliance was reasonable because a reasonable consumer would not have expected that the Class Bicycles and Defective

2995224.1

Cranksets contained a safety defect that poses such a serious risk. They had no way of learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and the other Class Members did not, and could not, unravel Defendant's deception on their own.

722.    Defendant actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Bicycles and Defective Cranksets installed in them, and the Defective Cranksets themselves, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendant and their products. It did so at the expense of Plaintiffs and the other Class Members.

723.    If Defendant had fully and adequately disclosed the Crankset Defect to consumers, Plaintiffs and the other Class Members would have seen such a disclosure.

724.    Through its omissions and concealment with respect to the Crankset Defect within the Class Bicycles and Defective Cranksets, Defendant intended to induce, and did induce, Plaintiffs and the other Class Members to either purchase a Class Bicycle or a Defective Crankset that they otherwise would not have purchased, or pay more for than they otherwise would have paid for a Class Bicycle or Defective Crankset.

725.    Had Plaintiffs and the other Class Members known of the Crankset Defect within the Class Bicycles or Defective Cranksets, they would not have purchased the Class Bicycles or Defective Cranksets or would have paid less for them.

726.    As a direct and proximate result of Defendant's omissions and concealment, Plaintiffs and other Class Members either overpaid for the Class Bicycles or Defective Cranksets, or would not have purchased the Class Bicycles or Defective Cranksets at all if the Crankset Defect had been disclosed to them. Accordingly, Defendant is liable to Plaintiffs and the other Class Members for their damages in an amount to be proven at trial.

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

727.   Defendant acted maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich itself. Defendant's misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## F. **COUNT XXX: UNJUST ENRICHMENT**

### (Against Shimano)

728.   Plaintiffs reallege and incorporate by reference each of the allegations in Paragraphs 1-158, above, as though fully set forth herein.

729.   Plaintiffs Adelman and Kouyate bring this count under New York law, individually and on behalf of the other members of the New York Subclass against Shimano for the Defective Cranksets.

730.   For purposes of this count, Plaintiffs Adelman and Kouyate shall be referred to as "Plaintiffs," and members of the New York Subclass shall be referred to as "Class Members."

731.   For purposes of this count, Defendant Shimano shall be referred to as "Defendant."

732.   When they purchased the Class Bicycles or Defective Cranksets, Plaintiffs and other Class Members conferred a tangible and material economic benefits on Defendant. Defendant readily accepted and retained the benefits.

733.   Plaintiffs and the other Class Members would not have purchased the Defective Cranksets or Class Bicycles, or would have paid less for them, had they known of the Crankset Defect at the time of purchase. Therefore, Defendant profited from the sale of the Defective Cranksets and Class Bicycles to the detriment and expense of Plaintiffs and the other Class Members.

734.   Defendant knew or should have known that the payments rendered by Plaintiffs and the other Class Members were given with the expectation that the Class

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Bicycles and Defective Cranksets would have the qualities, characteristics, and suitability for use represented and warranted by Defendant. Defendant appreciated the economic benefits. The benefits were the expected result of Defendant acting in its own pecuniary interest at the expense of Plaintiffs and the other Class Members. Defendant knew of the benefits it was receiving because it was aware of the Crankset Defect in the Class Bicycles and Defective Cranksets, yet it failed to disclose this knowledge and misled Plaintiffs and the other Class Members regarding the nature and quality of the Class Bicycles and Defective Cranksets while profiting from its deception. As such, it would be unjust, inequitable, and unconscionable for Defendant to retain the benefit of the payments under these circumstances.

735. By its wrongful acts and omissions described herein, including selling the Class Bicycles and Defective Cranksets which contain the Crankset Defect, Defendant was unjustly enriched at the expense of Plaintiffs and the other Class Members.

736. Plaintiffs' and Class Members' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

737. Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the other Class Members. It would be unjust, inequitable and unconscionable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct alleged herein.

738. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of Class Bicycles and Defective Cranksets, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the Class Bicycles and Defective Cranksets, and Defendant affirmatively misrepresented and omitted and/or concealed the nature of the Class Bicycles and Defective Cranksets, and knowingly marketed and promoted dangerous and Class Bicycles and Defective Cranksets, which injured

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Plaintiffs and the other Class Members because they would not have purchased the Class Bicycles and Defective Cranksets based on the exact representations if the true facts concerning the Class Bicycles and Defective Cranksets had been known.

739.    Plaintiffs and putative Class Members are entitled to restitution and to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant in the amount necessary to return Plaintiffs and the other Class Members to the position they occupied prior to dealing with Defendants, with such amounts to be determined at trial.

740.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

741.    Plaintiffs plead this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendant, Plaintiffs will have no adequate legal remedy.

## **REQUEST FOR RELIEF**

Plaintiffs, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

A.    Entering an order certifying the proposed Classes, designating Plaintiffs as the named representatives of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class Members as the Court deems appropriate under Federal Rule of Civil Procedure 23;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

B.    Directing that Defendants bear the costs of any notice sent to the Class(es);

C.    Declaring that the Defective Cranksets are defective;

D.    Awarding to Plaintiffs and the other Class Members compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

E.    Awarding restitution and other appropriate equitable relief to Plaintiffs and the other Class Members;

F.    Ordering an award to Plaintiffs and the other Class Members for the return of the purchase prices of the Defective Cranksets and/or Class Bicycles with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorney fees;

G.    Ordering the institution of a Defendant-funded program, using transparent, consistent, and reasonable protocols, under which out-of-pocket and loss-of-use expenses and damages claims associated with the Defective Cranksets and Class Bicycles, can be made and paid, such that Defendants, not the Class members, absorb the losses and expenses fairly traceable to the recall of the Defective Cranksets;

H.    Declaring that Defendants must disgorge, for the benefit of Plaintiffs and the other Class Members, all or part of the ill-gotten profits they received from the sale of the Defective Cranksets and/or Class Bicycles, or make full restitution to Plaintiffs and the other Class Members;

I.    Granting an injunction against Defendants enjoining them from conducting their business(es) through the unlawful, unfair, and fraudulent acts or practices set forth herein;

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

J.  Entering an Order requiring Defendants to fully and adequately disclose the safety risks associated with the Class Bicycles and Defective Cranksets to anyone who may still be at risk of buying and using the Class Bicycles and Defective Cranksets;

K.  Ordering a jury trial and damages according to proof;

L.  Awarding attorneys' fees and costs, as allowed by law;

M.  Awarding of pre-judgment and post-judgment interest, as provided by law;

N.  Granting Plaintiffs leave to amend their Complaint to conform to the evidence produced during discovery and at trial; and

O.  Ordering such other relief as may be appropriate under the circumstances.

## **JURY DEMAND**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

Dated:    June 6, 2025        By:    */s/ Roland Tellis*
                                          Roland Tellis (SBN 186269)
                                          Sterling Cluff (SBN 267142)
                                          David Fernandes (SBN 280944)
                                          **BARON & BUDD, P.C.**
                                          15910 Ventura Blvd., Suite 1600
                                          Encino, California 91436
                                          Tel.: (818) 839-2333
                                          rtellis@baronbudd.com
                                          scluff@baronbudd.com
                                          dfernandes@baronbudd.com

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1

Adam J. Levitt*
John E. Tangren*
Daniel R. Ferri*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

Steven M. Jodlowski (SBN 239074)
**DICELLO LEVITT LLP**
4747 Executive Drive, Second Floor
San Diego, California  =92121
Tel.: (619) 923-3939
stevej@dicellolevitt.com

Jason L. Lichtman**
Daniel Seltz**
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
250 Hudson Street
New York, New York 10013
Tel.: (212) 355-9500
jlichtman@lchb.com
dseltz@lchb.com

Eric S. Dwoskin*
**DWOSKIN WASDIN LLP**
433 Plaza Real, Suite 275
Boca Raton, Florida 33432
Tel.: (561) 849-8060
edwoskin@dwowas.com

Nicholas F. Wasdin*
**DWOSKIN WASDIN LLP**
110 North Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 343-5361
nwasdin@dwowas.com

Alexander E. Wolfe (SBN 299775)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel.: (872) 365-7060
awolfe@milberg.com

214

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stephen G. Larson (SBN 145225)
**LARSON LLP**
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Tel.: (213) 436-4888
slarson@larsonllp.com

***Counsel for Plaintiffs and the Proposed Class***

*Admitted *pro hac vice*

**SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

2995224.1